IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KEVIN CLARK, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., and ARISTOTLE INTERNATIONAL, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> COMMODITY FUTURES TRADING COMMISSION, <br><br> *Defendant*. | Civil Docket No. 1:22-cv-00909-LY <br><br> The Honorable Lee Yeakel |

**DEFENDANT CFTC'S OPPOSED MOTION TO TRANSFER VENUE**

## INTRODUCTION

Defendant the United States Commodity Futures Trading Commission ("CFTC" or "the Commission") respectfully requests that this Court, pursuant to 28 U.S.C. § 1404(a), transfer this case to the United States District Court for the District of Columbia, the venue where it could—and should—have been filed. Per Local Rule CV-7(g), the parties' counsel met and conferred in good faith on September 20, 2022 to resolve the matter presented herein but were unable to do so. Plaintiffs' counsel indicated that they oppose the CFTC's request to transfer.

Simply put, none of Plaintiffs' claims have anything to do with Texas. Plaintiffs' Complaint comprises two counts under the Administrative Procedure Act ("APA") challenging the withdrawal of a "no-action letter" issued to Victoria University of Wellington, an educational institution located in Wellington, New Zealand ("Victoria University" or "the University"). Both the original no-action letter and the subsequent letter withdrawing the earlier letter were issued to the University by D.C.-based staff in the Commission's Division of Market Oversight, from the CFTC's headquarters in the District of Columbia. *See* Compl. ¶¶ 61–67, ¶¶ 68–75 & Exs. 1, 2; 17 C.F.R. § 140.99(a)(2). Those letters were addressed exclusively to the University and related to the University's operation of a non-profit prediction market in the United States for certain political-forecasting research purposes. All operative facts giving rise to Plaintiff's APA claims reflect the decisionmaking process of D.C.-based staff of a D.C.-headquartered federal agency that occurred solely in either the District of Columbia or, to a much lesser extent, Wellington, New Zealand where relevant University staff are located. The sole connection between this Court and Plaintiffs' Complaint is the residence of Kenneth Clarke, one of six named Plaintiffs drawn from various judicial districts nationwide, who is among the "thousands of other traders" who traded on the University's online predictions market. Compl. ¶ 32.

1

It is unclear why Plaintiffs chose to file their suit in the Austin Division of the Western District. Whatever the case may be, the choice to proceed in this Court was not based on convenience or efficiency. With the sole exception of Plaintiffs' choice of forum, every other relevant private- and public-interest factor is either neutral or favors the D.C. District Court.

The connection between the Plaintiffs' claims and the Western District "is 'minuscule' and a transfer pursuant to Section 1404(a) is in order." *See, e.g.*, *National Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (quotation omitted).

## BACKGROUND

The underlying Complaint was filed with this Court on September 9, 2022, by six named Plaintiffs that can be divided into three groups: First, as alleged in the Complaint, Plaintiffs Aristotle International, Inc. and Predict It, Inc. are Delaware corporations with principal places of business in the District of Columbia. They assert that they collectively "service[]" various aspects of Predict It, "an online market for political event contracts," pursuant to an undisclosed "marketing servicing agreement" with New Zealand-based Victoria University. Compl. ¶¶ 1, 26–27. Second, Plaintiffs Harry Crane and Corwin Smidt are professors at Rutgers University in New Jersey and Michigan State University, respectively, who allege that they use Predict It data for "teaching and research" purposes. Compl. ¶¶ 23, 24. Third, Plaintiffs Trevor Boeckmann and Kevin Clarke are individual Predict It customers living in New York City and Austin, respectively, who allegedly made various "purchases and trades" on the online Predict It market. Compl. ¶¶ 22, 21. Kevin Clarke—the only Texas resident among the Plaintiffs—claims to purchase and trade on Predict It in addition to his ownership of "a business specializing in the acquisition and management of mineral assets such as gemstones and crystals" and role as "assistant policy debate coach." Compl. ¶ 38. Notably, Victoria University of Wellington—the

only party to whom the challenged CFTC staff conduct was directed—has no discernible connection to Texas and is not a party to this lawsuit.  Compl. ¶ 25.

