IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., ARISTOTLE INTERNATIONAL, INC., MICHAEL BEELER, MARK BORGHI, RICHARD HANANIA, JAMES D. MILLER, JOSIAH NEELEY, GRANT SCHNEIDER, and WES SHEPHERD,<br><br>Plaintiffs,<br><br>v.<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>Defendant. | Case No. 1:22-cv-00909<br><br>The Honorable Lee Yeakel |

**MOTION TO EXPEDITE HEARING AND RESOLUTION OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Kevin Clarke, Michael Beeler, Trevor Boeckmann, Mark Borghi, Harry Crane, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, Wes Shepherd, Corwin Smidt, Predict It, Inc. ("PredictIt"), and Aristotle International, Inc. ("Aristotle") respectfully move for a more expedited hearing and resolution of their pending Motion for Preliminary Injunction, Doc. 12. The motion was filed on September 30 and was fully briefed by October 20. Specifically, Plaintiffs ask that the Court schedule a motion for a preliminary injunction for a hearing designed to allow the Court to render a decision before Christmas.[1] Plaintiffs are prepared to file their reply to the Defendant's briefing on this motion the following business day.

---

[1] Plaintiffs regard the instant motion as a "case-management motion" pursuant to Local Rule CV-7(D)(2), for which any response would be due within seven days, on November 25, 2022.

The PredictIt Market offers political event contracts, where tens of thousands of private citizens can invest and have invested in their predictions of the outcome of an election or other significant political event. The Commodity Futures Trading Commission permitted this Market to be established in 2014 and abruptly ordered it to close in a decision released on August 4, 2022. Although Plaintiffs' lawsuit is a broader challenge to the Commission's decision to close the PredictIt Market, the preliminary injunction motion seeks to stay a narrow aspect of the Commission's decision that is causing irreparable harm. That is the Commission's mandate to liquidate all pending PredictIt Market contracts—including contracts the Market's customers purchased prior to the Commission's decision to close the Market—by 11:59 PM on February 15, 2023. This mandate will wipe out tens of thousands of shares of contracts that would not otherwise settle until late 2023 or 2024, including contracts regarding the outcome of the 2024 U.S. presidential primary and general elections.

That arbitrary liquidation date was causing irreparable harm at the time of the motion and is causing irreparable harm today. But these injuries will dramatically accelerate beginning in the middle of December 2022. First, lead Plaintiff and Austin-resident Kevin Clarke and the seven other private investor Plaintiffs have invested tens of thousands of dollars in contracts that the Commission intends to crash land on February 15. That is not just a problem on February 15—the Commission's mandate is severely distorting trading in those contracts today. Mr. Clarke, for example, bought contracts before the Commission's decision on Republican nominees for President that, under normal conditions, would have traded up significantly after the midterm elections. Ex. 1, Declaration of Kevin Clarke, ¶ 6. Those contracts have not traded as expected,

---

Underscoring the urgency of this matter, Plaintiffs commit to file any reply in response to this motion the next business day, on November 28, 2022.

2

however, as traders believe the Market will not exist long enough for those candidates to even formally announce their candidacies. Ex. 1, ¶ 6. As important, the Commission's February 15 drop dead announcement has driven many traders and thus significant liquidity out of the Market. Ex. 1, ¶ 5. There is often no one to whom the Plaintiffs may efficiently sell their existing positions, much less at a price that makes any sense. Ex. 1, ¶ 7. Mr. Clarke and the other trader Plaintiffs are simply stuck with these contracts, all because the Commission has picked an arbitrary date on which these contracts must be liquidated. These market distortions are expected to become substantially worse in December, as traders become no longer focused on the midterm elections and turn their attention to the February 15 liquidation date that is interfering with seeing contracts on the 2024 election through to their conclusion. Ex. 1, ¶ 8. As the Government with its sovereign immunity is causing this mess, the economic harm on these traders is irreparable. Ex. 1, ¶¶ 7–9.

      The Plaintiffs who operate the Market—Aristotle International, Inc. and PredictIt, Inc—have put off for as long as they could the massive investment in systems necessary to comply with the February 15 liquidation mandate. By December 15, however, the operators must plunge hundreds of thousands of dollars into compliance with the most arbitrary aspect of the Commission's decision to close the Market. Ex. 2, Declaration of John Phillips, ¶ 3. Nearly all the Plaintiffs' PredictIt employees will need to be diverted to developing a system for prematurely liquidating investor contracts. Ex. 2, ¶¶ 3, 9. The Market has systems to settle a contract when the outcome of a political event is decided for $1 or $0. It has no programs or infrastructure to settle a contract for an intermediate price (such as its purchase price or its daily trading price) before the political event is determined. Ex. 2, ¶ 6. This trading and settlement infrastructure must be built from scratch and will require extensive planning, design, coding, and testing. Ex. 2, ¶ 8. And the fairest way to do so has not even been determined yet—if in fact there is a way to do so

that is fair to all traders. From construction to testing, this investment must occur in mid-December, two months before the Commission's arbitrary crash-landing liquidation date. Ex. 2, ¶ 8. The Plaintiffs firmly believe the Commission's contract liquidation mandate is arbitrary and impermissible, and are confident the Court will agree when it hears to merits. But, if the Court ultimately rules for the Plaintiffs, the operating corporations will have no way to recover the hundreds of thousands spent on compliance. Ex. 2, ¶ 5. All those expenses will have been unnecessary, and all solely the result of administrative agency behavior that violates the Administrative Procedure Act.

