# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., ARISTOTLE INTERNATIONAL, INC., MICHAEL BEELER, MARK BORGHI, RICHARD HANANIA, JAMES D. MILLER, JOSIAH NEELEY, GRANT SCHNEIDER, and WES SHEPHERD, <br><br> Plaintiffs, <br><br> v. <br><br> COMMODITY FUTURES TRADING COMMISSION, <br><br> Defendant. | Case No. 1:22-cv-00909 <br><br> The Honorable Lee Yeakel <br> The Honorable Mark Lane |

**SUPPLEMENTAL MEMORANUM IN OPPOSITION TO
DEFENDANT'S MOTIONS TO TRANSFER AND DISMISS**

Plaintiffs submit the following memorandum to address concerns raised by the Court at oral argument, including those not addressed in previous briefing or amplified by intervening precedent. To address a specific issue raised by the Court: Investors in PredictIt Market contracts are beneficiaries of the CFTC decision opening the Market and have the standing to anchor venue for this case. The lead Plaintiff—Kevin Clarke—chose to bring this case and is not a generic investor who could have been found in any judicial district. It also would be incorrect to infer from Victoria University's absence as a formal plaintiff that PredictIt has become some sort of gambling operation.

### A. Kevin Clarke's Choice to Bring this Lawsuit and to Provide Evidence Prohibits the Transfer of this Case.

Kevin Clarke lives in Austin, Texas. And his involvement with and investment in the PredictIt Market was born in Austin. Mr. Clarke first encountered PredictIt as a world-class college policy debater at the University of Texas. Ex. 1, Declaration of Kevin Clarke, ¶ 6. He used PredictIt's data for academic purposes and to enhance Texas's arguments in debate tournaments. Ex. 1, ¶ 6. In intercollegiate policy debate, teams would argue that a certain course of action would lead to different election outcomes, by showing how similar events had moved the percentage chances of an electoral outcome on the PredictIt Market. Ex. 1, ¶¶ 7–8. Through this academic endeavor, he began investing in PredictIt contracts himself and is one of the few investors who holds a position in every submarket turning on events that occur after February 2023. Ex. 1, ¶ 4. Mr. Clarke is active as a discussant and analyst of the intersection of political developments and the PredictIt Market. Ex. 1, ¶¶ 8–9. He identified the unfairness and financial harm of the CFTC's action in the days that followed the revocation decision. Ex. 1, ¶ 5.

In this way, the so-called private factors influencing transfer—regarding the availability of evidence and witnesses—tilt strongly in favor of keeping this case where it was filed. Although CFTC officials made the challenged decision in Washington, that evidence will be reflected by whatever administrative record the agency has and thus does not factor into where the case should be heard. By contrast, Kevin Clarke is the party and witness providing evidence supporting Plaintiffs' claim for preliminary and permanent injunctive relief and against the CFTC's challenge to standing.

At oral argument, the Court suggested that nothing distinguishes Austin from the other 93 judicial districts in this case, as a trader could likely be found in each. It is not true that each district contains a trader willing to dedicate the time necessary to act as lead plaintiff, much less

with Mr. Clarke's background. Each investor's initial position in any one contract is limited to $850. But that is also not the relevant legal question. The question is not whether the case could have been brought in another district. It is whether the district to which the Defendants wish to transfer the case *is clearly more convenient than the plaintiff's chosen forum. See, for example*, *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022); *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). The Fifth Circuit has not hesitated to grant mandamus relief when lower courts fail to follow this standard. *Def. Distributed*, 30 F.4th at 433–37.

When this standard is properly applied, an agency decision with nationwide effects cannot be transferred back to Washington, D.C. The Northern District of California applied the proper standard and rejected arguments identical to the CFTC's, where only four of the more than two hundred plaintiffs affected by an agency's decision resided in the District. *Anunciato v. Trump*, No. 20-CV-07869-RS, 2020 WL 13547186, at *3 (N.D. Cal. Dec. 23, 2020) (Ex. 3). The agency decision would be evaluated on the paper record under the APA. *Id.* Most important was that, "[s]pread out as they are around the country and the world, [the plaintiffs] chose to participate in this action in this district." *Id.*

**B. The Court Should Not Rest Any Aspect of its Decision on Victoria University's Absence as a Plaintiff.**

    **1.    Investors Are Beneficiaries of the Decision to Establish the PredictIt Market and Can Challenge Its Termination**

Nothing in the 2014 agency decision green-lighting the Market says that decision was meant only to benefit Victoria University, to the exclusion of the investors who would buy the contracts offered by the Market. To the contrary, the 2014 decision specifically contemplated that investors from all walks of life would be offered political event contracts. Doc. 15-1, CFTC's 2014 No-Action Letter, Ex. 1 to Am. Compl., at 3–5.

3

The only restriction on who may "rely" on the 2014 decision arises from the regulation under which the decision was issued. That regulation states that "[o]nly the Beneficiary may rely upon the no-action letter." 17 C.F.R. § 140.99(a)(2). That provision was clearly meant to prevent a would-be PredictIt competitor from citing the no-action letter as authority to set up a similar market. But each investor purchasing contracts offered by the PredictIt Market clearly qualifies as a "beneficiary" of the decision establishing it. Section 140.99 elsewhere refers to the "person on whose behalf the letter is sought" and the "recipient" of the letter, *id.* §§ 140.99(c), (e), but the regulation used neither of those terms to restrict who may rely on it. Instead, it used the broader term "beneficiary."

Although Victoria is not traveling 7500 miles from New Zealand to participate, it has made its position clear. Victoria would not have closed the PredictIt Market, much less kicked investors out of their contracts, but for the CFTC's arbitrary mandate to do so. Doc. 18-2, Letter from Victoria University, Ex. B to Reply in Supp. of Prelim. Inj, at 1–2.

