# Exhibit 4

45 F.4th 846
United States Court of Appeals, Fifth Circuit.

DATA MARKETING PARTNERSHIP, LP; LP Management Services, LLC, Plaintiffs—Appellees,

v.

UNITED STATES DEPARTMENT OF LABOR; Martin Walsh, Secretary, U.S. Department of Labor; United States of America, Defendants—Appellants.

No. 20-11179
|
FILED August 17, 2022

**Synopsis**
**Background:** Limited partnership which specialized in production and sale of its limited partners' electronic data to third-party purchasers, and its general partner, brought action against Department of Labor, challenging advisory opinion Department issued finding that proposed group health plan did not qualify as an employee welfare benefit plan governed by Employee Retirement Income Security Act (ERISA), limited partners were not "participants" under ERISA, and one common-law employee was not sufficient basis for plan to cover any number of limited partners. The United States District Court for the Northern District of Texas, Reed O'Connor, J., 490 F.Supp.3d 1048, granted plaintiffs' summary judgment motion, denied Department's cross-motion for summary judgment, vacated agency action, and permanently enjoined Department from refusing to acknowledge ERISA-status of plan or refusing to recognize limited partners as working owners of limited partnership. Department appealed.

**Holdings:** The Court of Appeals, Oldham, Circuit Judge, held that:

[1] advisory opinion consummated Department's decisionmaking process;

[2] advisory opinion determined rights, produced obligations, or caused legal consequences, and thus was final agency action;

[3] advisory opinion was arbitrary and capricious in violation of Administrative Procedure Act (APA); and

[4] district court was required to apply a totality-of-the-circumstances inquiry when determining whether limited partners were bona fide partners that qualified as ERISA plan participants.

Affirmed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion for Permanent Injunction.

West Headnotes (27)

[1] **Labor and Employment** Purpose

ERISA was enacted to protect the interests of participants in employee benefit plans and their beneficiaries. Employee Retirement Income Security Act of 1974 § 514, 29 U.S.C.A. § 1144(a).

[2] **Labor and Employment** Plans subject to regulation in general

If ERISA does not regulate a plan, then state law does. Employee Retirement Income Security Act of 1974 § 514, 29 U.S.C.A. § 1144(a).

[3] **Federal Courts** Summary judgment

Court of Appeals reviews the grant of summary judgment de novo.

1 Cases that cite this headnote

[4] **Administrative Law and Procedure** Discretion of lower court

**Federal Courts** Injunction

Court of Appeals reviews district court's permanent injunction and vacatur of agency action for abuse of discretion.

1 Cases that cite this headnote

[5] **Administrative Law and Procedure** Finality in General

Finality of agency action is a jurisdictional prerequisite of judicial review under the Administrative Procedure Act (APA). 5 U.S.C.A. § 704.

1 Cases that cite this headnote

[6] **Administrative Law and Procedure** What constitutes finality in general

There are two requirements for finality of agency action, as a jurisdictional prerequisite of judicial review under the Administrative Procedure Act (APA): (1) the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature—and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. 5 U.S.C.A. § 704.

2 Cases that cite this headnote

[7] **Labor and Employment** Judicial review

Advisory opinion by Department of Labor finding that proposed group health plan did not qualify as an employee welfare benefit plan governed by ERISA consummated Department's decisionmaking process, as would support finding that advisory opinion was final agency action subject to Administrative Procedure Act (APA) review, even though Department could change its position or its reasons for decision after more factfinding, since advisory opinion was not subject to further agency review. 5 U.S.C.A. § 704; Employee Retirement Income Security Act of 1974 § 3, 29 U.S.C.A. § 1002(1).

1 Cases that cite this headnote

[8] **Administrative Law and Procedure** What constitutes finality in general

Possibility that an agency can change its position or its reasons for the decision after more factfinding is a common characteristic of agency action and does not make an otherwise definitive decision nonfinal for purposes of Administrative Procedure Act's (APA) finality requirement for judicial review. 5 U.S.C.A. § 704.

[9] **Administrative Law and Procedure** Finality in General
**Administrative Law and Procedure** Particular Agency Actions

For purposes of the Administrative Procedure Act's (APA) finality requirement for judicial review, agency action is either final or not, and mere fact that agency could, or actually does, reverse course in future does not change that fact. 5 U.S.C.A. § 704.

1 Cases that cite this headnote

[10] **Labor and Employment** Judicial review

Advisory opinion by Department of Labor finding that proposed group health plan did not qualify as an employee welfare benefit plan governed by ERISA determined rights, produced obligations, or caused legal consequences, and thus advisory opinion was final agency action subject to Administrative Procedure Act (APA) review, even if there were preconditions to requestor's reliance, and even though a future event must occur to satisfy those preconditions; advisory opinion bound Department to some degree, withdrew its previously held discretion, and was binding as a practical matter as failure to obtain advisory opinion could have caused unusual hardship, and Department had choice to provide non-final agency action in the form of an information letter but instead chose to provide an advisory opinion. 5 U.S.C.A. § 704; Employee Retirement Income Security Act of 1974 § 3, 29 U.S.C.A. § 1002(1).

