# Exhibit 5

2022 WL 16727731
United States District Court, W.D.
Texas, Midland-Odessa Division.

NATIONAL ASSOCIATION OF MANUFACTURERS
and Natural Gas Services Group, Inc., Plaintiffs,
v.
UNITED STATES SECURITIES AND EXCHANGE
COMMISSION and Gary Gensler, in his official
capacity as Chair of the SEC, Defendants.

No. MO:21-CV-183-DC
|
Signed September 28, 2022

**Attorneys and Law Firms**

Andrew A. Lyons-Berg, Paul W. Hughes, McDermott Will & Emery LLP, Washington, DC, Erica T. Klenicki, Patrick D. Hedren, NAM Legal Center, Washington, DC, Debbie E. Green, McDermott Will & Emery LLP, Dallas, TX, for Plaintiff National Association of Manufacturers.

Andrew A. Lyons-Berg, Paul W. Hughes, McDermott Will & Emery LLP, Washington, DC, Debbie E. Green, McDermott Will & Emery LLP, Dallas, TX, for Plaintiff Natural Gas Services Group, Inc.

B. David Fraser, Keefe Bernstein, U.S. Securities and Exchange Commission, Fort Worth, TX, Daniel Matro, Tracey A. Hardin, United States Securities and Exchange Commission, Washington, DC, for Defendants.

### MEMORANDUM OPINION

DAVID COUNTS, UNITED STATES DISTRICT JUDGE

*1 Three issues appear before the Court. First, did the SEC and Chair Gary Gensler ("Defendants") suspend a rule's compliance date? They did. Second, is this agency action reviewable under the Administrative Procedure Act? It is. Third, what is the appropriate relief? For the reasons explained below, the Court vacates the agency action and grants Plaintiffs National Associations of Manufacturers and Natural Gas Services Group's request for declaratory and injunctive relief.

### BACKGROUND

In September 2019, the SEC issued an interpretation and guidance ("2019 Interpretation and Guidance"), which addressed the application of the proxy rules to firms or proxy voting advice businesses ("PVABs").[1] This guidance described how investment advisers and institutional investors should vote their shares at shareholder meetings.[2] One month later, Institutional Shareholder Services, Inc. ("ISS"), a leading PVAB, challenged the 2019 Interpretation and Guidance in the United States District Court for the District of Columbia.[3] And at the beginning of 2020, the District Court for the District of Columbia granted the SEC's motion to hold that case in abeyance while the SEC considered proposed amendments to its proxy voting advice rules.[4]

[1] Commission Interpretation and Guidance Regarding the Applicability of the Proxy Rules to Proxy Voting Advice, 84 Fed. Reg. 47,416 (Sept. 10, 2019) ("2019 Interpretation and Guidance").

[2] *Id.*

[3] See *Institutional S'holder Servs., Inc. v. SEC et al.*, No. 1:19-cv-3275 (D.D.C.) [hereafter "*ISS Litigation*"].

[4] *Id.* at ECF No. 14.

On July 22, 2020, the SEC amended Exchange Act Rules 14a-1(l), 14a-2(b), and 14a-(9) ("2020 Rule Amendments").[5] The 2020 Rule Amendments memorialized three key points. First, they codified the SEC's view that proxy voting advice generally constitutes a "solicitation" as defined in Rule 14a-1(l). Second, the 2020 Rule Amendments added new conditions to exemptions from the proxy rules' information and filing requirements in Rule 14a-2(b), critically conditioning a PVAB's eligibility for the exemptions on making certain conflict-of-interest disclosures. Lastly, examples of material misstatements or omissions related to proxy voting advice were added to Rule 14a-9's note.

[5] See *Exemptions from the Proxy Rules for Proxy Voting Advice*, 85 Fed. Reg. 55,082 (Sept. 3, 2020).

Although the 2020 Rule Amendments became effective on November 2, 2020, the compliance date for the new Rule

14a-2(b)(9) exemption conditions—the Proxy Advice Rule—was set for December 1, 2020.

Around the same time, ISS added challenges to the 2020 Rule Amendments in its suit against the 2019 Interpretation and Guidance. ISS disputed the inclusion of proxy voting advice under "solicitation" and the new exemption conditions. ISS argued that the SEC doesn't have authority under § 14(a) to regulate proxy voting advice and that the Rule 14a-2(b)'s new conditions for exemption were arbitrary and capricious and violate the First Amendment.[6] National Associations of Manufacturers motioned to intervene in the ISS litigation soon after.