Plaintiffs' Complaint comprises two APA counts against the CFTC, an executive agency of the United States headquartered in the District of Columbia.  *See* Compl. ¶¶ 20, 61–67, 68–75.  Those counts challenge as arbitrary and capricious or otherwise unlawful a letter issued by D.C.-based CFTC staff in the Division of Market Oversight ("DMO") to the University on August 4, 2022.  *See, e.g.*, Compl. ¶ 8 & Ex. 2.  The August 4, 2022 letter withdrew an earlier no-action letter from October 2014 stating, based on the University's representations at that time, that "DMO will not recommend that the Commission take any enforcement action in connection with the operation of your proposed market for event contracts" if certain enumerated conditions were observed.  Compl. ¶ 7 & Ex. 1 at 5–6.  Plaintiffs have not alleged that any part of the decisionmaking process or other CFTC staff conduct relevant to their APA claims occurred in Texas.  *See, e.g.*, Compl. ¶¶ 7–11, 15–16.

The sole basis for venue identified by Plaintiffs is the allegation that "Kevin Clarke resides in … Austin, Texas" and "has made numerous investments in event contracts on the PredictIt Market from Austin, Texas, where he has lived since 2010."  Compl. ¶ 18 (citing 28 U.S.C. § 1391(e)(1)(B)–(C)).

## ARGUMENT

Under the federal transfer statute's multifactor balancing analysis, the only relevant consideration that potentially weighs in favor of retaining this D.C.-centric dispute in the Western District of Texas is Plaintiffs' choice of forum.  This Court was an available forum only because this lawsuit arises under the Administrative Procedure Act and one of several named

3

plaintiffs happens to reside here.[1]  While several judicial districts nationwide would also have been equally available given the other Plaintiffs' various residencies—including in the District of Columbia, Delaware, Michigan, New Jersey, and New York, *see* Compl. ¶¶ 22, 23, 24, 26, 27; 28 U.S.C. § 1391(e)(1)(C)—there is only one district with more than an incidental connection to the substance of Plaintiffs' claims.  And that is the District of Columbia.  Indeed, the District of Columbia is the only place outside of Wellington, New Zealand, in which *any* of the operative facts giving rise to Plaintiffs' claims occurred.

Because every other consideration either favors transfer to the District of Columbia or is neutral, the transfer analysis is straightforward and decisive.

## I. Legal Standard

When, as here, venue is available in more than one federal district court, 28 U.S.C. § 1404(a) allows for transfer in the interest of justice.  *See generally In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").  In addressing Section 1404(a) transfer motions, this Court assesses "two factors:  (1) that the transferee district is one where suit 'might have been brought' and (2) that the transferee district is clearly more convenient." *Media Chain, LLC v. Roku, Inc.*, No. 1:21-CV-27-LY, 2021 WL 5994809, at *1 (W.D. Tex. Dec. 7, 2021) (citing *In re Volkswagen*, 545 F.3d at 312, 315).  The relative convenience of the potential transferee court is determined by considering the following public- and private-interest factors:

---

[1] While Plaintiffs are correct that the Western District of Texas is an available forum under 28 U.S.C. § 1391(e)(1)(c) because of Kevin Clarke's residence, *see* Compl. ¶ 18, the conclusory statement that venue would also be available because "a substantial part of the events or omissions giving rise to the claims also occurred in this jurisdiction" is wrong for the reasons explained below.  *See infra* Part III.A.

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; … (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re Volkswagen*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). In weighing these factors, whose proper balance is case- and fact-specific, this Court has "broad discretion." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (per curiam) (quotation omitted).