The whole point of the requested preliminary injunction is to avoid these accelerated irreparable injuries rolling on in December, by preserving an aspect of the status quo before the agency's arbitrary action. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties until a trial on the merits can be held."). The requested relief is narrow and targeted. It is not asking the Court to allow PredictIt to offer contacts on brand new political questions. Rather, for political event markets offered as of the August 4 Commission decision, it asks the Court to allow the contracts in those markets to trade either to their natural conclusion or 90 days after this Court's resolution of the merits, whichever is sooner. Doc. 12, at 2.

The objective of this preliminary injunction will be substantially eroded if the Court does not hear it and resolve it in December. Chambers staff have informed counsel for the Plaintiffs, however, that the motion will be taken up only after the Commission's pending motion to transfer is decided. And that transfer motion is scheduled for oral argument before Magistrate Judge Lane on December 1, likely portending a proposed resolution of that motion in mid-December at the

earliest.  If this sequencing structure remains in place, a resolution of the preliminary injunction motion is unlikely in 2022, and avoidable and significant irreparable harm and expense will occur.

Accordingly, the Plaintiffs respectfully request that the District Court hold oral argument on the motion for a preliminary injunction at its earliest convenience and in parallel with any Magistrate Judge consideration of making a report and recommendation to the Court on the Government's motion to transfer venue.  This request for more expedited treatment and priority over other motions in the case is in line with precedents underscoring the urgency of a preliminary injunction motions.  Courts grant preliminary injunctions in order to "prevent irreparable injury that may result before a final decision on the merits." *Shanks v. City of Dallas*, 752 F.2d 1092, 1096 (5th Cir. 1985).  To serve that function here, the Court must act with the "haste" that "is often necessary if [the parties'] positions are to be preserved." *Camenisch*, 451 U.S. at 395.

Recognizing the urgency associated with preliminary relief, courts regularly decide motions for preliminary injunctions before addressing other matters in the case.  In *Janvey v. Alguire*, for example, the Fifth Circuit affirmed a district court's grant of a preliminary injunction motion before considering a motion to compel arbitration.  647 F.3d 585, 592 (5th Cir. 2011).  Even in the face of the Supreme Court's "strong preference for arbitration," the court found that the district court appropriately "relied on its equitable powers to preserve the status quo" before rushing to decide the arbitration issue.  *Id.* at 593–94.  More specifically addressing the circumstance of this case, district courts routinely consider preliminary injunction motions in advance of or alongside transfer motions.  *See, e.g., Waguespack v. Medtronic, Inc.*, 185 F. Supp. 3d 916, 921 (M.D. La. 2016) (simultaneously granting preliminary injunction and denying motion to transfer); *Louisiana Forestry Ass'n, Inc. v. Solis*, 814 F. Supp. 2d 655, 656 (W.D. La. 2011) (considering preliminary injunction motion together with motion to transfer); *Swisher Int'l, Inc. v.*

*United States Food & Drug Admin.*, No. 3:21-CV-764-BJD-JBT, 2021 WL 4173841, at *2 (M.D. Fla. Sept. 7, 2021) (same). Indeed, a defendant's effort to adjust where the case is heard, and the delay that request entails, makes it all the more important to preserve the status quo extant before an allegedly arbitrary agency decision while those procedural issues are being sorted.

There is no other side of the ledger here in terms of pushing off the February 15, 2023 liquidation date. There is clear harm in that date to the Plaintiffs, but the Commission has never suggested any legitimate interest on why liquidation must occur on that date rather than another. Despite several opportunities to do so over the life of this case, the CFTC has never provided *any* justification for why all existing contracts in the Market must dissolve on February 15, 2023. The date appears to have been plucked out of thin air.

Plaintiffs are sensitive to the demands of the many cases on the Court's docket. But Plaintiffs have made motion for relief that is inherently time sensitive and that the appellate courts regard as effectively denied if not resolved before the occurrence of significant swaths of the irreparable harm identified therein. *See EEOC v. Kerrville Bus Co.*, 925 F.2d 129, 132 (5th Cir. 1991); *U.S. v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). And, indeed, Congress has recognized that when a serious challenge in the agency decision is presented, the best course is to delay aspects of that decision causing irreparable harm until the Court can address the merits of that challenge. *See* 5 U.S.C. § 705; *Abbott Labs v. Gardner*, 387 U.S. 136, 156 (1967) (explaining that Congress expressly authorized courts to delay the effective date of an agency action to permit judicial review before the action harms regulated parties). In the absence of more expedited treatment of the preliminary injunction motion than is currently projected, there may soon come a time when Plaintiffs' harm becomes so "immediate and irreparable" that Plaintiffs have no choice but to seek a temporary restraining order. *See* Fed. R. Civ. P. 65(b)(1).

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion to expedite and set the Motion for Preliminary Injunction for a hearing by December ___, 2022. Consistent with Local Rule CV-7(G), counsel for Plaintiffs has conferred with counsel for Defendant, who represents that Defendant opposes the motion to expedite.

                                               Respectfully submitted,

                                               */s/ Michael J. Edney*
                                               Michael J. Edney
                                               HUNTON ANDREWS KURTH LLP
                                               2200 Pennsylvania Avenue,
                                               NW Washington, DC 20037
                                               T: (202) 778-2204
                                               medney@huntonak.com

                                               John J. Byron
                                               STEPTOE & JOHNSON LLP
                                               227 West Monroe Street
                                               Suite 4700
                                               Chicago, Illinois 60606
                                               T: (312) 577-1300 / F: (312) 577-1370
                                               jbyron@steptoe.com

                                               *Attorneys for Plaintiffs Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Predict It, Inc. Aristotle International, Inc., Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, and Wes Shepherd*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

*/s/ Michael J. Edney*
Michael J. Edney