In any event, arguments nearly identical to concerns about Victoria's absence have been dead on arrival in the Supreme Court. In *Bennett v. Spear*, 520 U.S. 154 (1997), the Fish and Wildlife Service issued an opinion specifying remediation steps necessary to protect an endangered species. The Supreme Court rejected efforts to avoid review because the recipient of the opinion was not challenging it as a plaintiff. Given that the agency's order was specific and portended significant penalties for non-compliance on the party receiving it, there was ample evidence that the remediation steps were being undertaken because of the order. *Id.* at 168–71. It is no mystery here, either, why the Plaintiff investors' contracts will be arbitrarily liquidated by February 15. It is because the CFTC ordered Victoria to do it and threatened significant sanctions

4

if the University did not "dance to its tune." *Board of Trade of the City of Chicago v. SEC*, 883 F.2d 525, 530 (7th Cir. 1989).

The Court also asked whether investors were aware that the agency said, in its 2014 decision, that it could change its mind at any time. But this disclaimer reserving the agency's right to change its mind is a staple of agency decisions. And it neither prevents judicial review nor obviates the legal requirement to explain itself before a change in position.

As the Supreme Court confirmed in *U.S. Army Corps of Engineers v. Hawkes*, such a disclaimer does not render "an otherwise definitive decision nonfinal." 578 U.S. 590, 598 (2016). There, the Supreme Court dismissed the same argument, based on an agency's express reservation of the right to alter a decision, as a "common characteristic of agency action" that does not absolve the agency of the obligation to explain itself when doing so. *Id.*.

The Fifth Circuit further underscored the Supreme Court's holding just weeks ago in *Data Marketing Partnership v. U.S. Department of Labor*, 45 F.4th 846 (5th Cir. 2022) (a copy of which is attached hereto as Ex. 4). There, Judge Oldham, writing for a unanimous Court, held that an "advisory opinion"—issued by a member of the Department of Labor's staff—qualifies as "final agency action." In that case, just as here, the agency argued that it had warned the recipient it could change its mind at any time. *Id.* at 854. As the Court explained:

> [T]he Department recycles an argument that the Supreme Court has repeatedly rejected: The action isn't final because the agency can change its positions or its reasons for the decision after more factfinding. This argument is squarely foreclosed by numerous Supreme Court decisions.

*Id.* (citing *Hawkes*, among other precedents). Instead, the Fifth Circuit held that the key question—even for agency opinions characterized as "advisory" and "subject to change"—is whether the opinion is "not subject to further [a]gency review." *Id*. at 853–54 (citing *Sackett v. EPA*, 566 U.S.

5

120, 127 (2012). There, as here, the agency "effectively concedes that the advisory opinion is not subject to additional agency review." *Id.* at 854.[1]

### 2. The PredictIt Market Continues to Serve an Important Academic Purpose.

The Court articulated a concern that the PredictIt Market has lost its academic value. That was not a concern raised by the CFTC in the papers before this Court.

That Victoria University has not undertaken the burdens of litigation does not mean those academic purposes have receded. Professor Richard Lowery, of the McCombs School of Business at the University of Texas at Austin, addresses the Court's concerns on this issue. *See* Ex. 2. He outlines the current state of academic work from data on the PredictIt Market. Ex. 2. "PredictIt data provides a stable metric of probability of political outcomes that correlates with real economic activity and other behaviors. And by comparing PredictIt data with other real-world events, researchers can analyze how political variables influence financial markets or other real-time decisions." Ex. 2, at ¶ 10. He also explains that the PredictIt Market's rules—limiting a contract investment to $850 and a contract market's investors to 5000—allow investors to correct a percentage prediction of outcomes "when they feel the percentage-trading price is inaccurate." Ex. 2, at ¶ 6. As such, they "strike an important balance" to "generat[e] academically meaningful data" without "incentiviz[ing] [investors] to manipulate the outcome" of a political event or "teetering into the realm of gambling." Ex. 2, at ¶¶ 7–8; *see also* Doc. 12-2, App'x to Prelim. Inj., at 36–64 (Plaintiff/Professors Corwin and Smidt reaching similar conclusions).

---

[1] Judge Counts of this District further implemented these principles in a recently published decision. *National Ass'n of Mfgs. v. Securities and Exchange Comm'n*, 2022 WL 16727731 (W.D. Tex. Sept. 28, 2022) (a copy of which is attached hereto as Ex. 5). There, the Court held an announcement by agency staff that it would not enforce a deadline was "final agency action" because it was "not subject to further agency review." *Id.* at *3. In doing so, Judge Counts firmly rejected the same argument that the CFTC made here and held that an agency's reservation of discretion later to change its mind does not make the action any less reviewable by the courts. *Id.*

Importantly, in 2014, the CFTC reached the same conclusion—that expanded investment and trader limits for PredictIt were necessary "to produce more accurate results, which would promote the educational public interest purpose of the project." Doc. 15-1, 2014 No-Action Letter, at 5. The CFTC is permitted to reach a different view now, perhaps aligning with the Court's concerns about gambling. But the APA requires the agency *to explain why* in a manner that is not *arbitrary and capricious*. That did not happen here.

On this record, the Court should not and cannot rest any decision on an impression that the PredictIt Market's *raison d'etre* is no longer academic or to produce reliable data in the public interest.

Dated: December 8, 2022                                Respectfully submitted,

/s/ *Michael J. Edney*
Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue,
NW Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300 / F: (312) 577-1370
jbyron@steptoe.com

*Attorneys for Plaintiffs Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Predict It, Inc. Aristotle International, Inc., Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, and Wes Shepherd*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all Parties.

*/s/ Michael J. Edney*
Michael J. Edney