[11] **Administrative Law and Procedure** What constitutes finality in general

Where agency action withdraws an entity's previously held discretion, that action alters the legal regime and binds the entity and thus qualifies as final agency action, as a jurisdictional prerequisite of judicial review

under the Administrative Procedure Act (APA). 5 U.S.C.A. § 704.

[12] **Administrative Law and Procedure** ⚬ Particular Agency Actions

Fact that advisory opinion procedure is complete and deprives plaintiff of legal right that it would enjoy if it had obtained favorable resolution in advisory opinion process denies right with consequences sufficient to warrant review as final agency action under Administrative Procedure Act (APA). 5 U.S.C.A. § 704.

[13] **Administrative Law and Procedure** ⚬ Review for arbitrary, capricious, unreasonable, or illegal actions in general

Administrative Procedure Act's (APA) arbitrary and capricious standard of review requires that agency action be reasonable and reasonably explained. 5 U.S.C.A. § 706(2).

[14] **Administrative Law and Procedure** ⚬ Wisdom, judgment, or opinion in general

Under the Administrative Procedure Act's (APA) arbitrary and capricious standard of review, courts must not substitute its own policy judgment for that of the agency. 5 U.S.C.A. § 706(2).

[15] **Administrative Law and Procedure** ⚬ Review for arbitrary, capricious, unreasonable, or illegal actions in general

Under the Administrative Procedure Act's (APA) arbitrary and capricious standard of review, courts must ensure that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision. 5 U.S.C.A. § 706(2).

[16] **Administrative Law and Procedure** ⚬ Review for arbitrary, capricious, unreasonable, or illegal actions in general

**Administrative Law and Procedure** ⚬ Review for correctness or error

Under the Administrative Procedure Act's (APA) arbitrary and capricious standard of review, courts must set aside any action premised on reasoning that fails to account for relevant factors or evinces a clear error of judgment. 5 U.S.C.A. § 706(2).

[17] **Administrative Law and Procedure** ⚬ Theory or grounds not provided or relied upon by agency

**Administrative Law and Procedure** ⚬ Timing of theory and grounds asserted

In reviewing agency's action under the Administrative Procedure Act (APA), court may consider only reasoning articulated by agency itself; court cannot consider post hoc rationalizations. 5 U.S.C.A. § 706(2).

[18] **Administrative Law and Procedure** ⚬ Review for arbitrary, capricious, unreasonable, or illegal actions in general

Fact that agency provided post hoc rationalization is relevant evidence that action is arbitrary and capricious in violation of Administrative Procedure Act (APA). 5 U.S.C.A. § 706(2).

[19] **Labor and Employment** ⚬ Actions for Regulatory Supervision

Department of Labor's advisory opinion finding that limited partners did not qualify as working owners of limited partnership, and thus did not qualify as ERISA plan participants, contained an unexplained inconsistency in that it failed to reasonably explain adoption of definition of "working owner" that was materially

different from definitions in previous advisory opinions, and thus advisory opinion was arbitrary and capricious in violation of Administrative Procedure Act (APA); Department ignored prior advisory opinions and its regulation adopting a definition of term in a related context, even though Department had justified at length its prior definition of "working owner" in promulgating regulation, which limited partnership had cited in its advisory opinion request, and Department's arguments explaining away prior advisory opinions and regulation were not made in advisory opinion itself and thus were impermissible post hoc rationalizations. 5 U.S.C.A. § 706(2); Employee Retirement Income Security Act of 1974 § 3, 29 U.S.C.A. § 1002(1); 29 C.F.R. § 2510.3-5(e).

[20] **Administrative Law and Procedure** ⚬ Explanation or reasons for change

An unexplained inconsistency is the hallmark of an arbitrary and capricious change from agency practice.

[21] **Labor and Employment** ⚬ Actions for Regulatory Supervision

If courts must give the Department of Labor's advisory opinions *Skidmore* deference, then the Department itself must meaningfully consider relevant advisory opinions as well to issue a reasonable and reasonably explained action under the Administrative Procedure Act's (APA) arbitrary and capricious standard. 5 U.S.C.A. § 706(2).

[22] **Labor and Employment** ⚬ Shareholders, partners or owners of employer

When assessing questions related to whether working owners qualify as ERISA plan participants, courts are required to determine whether ERISA's text provides specific guidance on the precise question before the court, such that resort to the common law is unnecessary; to determine whether ERISA provides adequate information, courts must consider, among other things, all four titles of ERISA and the Internal Revenue Code. 26 U.S.C.A. § 1 et seq.; Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[23] **Labor and Employment** ⚬ Judicial review

Remand from Court of Appeals was warranted for district court to determine whether all factors, including various provisions of ERISA and Internal Revenue Code, combined to make particular working owners of limited partnership qualify as ERISA plan participants. 26 U.S.C.A. § 1 et seq.; Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[24] **Labor and Employment** ⚬ Shareholders, partners or owners of employer

District court was required to apply a totality-of-the-circumstances inquiry when determining whether limited partners were bona fide partners that qualified as ERISA plan participants. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; 29 C.F.R. § 2590.732(d)(2).