6   *ISS Litigation* at ECF No. 19.

**\*2** Then, three events occurred on the same day, June 1, 2021. First, the new Chair of the SEC, Gary Gensler ("Chair Gensler"), issued a "Statement on the Application of the Proxy Rules to Proxy Voting Advice," directing the staff to consider whether to recommend further regulatory action regarding proxy voting advice.[7] Second, right after Chair Gensler's statement, the SEC's Division of Corporate Finance ("the Division")—the entity responsible for overseeing the implementation of proxy rules—issued a statement declaring it would no longer recommend enforcement actions premised on the 2019 Interpretation and Guidance or the 2020 Rule Amendments while the SEC considered alternatives.[8] In other words, no enforcement actions would be recommended based on the compliance date.[9]

7   See Chair Gary Gensler, Statement on the Application of the Proxy Rules to Proxy Voting Advice (June 1, 2021), https://www.sec.gov/news/public-statement/gensler-proxy-2021-06-01.

8   SEC Division of Corporation Finance, Statement on Compliance with the Commission's 2019 Interpretation and Guidance Regarding the Applicability of the Proxy Rules to Proxy Voting Advice and Amended Rules 14a-1(l), 14a-2(b), 14a-9 (June 1, 2021), https://www.sec.gov/news/public-statement/corp-fin-proxy-rules-2021-06-01.

9   The Division did caution that the statement did not express any legal conclusion.

And lastly—again that same day—the SEC moved to hold the *ISS Litigation* in abeyance until either the end of the year or the promulgation of final rule amendments addressing proxy voting advice.[10] In their motion, Defendants stated that if the case was held in abeyance, "the Division's no-action statement provides ISS (as well as other proxy voting advice businesses) relief from the December 1, 2021 compliance date." All three acts combined ("Defendants' June 1 conduct") form the basis of Plaintiffs' complaint here.

10   *ISS Litigation* at ECF No. 53.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains, and the party is entitled to judgment as a matter of law. "When assessing a summary judgment motion in an APA case, the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law."[11] "In the context of a challenge to an agency action under the APA, '[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review.' "[12]

11   *Permian Basin Petrol. Ass'n v. U.S. Dep't of the Interior*, 127 F. Supp. 3d 700, 706 (W.D. Tex. 2015).

12   *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (quoting *Am. Stewards of Liberty v. Dep't of Interior*, 370 F. Supp. 3d 711, 723 (W.D. Tex. 2019)).

## DISCUSSION

Under the APA, final agency decisions on the agency's own regulations, whether it be to promulgate or repeal an existing rule, must undergo a notice-and-comment procedure before any change is made.[13] "Notice and comment" consists of the agency's publication of a "general notice of proposed rulemaking ... in the Federal Register" within the 30 days before the effective date of a substantive rule.[14] This applies to all forms of "rulemaking," which implicates the "agency process for formulating, amending, or repealing a rule."[15]

But to have jurisdiction, agency action must be reviewable. To be reviewable under the APA, the challenged conduct must constitute (1) a "final agency action" and (2) not be "committed to agency discretion by law." [16]

[13] 5 U.S.C. § 553; *Baylor Univ. Med. Ctr. v. Heckler*, 758 F.2d 1052, 1057 (5th Cir. 1985).

[14] *United States v. Torres*, 573 F. Supp. 2d 925, 948 (W.D. Tex. 2008) (citing 5 U.S.C. § 553(b)–(d)).

[15] § 551.

[16] §§ 704, 701(a)(2).

### I. Reviewability.

*3 The Fifth Circuit considers finality "a jurisdictional prerequisite of judicial review."[17] There are two requirements: (i) "the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature."[18] And (ii) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."[19] This is generally a "pragmatic" inquiry.[20] Both requirements are satisfied for the same reasons Plaintiffs prevail on the merits.

[17] *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016).

[18] *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016).

[19] *Id.*

[20] *Id.* at 599.

The suspension of the compliance date consummated the SEC's decision-making process. That's because it is "not subject to further Agency review."[21] To hold otherwise would mean the SEC could always revisit the compliance date of a final rule. That can't be right. "The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal."[22] "An action is either final or not, and the mere fact that the agency could—or actually does—reverse course in the future does not change that fact."[23] Prong one is satisfied.