There is an additional wrinkle to the Section 1404(a) transfer analysis in cases arising under the Administrative Procedure Act. *See* 5 U.S.C. §§ 704, 706(2)(A). Because this Court "sits as an appellate tribunal" in APA suits such that the "entire case on review is a question of law," *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (citing *Redeemed Christian Church of God v. United States Citizenship & Immigration Servs.*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018)), many of the public- and private-interest factors relating to witnesses, discovery, and trial will be of limited applicability. Instead, the primary—and often decisive—factor is determining the "judicial district with the most significant ties to th[e] litigation." *See, e.g.*, *National Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991); *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1185, 1187 (S.D. Fla. 2019) (holding that choice of forum in which to bring APA suit and "the locus of operative facts" for the plaintiff's claims together "weigh heavily in favor of transfer" when "Plaintiff's only nexus to the Southern District of Florida is his residence" and all relevant agency decisionmaking occurred "in the District of Columbia by residents of the District of Columbia").

## II. There Is No Doubt That This Case Could Have Been Filed In the D.C. District Court.

The Administrative Procedure Act lacks a specialized venue provision, so the general federal venue statute governs. *See* 28 U.S.C. § 1391. For APA suits against executive agencies of the United States, venue is available in "any judicial district" where "a defendant in the action resides"; where "a substantial part of the events or omissions giving rise to the claim occurred"; or where "the plaintiff resides if no real property is involved in the action." *Id.* § 1391(e)(1)(A)–(C). Here, venue would have been proper in the D.C. District Court under each subsection: (i) the only Defendant in this case is the CFTC, which is headquartered in the District of Columbia, Compl. ¶ 20; (ii) among other things, both the "no-action letters" being challenged and all relevant aspects of CFTC staff's decisionmaking process involve D.C.-based employees in the District of Columbia, Compl. ¶¶ 7–9, 15, 19, 44–49, 63a–e & Exs. 1–2.; and (iii) Plaintiffs Aristotle International, Inc. and Predict It, Inc. are both corporate entities incorporated in Delaware with their "principal place of business in the District of Columbia," Compl. ¶¶ 26, 27.

Because there is no doubt that this case could have been filed in the United States District Court for the District of Columbia, "only the second factor is in question"—that is, whether the transferee district is more convenient. *See, e.g.*, *Media Chain, LLC*, 2021 WL 5994809, at *1. Here, it is, as discussed below.

## III. Proceeding In The D.C. District Court Is More Convenient Across The Board.

### A. Plaintiffs' "choice of forum" should be accorded minimal, if any, weight and is substantially outweighed by "the locus of operative facts" because all CFTC conduct giving rise to Plaintiffs' claims occurred in the District of Columbia.

The strongest—indeed only—tie between Plaintiffs' Complaint and this Court is the residence of a single named Plaintiff, Kevin Clarke, who alleges that he will suffer downstream economic losses as an individual trader were non-party Victoria University of Wellington to cease operating the online Predict It market. *See, e.g.*, Compl. ¶¶ 5, 13, 21, 41, 60. While

6

Plaintiffs have conclusorily asserted that Mr. Clarke's "numerous investments in event contracts on the PredictIt Market" reflect "a substantial part of the events or omissions giving rise to the claims" sufficient to warrant venue under 28 U.S.C. § 1391(e)(1)(B), Compl. ¶ 18, that is incorrect. The Complaint lacks any factual allegations that Mr. Clarke—or any of the alleged "thousands" of other individual Predict It traders, Compl. ¶ 38—played any role in the relevant CFTC staff's decisionmaking process. Given the lack of any allegations tying the *CFTC's* conduct to Texas, Plaintiffs cannot rely on the unilateral conduct of Mr. Clarke to establish a legally relevant nexus to this Court. *See, e.g.*, *Gault v. Yamunaji, L.L.C.*, No. A-09-CA-078-SS, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) (explaining that proper venue analysis "requires courts to focus on the *defendant's* conduct alone" because "the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district").