[25] **Labor and Employment** ⚬ Judicial review

Remand from Court of Appeals was warranted for district court to apply totality-of-the-circumstances inquiry when determining whether limited partners were bona fide partners that qualified as ERISA plan participants, and to consider whether Department of Labor's interpretation of regulation concerning bona fide partners warranted *Auer* deference or whether Department forfeited the argument for such deference. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.; 29 C.F.R. § 2590.732(d)(2).

[26] **Administrative Law and Procedure** ⚬ Annulment, Vacatur, or Setting Aside of Administrative Decision

The default rule is that vacatur of arbitrary and capricious agency action is the appropriate remedy under the Administrative Procedure Act (APA). 5 U.S.C.A. § 706(2).

1 Cases that cite this headnote

[27] **Labor and Employment** ⚖ Judicial review

The Department of Labor forfeited for appellate review argument that the district court abused its discretion in following the default rule that vacatur of arbitrary and capricious agency action is the appropriate remedy under the Administrative Procedure Act (APA) by not developing argument. 5 U.S.C.A. § 706(2).

**\*850** Appeal from the United States District Court for the Northern District of Texas, USDC No. 4:19-cv-800, Robert B. O'Connor, U.S. Magistrate Judge

**Attorneys and Law Firms**

Jonathan D. Crumly, Sr., Bryan Francis Jacoutot, Reginald L. Snyder, Taylor English Duma, L.L.P., Atlanta, GA, Warren W. Harris, Bracewell, L.L.P., Houston, TX, for Plaintiffs-Appellees.

Michael Shih, Mark Bernard Stern, Esq., U.S. Department of Justice, Civil Division, Appellate Section, Washington, DC, for Defendants-Appellants.

Nandan M. Joshi, Counsel, Allison M. Zieve, Public Citizen Litigation Group, Washington, DC, for Amicus Curiae Public Citizen.

Kathryn McDermott Speaks, Pennsylvania Insurance Department, Harrisburg, PA, for Amici Curiae Pennsylvania Insurance Department, Colorado Division of Insurance, Connecticut Insurance Department, District of Columbia Department of Insurance, Securities & Banking, Hawaii Insurance Division, Maine Bureau of Insurance, Maryland Insurance Administration, New Mexico Office of Superintendent of Insurance, Oregon Department of Consumer & Business Services - Financial Regulation Division, South Dakota Department of Labor and Regulation - Division of Insurance, Vermont Department of Financial Regulation, Washington Office of Insurance Commissioner.

Jason Elam, Cosmich, Simmons & Brown, P.L.L.C., New Orleans, LA, for Amici Curiae Adam Rochestere, John Fiedler, Benjamin Clear.

Michael T. Raupp, Husch Blackwell, L.L.P., Kansas City, MO, Jennifer Maureen McAdam, National Association of Insurance Commissioners, Kansas City, MO, for Amicus Curiae National Association of Insurance Commissioners.

Jon Breyfogle, Tammy Killion, Matthew W. Lanahan, Groom Law Group, Chartered, Washington, DC, for Amicus Curiae Blue Cross Blue Shield Association.

Alexander Kazam, King & Spalding, L.L.P., King & Spalding, L.L.P., for Amici Curiae Leukemia and Lymphoma Society, American Cancer Society, American Cancer Society Cancer Action Network, Cystic Fibrosis Foundation, National Organization for Rare Disorders.

Caroline Van Zile, Esq., Office of the Attorney General for the District of Columbia, Office of the Solicitor General, Washington, DC, for Amici Curiae District of Columbia, State of California, State of Colorado, State of Connecticut, State of Delaware, State of Illinois, State of Maine, State of Maryland, State of Massachusetts, State of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Pennsylvania, State of Rhode Island, State of Vermont, State of Virginia, State of Washington, State of Wisconsin.

Before Smith, Elrod, and Oldham, Circuit Judges.

**Opinion**

Andrew S. Oldham, Circuit Judge:

**\*851** There are three questions presented. The first is whether the Department of Labor's self-labeled "advisory opinion" is reviewable "final agency action" under the Administrative Procedure Act. It is. The second is whether the Department's action is arbitrary, capricious, or otherwise contrary to law. Again, it is. The third is whether the district court issued the appropriate relief. Here, we affirm the district court's vacatur of the agency action. But we vacate and remand the district court's injunction for further consideration in light of this opinion.

I.

We first (A) detail the relevant statutory and regulatory background. Then we (B) describe the factual and procedural background.

A.