[21] *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

[22] *Id.*; *Hawkes*, 578 U.S. at 598 ("The Corps may revise an [action] within the five-year period based on new information. That possibility, however, is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal.").

[23] *Data Marketing P'ship, LP v. DOL*, 45 F.4th 846, 854 (5th Cir. 2022).

The suspension of the compliance date also determined rights, produced obligations, or caused legal consequences. When the SEC suspended the Proxy Advice Rule's compliance deadline, it altered the legal regime, was binding, and thus qualifies as textbook final agency action.[24] Defendants chose to suspend the compliance date, which is final agency action. That choice has consequences. Prong two is satisfied.

[24] *Texas v. EEOC*, 933 F.3d 433, 442 (5th Cir. 2019).

### II. Merits.

The parties agree that compliance dates in binding legislative rules—like the Proxy Advice Rule—cannot be revised without notice-and-comment rulemaking.[25] And if an agency takes an action that ordinarily requires notice and comment, that action "by definition" constitutes "final agency action."[26] If Defendants suspended the compliance date as Plaintiffs assert, doing so would have constituted a final agency action.

[25] Docs. 25 at 6; 21 at 13.

[26] *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019); see also *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 806 (D.C. Cir. 2006) (explaining that the "final agency action" requirement is satisfied where the agency has issued a "de facto rule or binding norm that could not properly be promulgated absent ... notice-and-comment rulemaking," since the "two inquiries are alternative ways of viewing" the same "question").

#### A. Suspension of the compliance date.

Refusing to enforce the compliance date for a duly promulgated rule is a functional suspension of said rule.[27] Section 705 of the APA permits agencies to postpone the

"effective date" of an action only if "pending judicial review." At the same time, "effective date" is limited to the effective date of the regulation and "does not permit the agency to suspend without notice and comment a promulgated rule," including its post-effective compliance date.[28]

27  See California v. U.S. Bureau of Land Mgmt., 277 F. Sup. 3d 1106, 1126 (N.D. Cal. 2017).

28  Safety-Kleen Corp v. U.S. Env'tl Prot. Agency, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2–3 (D.C. Cir. Jan. 19, 1996).

**\*4** Plaintiffs claim that Defendants' June 1 conduct suspended the Proxy Advice Rule's compliance date without the required notice and comment. In response, Defendants argue that their conduct was not a suspension because none of the acts in isolation constituted rulemaking under the APA.

But the Court does not view Defendants' actions in the sterile isolation of a laboratory—their actions are analyzed in their totality.[29] And in totality, Defendants' June 1 conduct accomplished precisely what they wanted—to provide PVABs and other affected parties such as Plaintiffs with breathing room for complying with the Proxy Advice Rule by suspending the duly promulgated timeline. Indeed, deliberate non-enforcement of a compliance date for an indefinite period is functionally indistinguishable from suspending a compliance date, which has been found to be rulemaking under the APA.[30] Defendants invite the Court to find that all three of Defendants' statements on the same day were merely a happy coincidence.

29  See Azar v. Allina Health Servs., 139 S. Ct. 1804, 1812 (2019) ("[C]ourts have long looked to the *contents* of the agency's action ... when deciding whether statutory notice-and-comment demands apply.") (emphasis in original); *see also* Guardian Fed. Sav. & Loan Ass'n v. Fed. Sav. & Loan Ins. Corp., 589 F.2d 658, 666–67 (D.C. Cir. 1978) ("If it appears that a so-called policy statement is in purpose or likely effect one that narrowly limits administrative discretion, it will be taken for what it is....").

30  See Bureau of Land Mgmt., 277 F. Supp. 3d at 1121 (finding agency declaration that it will "postpone the compliance dates for certain sections of [a r]ule" to be rulemaking under §§ 551 and 553) (citing Waste Prevention, Production Subject to Royalties, and Resource Conservation; Postponement of Certain Compliance Dates, 82 Fed. Reg. 27,430, 27,430 (June 15, 2017)).

Such serendipity suspends belief. It's one thing to say Chair Gensler's statement in isolation is not binding. It's quite another when it is coupled the same day with the Division's statement and the motion for abeyance in the *ISS litigation*, thus effectively chaperoning the SEC through the door and into the ballroom of legislating. Defendants promulgated a "binding norm" of ambiguously postponing the Proxy Advice Rule's compliance deadline.[31]

31  Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 452 F.3d 798, 806 (D.C. Cir. 2006).