Because the "only nexus to" the Western District is thus Mr. Clarke's "residence" and "all the relevant … decisions were made in the District of Columbia by residents of the District of Columbia," this case is on all fours with a recent decision of the Southern District of Florida. In *Hight v. U.S. Department of Homeland Security*, a commercial sailor sought to become a registered ship pilot in the Great Lakes region and, when D.C.-based Coast Guard staff denied his application, he brought an APA lawsuit in the Southern District of Florida, his place of residence. 391 F. Supp. 3d 1178, 1181–82, 1185 (S.D. Fla. 2019). Finding that the "central tension" in resolving the United States' transfer motion was "whether the Court should place more emphasis on Plaintiff's choice of forum or the locus of operative facts in performing the 1404(a) analysis," the Court determined (1) that the nonexistent connection between the claims at issue and Florida rendered "unavailing" plaintiff's argument that his "choice of forum" should

7

control and (2) that "the locus of operative facts" "further tilted" the scales "in favor of transfer" when "all relevant acts or omissions relating to the denial of Plaintiff's pilotage license took place in the District of Columbia." *Id.* at 1185. The Court concluded that "these factors, when taken together, weigh strongly in favor of transfer to the District of Columbia." *Id.* Further concluding that all remaining private- and public-interest factors were on balance neutral and of limited value, the Court ordered the case transferred to the D.C. District Court because taken together "the interests of justice and convenience of the parties weigh heavily in favor of transfer." *Id.* at 1187. The same is true here.

*Hight* is no outlier. Courts in this District and nationwide faced with similarly skimpy nexuses to APA claims routinely grant transfers to the appropriate transferee court. *See, e.g.*, *National Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (transferring APA claims against the Office of the Comptroller of the Currency to the United States District Court for the District of Columbia when only a single named plaintiff resided in Texas); *Munro v. U.S. Copyright Off.*, No. 6:21-CV-00666-ADA-JCM, 2022 WL 3566456, at *3 (W.D. Tex. May 24, 2022) (Manske, M.J.) (recommending transfer of APA claims against United States Copyright Office for application denial when only Western District nexus was Austin-based plaintiffs' counsel); *Pulijala v. Cuccinelli*, No. 1:20-CV-00822-JPB, 2021 WL 9385877, at *3 (N.D. Ga. Jan. 22, 2021) (granting transfer of APA suit brought by Georgia resident against United States Citizenship and Immigration Services official when "it is undisputed that all relevant acts or omissions relating to the immigrant visa petitions take place in the District of Columbia"); *Holovchak v. Cuccinelli*, No. 20-CV-210-KSM, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) (similar); *Center for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, at *6 (N.D. Cal. Mar. 17, 2011) (transferring APA claims to D.C.

District Court when "the operative facts giving rise to [agency's] partial deregulation decision did not occur in this district").

### B. All Remaining Private Interest Factors Favor Transfer Or Are Neutral.

#### i. The cost of attendance favors transfer.

The cost and time required for party counsel to attend hearings in the Western District affirmatively favors transfer to the United States District Court for the District of Columbia. Indeed, no counsel that has appeared to date is located in Texas. Plaintiffs' counsel, only one of whom was admitted to practice before the Western District when the Complaint was filed, are all barred in the District of Columbia and are based out of Chicago and/or the District of Columbia. *See* Compl. at 27; Steptoe & Johnson LLP, *John J. Byron: Bar & Court Admissions*, https://www.steptoe.com/en/lawyers/john-byron.html (last visited September 20, 2022); *see also* Steptoe & Johnson LLP, *Steptoe Locations*, https://www.steptoe.com/en/offices/index.html (last visited September 20, 2022) (listing firm offices in Beijing, Brussels, Chicago, Hong Kong, London, Los Angeles, New York, San Francisco, and Washington, D.C. but not Texas).[2] Counsel for the CFTC, as noted below, are all similarly barred in the District of Columbia and based out of the Commission's D.C. headquarters. That means that every single attorney who would be appearing before this Court would have to travel, at a minimum, roughly 1,000 miles to do so. By contrast, were this case transferred to the D.C. District Court, no travel would be required because all counsel are at least partially based out of the District of Columbia.

---

[2] It appears that one of Plaintiffs' attorneys listed in the Complaint has joined the D.C. office of Hunton Andrews Kurth after the Complaint was filed. *See* Hunton Andrews Kurth LLP, *Michael J. Edney: Bar Admissions & Court Admissions*, https://www.huntonak.com/en/people/michael-edney.html (last visited September 20, 2022).