 [1]  [2]   First, some legal background. This appeal involves the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA was "[e]nacted to protect the interests of participants in employee benefit plans and their beneficiaries." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004) (quotation omitted). It "pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Rutledge v. Pharm. Care Mgmt. Ass'n*, ––– U.S. ––––, 141 S. Ct. 474, 479, 208 L.Ed.2d 327 (2020) (quoting 29 U.S.C. § 1144(a)). If ERISA doesn't regulate the plan, then state law does.

One relevant plan regulated by ERISA is an "employee welfare benefit plan," which can be used by employers to provide health insurance to "participants." 29 U.S.C. § 1002(1). ERISA defines a "participant" as "any employee or former employee of an employer, ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ..., or whose beneficiaries may be eligible to receive any such benefit." *Id.* § 1002(7). It in turn defines an "[e]mployee" as "any individual employed by an employer" and an "employer" as "any person acting directly as an employer, or indirectly in the interest **852** of an employer, in relation to an employee benefit plan." *Id.* § 1002(5), (6). As relevant here, a "working owner" or a "bona fide partner" may be an "employee." *See Yates*, 541 U.S. at 6, 124 S.Ct. 1330 (working owner); 29 C.F.R. § 2590.732(d)(2) (bona fide partner).

The Department of Labor set up a procedure to formally provide guidance to entities. *See* Advisory Opinion Procedure, 41 Fed. Reg. 36,281 (Aug. 27, 1976). It provides two options: (1) "advisory opinions" and (2) "information letters." An "advisory opinion" is "a written statement issued to an individual or organization, or to the authorized representative ..., that interprets and applies the Act to a specific factual situation." *Id.* at 36,282. In certain circumstances, the requester "may rely on the opinion." *Id.* at 36,283. By contrast, an "information letter" is "a written statement ... that does no more than call attention to a well-established interpretation or principles ... without applying it to a specific factual situation." *Id.* at 36, 282.

B.

Next, the factual and procedural background. LP Management Services, LLC ("Management Services") serves as the general partner of several limited partnerships, including Data Marketing Partnership ("Data Marketing").

In November 2018, Management Services requested an advisory opinion from the Department to confirm that a proposed health insurance plan for its limited partnerships would qualify as an employee welfare benefit plan under ERISA. In the request, it described Data Marketing's business model. Its business is "the capture, segregation, aggregation, and sale to third-party marketing firms of electronic data generated by [limited partners] who share such data with" Data Marketing. The limited partners share that data by "install[ing] specific software [that] tracks the capture of such data by other companies ... and provides access of such data to" Data Marketing. Data Marketing then processes, aggregates, and sells that data to marketers.

The request also described the limited partners' relationship with Data Marketing. Individuals become limited partners by executing a joinder agreement subject to the approval of Management Services. They then receive a "Limited Partnership Interest" that permits them to "participate in global management issues through periodic votes of all Partners." That partnership interest also lets them receive income distributions from Data Marketing that "will be reported as guaranteed payments and subject to employment taxes."

By October 2019, the Department still had not issued an advisory opinion. So plaintiffs sued, sought a declaration that their plan was covered by ERISA, and moved for an injunction ordering the Department not to release a contrary advisory opinion.

A few months later, the Department issued a six-page advisory opinion. Based on the facts in the request and the complaint, the Department concluded that plaintiffs' plan was not covered by ERISA. According to the Department, the limited partners were neither working owners nor bona fide partners because their work lacked hallmarks of a traditional employment relationship and their financial stake

and participation in the management of the business was not serious enough. The Department also emphasized that plaintiffs' structure was a sham, intended only to sell insurance to consumers under ERISA rather than state law.

Plaintiffs then amended their complaint to challenge the lawfulness of the advisory opinion. Thereafter, plaintiffs and the Department **\*853** cross-moved for summary judgment. The district court granted plaintiffs' motion, denied the Department's cross-motion, vacated the agency action, and permanently enjoined the Department "from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners of" Data Marketing.

The district court reached two relevant conclusions. First, the district court concluded that the advisory opinion was final agency action. That's because no further agency review was available and because the opinion denied plaintiffs the safe harbor of federal preemption, which exposed them to state insurance regulation. Second, the district court concluded that the advisory opinion was arbitrary, capricious, and contrary to law. The court determined that the limited partners were "working owners" under a definition that the Department had previously used in another advisory opinion. In the alternative, the district court determined that the limited partners were "bona fide partners" because they had a "more-than-pretextual relationship" with Data Marketing and because the "bona fide partner" standard was easier to meet than the "working owner" standard.

[3] [4] The Department timely appealed. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment *de novo. Playa Vista Conroe v. Ins. Co. of the W.*, 989 F.3d 411, 414 (5th Cir. 2021). And we review the district court's permanent injunction and vacatur of the agency action for abuse of discretion. *Whole Woman's Health v. Paxton*, 10 F.4th 430, 438 (5th Cir. 2021) (en banc); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021).

We (II) determine whether the advisory opinion is final agency action. We next (III) address whether the advisory opinion is (A) arbitrary and capricious and (B) contrary to law because it unreasonably interpreted the applicable statutory and regulatory provisions. Finally, we (IV) tackle the proper remedy.