That's not to say Defendants cannot internally reconsider an SEC rule. They can. But internal consideration does not grant the ability "to indefinitely delay the existing rule pending that reconsideration."[32] So while Defendants can claim they have not suspended the compliance date, their actions—showing zero effort to enforce that date—say otherwise. Indeed, Defendants represented they had no idea whether any firms have complied with the deadline they claim they didn't suspend.[33] A fountain of knowledge miraculously run dry considering there are only two major players in the proxy voting industry—ISS and Glass, Lewis & Co.[34] So put simply, Defendants' argument is: "Who are you going to believe, me or your own eyes."[35]

32  Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 111–12 (2d Cir. 2018).

33  Doc. 37 at 25.

34  *Id.* at 11.

35  DUCK SOUP (Paramount Pictures 1933).

**B. Committed to agency discretion by law.**

**\*5** Because Defendants' conduct suspended the Proxy Advice Rule's compliance date, the only thing that would save Defendant from this Court's conclusion is if their action was "committed to agency discretion by law."[36] The agency discretion exception to judicial review is narrow, limited to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standing against

which to judge the agency's exercise of discretion."[37] That's not the case here.

[36] 5 U.S.C. § 701(a)(2)

[37] *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

Courts have recognized that "modification of effective dates is itself a rulemaking."[38] An agency cannot effectively repeal a final rule by indefinitely postponing its operative date.[39] So although they might wish it so, Defendants do not have the inherent power to stay or delay a final rule absent notice-and-comment rulemaking.[40] And without that discretion granted by law, Defendants' actions are not exempted from the notice-and-comment process. Thus, Defendants violated the APA by suspending the Proxy Advice Rule's compliance date without the required notice-and-comment rulemaking.

[38] *Clean Water Action v. U.S. Env'tl Prot. Agency*, 936 F.3d 308, 314 (5th Cir. 2019) (collecting authorities).

[39] *Nat. Res. Def. Council v. U.S. Env'tl Prot. Agency*, 683 F.2d 752, 762 (3d Cir. 1982).

[40] *Nat'l Venture Cap. Ass'n v. Duke*, 291 F. Supp. 3d 5, 15 (D.D.C. 2017).

### III. Relief.

The APA gives courts the power to "hold unlawful and set aside agency action[s]."[41] Section 706 empowers courts to "set aside—i.e., formally nullify and revoke—an unlawful agency action."[42] This renders the agency action void.[43]

The default rule is to vacate unlawful agency action.[44] Thus, the Court follows the ordinary practice here and **VACATES** Defendants' suspension of the Proxy Advice Rule's compliance date and **ENJOINS** Defendants from refusing to acknowledge or recognize the Proxy Advice Rule's compliance date.

[41] 5 U.S.C. § 706(2).

[42] *Data Marketing P'ship, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022).

[43] *Texas v. Biden*, 20 F.4th 928, 957(5th Cir. 2021), *as revised* (Dec. 21, 2021), *cert. granted*, 212 L. Ed. 2d 1, 142 S. Ct. 1098 (2022), and *rev'd and remanded*, 213 L. Ed. 2d 956, 142 S. Ct. 2528 (2022).

[44] *Data Marketing P'ship, LP v. DOL*, 45 F.4th at 860.

### CONCLUSION

Coincidence is just a messenger sent by truth. Yet Defendant expects this Court to accept this case's coincidences and turn a blind eye to the rest. The Court will not do so. Defendants' June 1 conduct achieved its end—a subtle wink to an industry with only two major players that the SEC would not enforce the Proxy Advice Rule's compliance deadline. But the means to that end were unlawful. Although its holding is limited to the narrow factual circumstances presented here, the Court holds that Defendants' June 1 conduct suspended the compliance deadline without undertaking the notice-and-comment rulemaking required by the APA. Thus, Plaintiffs are entitled to relief.

It is therefore **ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED**. (Doc. 45).

It is also **ORDERED** that Defendants' Cross-Motion for Summary Judgment is **DENIED**. (Doc. 46).

It is so **ORDERED**.

**All Citations**

Slip Copy, 2022 WL 16727731, Fed. Sec. L. Rep. P 101,479

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 5