*Cf. Hight*, 391 F. Supp. 3d at 1185–86 (holding this factor "neutral" because all parties "would be required to engage in similar cross-country travel" (quotation omitted)).

### ii. The remaining private-interest factors are neutral.

As to the remaining private-interest factors, because this is an APA case that will turn on appellate-style review of a fixed administrative record, the CFTC does not anticipate that the traditional private-interest litigation burdens will be significant in this case, such as witnesses or merits discovery. *Accord Hight*, 391 F. Supp. 3d at 1186; *see, e.g.*, *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (noting in APA litigation the "entire case on review is a question of law") (citation omitted).

### C. All Remaining Public Interest Factors Favor Transfer Or Are Neutral.

#### i. The D.C. District Court's localized interest and relatively lesser level of docket congestion favors transfer.

In addition to the cost and convenience benefits to the Parties identified above, the public interest affirmatively favors transfer as well for at least two reasons. First, to the extent that there is any judicial district in the United States with a localized interest in the resolution of this case, it is the District of Columbia. As discussed above, with the possible exception of Wellington, New Zealand, all the operative facts giving rise to Plaintiffs' claims occurred in the District of Columbia where all relevant CFTC staff are based. Moreover, the legally cognizable harms of the "no-action letters" being challenged—if any—appear most relevant to Plaintiffs Aristotle International, Inc. and Predict It, Inc., the so-called "service providers" who allege they collectively operate various aspects of nonparty Victoria University's online predictions market out of their principal places of business in the District of Columbia. *See* Compl. ¶¶ 26, 27.

Second, current Federal Court Management Statistics show that the Western District is substantially more congested than the D.C. District Court. "When evaluating the administrative

difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). As relevant here, those statistics unanimously favor transfer to the D.C. District Court[3]: The median time from filing to disposition for civil cases in the Western District is 8.4 months, while in the D.C. District Court it's 5.7 months; there are 841 pending cases per judge in the Western District, compared to 401 cases in the D.C. District Court; and 845 weighted filings per judge in the Western District versus 286 in the D.C. District Court. *See generally* Administrative Office of the U.S. Courts, U.S. DISTRICT COURTS: COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS (June 30, 2022), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-2.

### ii. The remaining public-interest factors are neutral.

The remaining public-interest factors, such as the familiarity of the forum with the law that will govern the case and foreign choice-of-law concerns, are neutral here. *Accord Hight*, 391 F. Supp. 3d at 1186–87.

\*   \*   \*

To be clear, the CFTC is in no way questioning this Court's authority or ability to handle this case on the merits. Here, however, the Section 1404(a) factors, taken together, overwhelming favor transfer to the District of Columbia, the only judicial district with any substantial ties to Plaintiffs' claims.

---

[3] Because this is an APA case that will not entail a trial, that normal court-congestion statistic is not relevant to the transfer analysis and has been omitted here. Were it relevant, however, that statistic would be the only to favor the Western District as civil trials conclude in an average of 28.3 months versus 55.9 months in the D.C. District Court. However, the Court need not (indeed should not) consider that statistic here.

## CONCLUSION

For these reasons, the Court should grant the CFTC's motion and transfer the above-caption litigation to the United States District Court for the District of Columbia.

Respectfully submitted,

/s/ *Kyle M. Druding*

Robert A. Schwartz (D.C. Bar No. 489240)
  *General Counsel*
Anne W. Stukes (D.C. Bar No. 469446)*
  *Deputy General Counsel*
Kyle M. Druding (D.C. Bar No. 1044631)*
  *Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING
COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC  20581
Phone:  (202) 418-6024
Fax:  (202) 418-5127
kdruding@cftc.gov

\* *Motion for* pro hac vice *admission pending*

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing Defendant CFTC's Opposed Motion to Transfer Venue to be served on the Clerk of the Court using the Court's CM/ECF system, which will send notice to all counsel of record in this case.

/s/ *Kyle M. Druding*
Kyle M. Druding