II.

[5] [6] Start with finality. The Administrative Procedure Act ("APA") provides judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Our circuit considers finality "a jurisdictional prerequisite of judicial review." *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016). There are two requirements: (A) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597, 136 S.Ct. 1807, 195 L.Ed.2d 77 (2016) (quotation omitted). And (B) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Ibid.* (quotation omitted). This is generally a "pragmatic" inquiry. *Id.* at 599, 136 S.Ct. 1807 (quotation omitted); *but see Biden v. Texas*, ––– U.S. ––––, 142 S. Ct. 2528, 2559 n.7, 213 L.Ed.2d 956 (2022) (Alito, J., dissenting) (explaining that the Court sometimes uses an "expansive, formalist approach to the second *Bennett* factor ... at odds with the usual pragmatic approach" (quotation omitted)). We consider each requirement in turn and find both satisfied.

A.

[7] The advisory opinion consummated the Department's decisionmaking process. That's because it is "not subject to further Agency review." **\*854** *Sackett v. EPA*, 566 U.S. 120, 127, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012). The Department effectively concedes that the advisory opinion is not subject to additional agency review.

[8] [9] Instead, the Department recycles an argument that the Supreme Court has repeatedly rejected: The action isn't final because the agency can change its position or its reasons for the decision after more factfinding. This argument is squarely foreclosed by numerous Supreme Court decisions. *See, e.g., ibid.* ("The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal."); *Hawkes*, 578 U.S. at 598, 136 S.Ct. 1807 ("The Corps may revise an [action] within the five-year period based on new information. That possibility, however, is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." (quotation omitted)). An action is either final or

not, and the mere fact that the agency could—or actually does—reverse course in the future does not change that fact. *See Biden v. Texas*, 142 S. Ct. at 2545 ("[B]oth the June 1 Memorandum and the October 29 Memoranda, *when they were issued*, marked the consummation of the agency's decisionmaking process and resulted in rights and obligations being determined." (emphasis added) (quotation omitted)). Were it otherwise, no agency action would be final because an agency could always revisit it. And that can't be right. [1]

---

[1] The Department also points to *Taylor-Callahan-Coleman Counties District Adult Probation Department v. Dole*, 948 F.2d 953 (5th Cir. 1991), for the idea that actions that are "subject to change" are not final. *See id.* at 957. This opinion was contradicted by the Supreme Court's subsequent decisions in *Sackett* and *Hawkes*, so we aren't bound by it. *See, e.g., Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018).

Prong one is thus satisfied.

### B.

**[10]** The advisory opinion also determined rights, produced obligations, or caused legal consequences. That's for three reasons.

**[11]** First, it's well-established that "where agency action withdraws an entity's previously held discretion, that action alters the legal regime, binds the entity, and thus qualifies as final agency action." *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019) (quotation omitted). The advisory opinion did that here. The applicable regulation provides requestors the right to "rely" in certain circumstances on the opinion. 41 Fed. Reg. at 36,283. So the advisory opinion bound the Department to some degree and withdrew its previously held discretion. That's textbook final agency action.

Contrary to the Department's suggestion, it doesn't matter that there are preconditions to the requestor's reliance. *See* 41 Fed. Reg. at 36,283 (allowing reliance where the request is accurate). Nor does it matter that a future event must occur to satisfy those preconditions. *See Biden v. Texas*, 142 S. Ct. at 2545 n.7 ("The fact that the agency could not cease implementing MPP, as directed by the October 29 Memoranda, until it obtained vacatur of the District Court's injunction, did not make the October 29 Memoranda any less the agency's final determination of its employees' obligation to do so once such judicial authorization had been obtained."). All that matters is that, when those preconditions are met, the Department loses discretion.

**[12]** The Department insists that it hasn't lost any discretion because plaintiffs can't prevent state regulation with the particular **\*855** advisory opinion they received. In other words, the Department focuses on how plaintiffs would use the *current* advisory opinion rather than the advisory opinion *plaintiffs wanted*. That focus is wrong. "The fact that the advisory opinion procedure is complete and deprives the plaintiff of a legal right ... [that] it would enjoy if it had obtained a favorable resolution in the advisory opinion process ... denies a right with consequences sufficient to warrant review." *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010) (quotation omitted); *see also Env't Def. Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 589 n.8 (D.C. Cir. 1971). The Department can't escape finality just by ruling against the requester.

Second, the applicable regulation contemplates that the "failure to obtain an advisory opinion" can cause "unusual hardship." 41 Fed. Reg. at 36,282. This further confirms that an advisory opinion is "binding as a practical matter" and thus final. *Texas v. EEOC*, 933 F.3d at 442 (quotation omitted). After all, how can an advisory opinion alleviate "unusual hardship" without determining any rights, producing any obligations, or causing any legal consequences?

Third, comparing the Department's advisory opinions to its information letters reinforces that its advisory opinions are final agency action. Information letters are "informational only" and are "not binding on the Department with respect to any particular factual situation." 41 Fed. Reg. at 36,282. Advisory opinions, by contrast, are the "opinion of the Department as to the application[s] of" ERISA and may be relied on in certain circumstances. *Id.* at 36,283. The Department thus had the choice to provide final agency action (advisory opinion) instead of non-final agency action (information letter). *See id.* at 36,282 ("[T]he Department may, when it is deemed appropriate and in the best interest of sound administration of the Act, issue information letters calling attention to established principles under the Act, even though the request that was submitted was for an advisory opinion."). It chose final agency action. And that choice has consequences.

Prong two is thus satisfied. The agency's action is final.

### III.

Next, the action's lawfulness. We (A) conclude that the advisory opinion is arbitrary and capricious. We then (B) frame the relevant interpretive questions for the district court's consideration on remand.

### A.

[13] [14] [15] [16] The APA directs courts to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, ––– U.S. ––––, 141 S. Ct. 1150, 1158, 209 L.Ed.2d 287 (2021). We must not "substitute" our "own policy judgment for that of the agency." *Ibid*. Still, we must ensure that "the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Ibid.*; *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). "Put simply, we must set aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a clear error of judgment.' " *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475 (5th Cir. 2021) (quoting **\*856** *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

[17] [18] In reviewing an agency's action, we may consider only the reasoning "articulated by the agency itself"; we cannot consider *post hoc* rationalizations. *State Farm*, 463 U.S. at 50, 103 S.Ct. 2856; *see also DHS v. Regents of the Univ. of Cal.*, ––– U.S. ––––, 140 S. Ct. 1891, 1909, 207 L.Ed.2d 353 (2020) ("An agency must defend its actions based on the reasons it gave when it acted."). At the same time, the fact that an agency provided a *post hoc* rationalization is relevant evidence that the action is arbitrary and capricious. *See, e.g., Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) ("The very fact that the FDA perceived the need to rehabilitate its Order with new and different arguments before our court underscores that the Order itself omitted a reasoned justification for the agency's action."); *Texas v. Biden*, 20 F.4th 928, 993 (5th Cir. 2021).[2]

[2] The Supreme Court recently reversed our judgment in *Texas v. Biden*. *See Biden v. Texas*, 142 S. Ct. at 2548 (reversing the court of appeals). It's thus important to determine the extent to which the panel's opinion is still binding under this circuit's rule of orderliness. Our rule of orderliness requires us to follow the panel opinion except for the portions of it on statutory interpretation and final agency action. *See Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 n.57 (5th Cir. 2001) (concluding that circuit opinions in which the judgment was reversed on some but not all grounds are still precedential with respect to the portions not reversed); *United States v. Kirk*, 528 F.2d 1057, 1063–64 (5th Cir. 1976); *see also Texas v. United States*, 40 F.4th 205, 222 n.9 (5th Cir. 2022) (per curiam) (understanding *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), to be binding on all grounds not reversed). So the panel's understanding of arbitrary-and-capricious review, reviewability under *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), Article III standing, mootness, &c. remains binding. *Cf. Stokes v. Sw. Airlines*, 887 F.3d 199, 205 (5th Cir. 2018) ("[T]he determination whether a given precedent has been abrogated is itself a determination subject to the rule of orderliness.").

Our review is "not toothless." *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1013 (5th Cir. 2019). In fact, it's well-established that "after *Regents*, it has serious bite." *See, e.g., Wages*, 16 F.4th at 1136; *Texas v. United States*, 40 F.4th 205, 226 (5th Cir. 2022) (per curiam).

[19] The Department failed to "reasonably consider[ ] the relevant issues and reasonably explain[ ]" the advisory opinion. *Prometheus*, 141 S. Ct. at 1158; *see also Michigan v. EPA*, 576 U.S. 743, 750, 752, 135 S.Ct. 2699, 192 L.Ed.2d 674 (2015) ("[A]gency action is lawful only if it rests on a consideration of the relevant factors" and "important aspect[s] of the problem." (quotation omitted)). The key factors the Department ignored were its prior advisory opinions discussing the term "working owner" and its regulation adopting a definition of the term in a related context. *See* Dep't of Labor, Advisory Op. No. 99-04A, 1999 WL 64920, at *2 n.3 (Feb. 4, 1999) [hereinafter 1999 opinion]; Dep't of Labor, Advisory Op. No. 2006-04A, 2006 WL 1401678, at *3 (Apr. 27, 2006) [hereinafter 2006 opinion]; Definition of "Employer" Under Section 3(5) of ERISA—

Association Health Plans, 83 Fed. Reg. 28,912, 28,931 (June 21, 2018); 29 C.F.R. § 2510.3-5(e). These omissions doom the Department's action.

Start with the omitted advisory opinions. In 1999, the Department issued an advisory opinion that characterized the term "working owner":

> By the term "working owner," [the requester] apparently mean[s] any individual who has an equity ownership right of any nature in a business enterprise and who is actively engaged in providing services to that business, as distinguished **\*857** from a "passive" owner, who may own shares in a corporation, for example, but is not otherwise involved in the activities in which the business engages for profit.

1999 opinion, *supra*, at \*2 n.3. In 2006, the Department issued another advisory opinion reiterating this prior characterization. *See* 2006 opinion, *supra*, at \*3. Yet the Department never even mentioned this prior characterization in the advisory opinion at issue here.

[20] [21] The Department's failure is hardly "reasoned decisionmaking." *Michigan*, 576 U.S. at 750, 135 S.Ct. 2699 (quotation omitted). The opinion at issue adopts a definition of "working owner" materially different from the definitions in the 1999 and 2006 opinions. The opinion thus has "an unexplained inconsistency"—the hallmark of "an arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222, 136 S.Ct. 2117, 195 L.Ed.2d 382 (2016) (quotation omitted). Plus, if courts must give the Department's advisory opinions *Skidmore* deference, then the Department itself must meaningfully consider relevant advisory opinions as well to issue a "reasonable and reasonably explained" action. *Prometheus*, 141 S. Ct. at 1158. "That omission alone renders [the Department's opinion] arbitrary and capricious, but it was not the only defect." *Regents*, 140 S. Ct. at 1896.

The Department justifies ignoring its prior characterization of the term "working owner" because the characterization originated in an advisory opinion predating the Supreme Court's 2004 decision in *Yates*. But *Yates* is no justification. For one thing, the Department referred to the 1999 opinion's definition of "working owner" after *Yates* in the 2006 advisory opinion. *See* 2006 opinion, *supra*, at \*3. For another, the Supreme Court in *Yates* relied on that very same 1999 opinion, though not specifically for defining the term "working owner." *See* 541 U.S. at 17–18, 20, 124 S.Ct. 1330. Still, *Yates* shows that the Department was on notice of the 1999 opinion's significance and potential continued significance. And in all events, Data Marketing cited the 1999 opinion in its submission, putting the Department on notice of the relevant authority.

The Department also failed to address a regulation that adopted a definition of "working owner." *See* 29 C.F.R. § 2510.3-5(e) (definition). The Department in promulgating the regulation justified at length its definition of "working owner." *See* 83 Fed. Reg. at 28,929–33; *see also id.* at 28,964 (providing the definition). Yet the Department adopted a contrary definition in the opinion here and never acknowledged the regulation. It did so even though Data Marketing cited the regulation in its request. One would think that a reasonable agency's "natural response" to seeing a regulation with a definition of the exact same term at issue in the request would be to consider the definition—perhaps explaining why the Department is adopting a different one. *Regents*, 140 S. Ct. at 1916.[3]

[3] It's true that a district court in March 2019 held the regulation's definition unreasonable because it included working owners without employees. *See New York v. DOL*, 363 F. Supp. 3d 109, 136–39 (D.D.C. 2019). But this makes the Department's failure to discuss the regulation all the more perplexing. The Department appealed the decision to defend the definition. If the definition is worth defending in court, it's worth meaningfully addressing in an advisory opinion when the request cites the regulation.

More fundamentally, the Department spills much ink in its response brief either explaining away the prior advisory opinions and the regulation or arguing that the definitions they adopted are consistent with the ones adopted elsewhere. But all those arguments were not made in the **\*858** final agency action itself and thus aren't "contemporaneous explanations." *Regents*, 140 S. Ct. at 1909. They are instead "impermissible *post hoc* rationalizations." *Ibid.* And these *post hoc* rationalizations confirm that the action here is

arbitrary and capricious. *See Wages*, 16 F.4th at 1140; *Texas v. Biden*, 20 F.4th at 993.

B.

Next we consider whether the district court interpreted the relevant provisions correctly. The court interpreted two relevant terms: (1) "working owner" and (2) "bona fide partners." We remand as to both terms, so that the district court may address certain interpretive questions in the first instance.

1.

First, "working owner." In *Yates*, the Supreme Court concluded that a "working owner" may qualify as an "employee" and a "participant" under ERISA. 541 U.S. at 6, 124 S.Ct. 1330. In reaching this conclusion, the Court did not "resort to common law." *Id.* at 12, 124 S.Ct. 1330. Instead, the Court determined that "ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants" and that "these indications combine to provide specific guidance." *Ibid.* (quotation omitted). The Court, however, did not "clearly define who exactly makes up this class of 'working owners.' " *Id.* at 25 n.\*, 124 S.Ct. 1330 (Thomas, J., concurring in the judgment). All it said was that "a working owner may have dual status, *i.e.*, he can be an employee entitled to participate in a plan and, at the same time, the employer (or owner or member of the employer) who established the plan." *Id.* at 16, 124 S.Ct. 1330 (majority op.); *see also ibid.* (stating that "a working owner can wear two hats, as an employer and employee"). Lower courts were thus left to determine the scope of the term.

 **[22]** *Yates* nevertheless provided courts a framework for assessing working-owner questions. *Yates* requires courts to determine whether ERISA's text provides "specific guidance" on the precise question before the court, such that resort to the common law is unnecessary. To determine whether ERISA provides "adequate[ ] informati[on]," courts must consider, among other things, all four titles of ERISA and the Internal Revenue Code. *Ibid.*; *see also id.* at 12–13, 124 S.Ct. 1330 ("Congress enacted ERISA against a backdrop of IRC provisions that permitted corporate shareholders, partners, and sole proprietors to participate in tax-qualified pension plans.... Congress' objective was to harmonize ERISA with longstanding tax provisions.").

 **[23]** The district court did not perform this analysis. It appears to have understood *Yates* to say that ERISA *always* provides specific guidance for *all* working-owner questions. In our estimation, however, *Yates* only concluded there was sufficient guidance for the particular threshold question before the Court—*i.e.*, whether working owners may qualify as participants at all. That, however, does not mean the same guidance is relevant, let alone specific enough, to resolve all working-owner questions. Rather, the question on remand is whether all of the *Yates* factors, including the various provisions of ERISA and the IRC, combine to make these particular working owners qualify as plan participants.

2.

**[24]** Now, bona fide partners. The applicable regulation says:

> *Employment relationship.* In the case of a group health plan, the term *employer* **\*859** also includes the partnership in relation to any bona fide partner. In addition, the term *employee* also includes any bona fide partner. Whether or not an individual is a bona fide partner is determined based on all the relevant facts and circumstances, including whether the individual performs services on behalf of the partnership.

29 C.F.R. § 2590.732(d)(2). The regulation requires the determination to be "based on all the relevant facts and circumstances" and then provides one example consideration ("whether the individual performs services on behalf of the partnership"). In essence, the regulation commands a totality-of-the-circumstances analysis.

The district court did not appear to apply a totality-of-the-circumstances inquiry. It instead understood the regulatory definition to "simply require[ ] a more-than-pretextual relationship between the employer and employee." And it determined that the limited partners were bona fide partners because the "standard is a lower threshold" than for working owners. Insofar as these standards differ from a totality-of-the-circumstances inquiry, the district court erred.

**[25]** As with the working-owner inquiry, we believe it best to remand for the district court to apply the totality-of-the-circumstances inquiry in the first instance. On remand, the district court should also consider whether the Department's interpretation of the regulation warrants *Auer* deference or whether the Department forfeited the argument for such deference. *See Ortiz v. McDonough*, 6 F.4th 1267, 1275–76 (Fed. Cir. 2021) (*Auer* deference forfeitable); *cf. HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, —— U.S. ——, 141 S. Ct. 2172, 2180, 210 L.Ed.2d 547 (2021) ("[T]he government is not invoking *Chevron*. We therefore decline to consider whether any deference might be due its regulation." (quotation omitted)); *Texas v. Biden*, 20 F.4th at 961 ("The Government thus forfeited the *Chevron* issue by failing to mention it in its brief.").

### IV.

**[26]** **[27]** Next, the proper remedy. The APA gives courts the power to "hold unlawful and set aside agency action[s]." 5 U.S.C. § 706(2). Under prevailing precedent, § 706 "extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to 'set aside'—*i.e.*, formally nullify and revoke—an unlawful agency action." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018); *see also id.* at 1012–16; *Texas v. Biden*, 20 F.4th at 957 ("That statutory empowerment means that, unlike a court's decision to hold a statute unconstitutional, the district court's vacatur rendered the June 1 Termination Decision *void*." (emphasis added)); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur [of an agency action] retroactively undoes or expunges a past [agency] action.... Unlike an injunction, which merely blocks enforcement, vacatur unwinds the challenged agency action."); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) (describing vacatur as "a less drastic remedy" than an injunction); *but see* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 YALE J. ON REG. BULL. 37 (2020). The default rule is that vacatur is the appropriate remedy. *See, e.g., Texas v. Biden*, 20 F.4th at 1000 ("[B]y default, remand *with* vacatur is the appropriate remedy."); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary **\*860** practice is to vacate unlawful agency action."). The Department makes no developed argument that the district court abused its discretion in following the default rule, so the Department forfeited the argument. *See, e.g., DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (concluding that an argument was "forfeited" because it wasn't "structured"); *United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020); *United States v. Avants*, 367 F.3d 433, 442 (5th Cir. 2004); *Trevino v. Johnson*, 168 F.3d 173, 181 n.3 (5th Cir. 1999). We therefore uphold the court's vacatur.

The district court also permanently "enjoined" the Department "from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners of" Data Marketing. This injunction, however, turned on the interpretative questions that the district court must further address on remand. So we vacate this injunction without opining on whether such relief might be appropriate.

\* \* \*

The Supreme Court has made clear that when it comes to arbitrary-and-capricious review, "the Government should turn square corners in dealing with the people." *Regents*, 140 S. Ct. at 1909 (quotation omitted). The Department failed to do that. For the foregoing reasons, the district court's judgment is AFFIRMED in part, VACATED in part, and REMANDED.

**All Citations**

45 F.4th 846