**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., and ARISTOTLE INTERNATIONAL, INC., Plaintiffs,** | § | **A-22-CV-909-LY** |
| **V.** | § | |
| **COMMODITY FUTURES TRADING COMMISSION, Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant CFTC's Opposed Motion to Transfer Venue (Dkt. #8), Motion to Dismiss (Dkt. #19), Plaintiffs' Motion for Leave (Dkt. #30), and all related briefing.[1] After reviewing the pleadings and the relevant case law, and having held a hearing, the undersigned submits the following Report and Recommendation to the District Court.

## I. Background

Since 2014, Victoria University of Wellington, New Zealand ("Victoria University") has operated an online market for political-event contracts (the "Market"). Dkt. #15 (FAC) at ¶ 1. On October 29, 2014, the CFTC's Division of Market Oversight ("DMO") issued Victoria University a "No-Action Letter" regarding Victoria University's creation of a "small-scale, not-for-profit, online market for event contracts in the U.S. for educational purposes." Dkt. #15-1 at 2-3. Victoria

[1] The motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

University intended to operate two submarkets—one for political event contracts and the other for economic indicator contracts—and proposed to utilize the results of the market information derived from trading in these contracts for educational and research purposes. *Id*. at 3. Based on Victoria University's representations, the DMO stated it would not recommend the CFTC take any enforcement action in connection with the operation of the proposed market. *Id*. at 6. The No-Action Letter stated it was based on the information provided to the DMO and was subject to the conditions stated in the letter. *Id*. It also stated the no-action position represented only the views of the DMO and did not necessarily represent the CFTC's views. *Id*. The DMO also retained "authority to condition further, modify, suspend, terminate or otherwise restrict the terms of the no-action relief provided herein, in its discretion." *Id*. at 7.

On August 4, 2022, the DMO withdrew the No-Action Letter, stating that Victoria University had not operated its market in compliance with the nine conditions of the No-Action Letter. Dkt. #15-2 ("Withdrawal Letter"). The Withdrawal Letter stated that if Victoria University was operating any contract markets subject to the No-Action Letter, "all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023." *Id*. at 3.

Plaintiffs are American individual investors in Victoria University's Market, American university professors who used the Market as a data source, and two U.S. corporate entities that service the Market. FAC at ¶¶ 5, 6, 26, 27. Notably, Victoria University is not a party to the suit. *Id*. at ¶ 25. Plaintiffs allege they have been harmed by the withdrawal of the No-Action Letter and assert claims under the Administrative Procedures Act. *Id*. at ¶¶ 75-89. They contend the withdrawal was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) and constitutes the

withdrawal of a license without written notice or opportunity to demonstrate or achieve compliance in violation of 5 U.S.C. §§ 506 and 706. *Id*.

The CFTC moves to transfer the case under 28 U.S.C. § 1404(a) to the United States District Court for the District of Columbia. Dkt. #8. The CFTC also moves to dismiss the case entirely, arguing that the withdrawal of the No-Action Letter was not a final agency action, is a decision committed to agency discretion, and Plaintiffs lack standing. Dkt. #19. Plaintiffs oppose both motions and, in an effort to strengthen their arguments against transfer, amended their complaint to add additional Austin-based individual plaintiffs. Dkt. #13, #15, #21.

Because it was filed first, the court will first address the motion to transfer. As the undersigned recommends transfer, the court does not reach the CFTC's motion to dismiss.

## II. Motion to Transfer

### A. Appliable Law

Under Section 1404(a), a suit may be transferred for convenience to another venue where it might have been brought. 28 U.S.C. § 1404(a). Determining whether transfer under Section 1404 is proper requires the court to determine two factors: (1) that the transferee district is one where suit "might have been brought" and (2) that the transferee district is clearly more convenient. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008).

To evaluate convenience, the court considers four public and private interest factors. *Id*. at 315. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id*. at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")). "The public interest factors are: '(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id*. (quoting *Volkswagen I*, 371 F.3d at 203).

**B. Analysis**

The parties agree that suit was properly brought in this District and that suit could have been brought in the District of Columbia. *See* 28 U.S.C. § 1391. The parties also agree that given the nature of this case—review of agency action—not all of the traditional transfer factors apply.

Because this case involves review of an agency action, both parties expect the case to be resolved at summary judgment on the administrative record of the CFTC's decision,[2] which will be produced electronically. Neither side indicates it expects to call witnesses. To the extent that is not the case, Plaintiffs contend Mr. Clarke's "experience making tradition decisions in Texas and the economic harm he has been caused in Texas" will be key. Dkt. #13 at 12. At the hearing, Plaintiffs argued Mr. Clarke's experience and insights are important because he was one of the Market's most involved participants, even though plaintiffs PredictIt, Inc. and Aristotle—both based in D.C.—provided necessary services to the Market. FAC at ¶¶ 26-27.

However, it is the public interest factors that are most compelling to the court. As CFTC points out, there are 845 weighted filings per judge in the Western District versus 286 in the D.C. District Court. Dkt. #8 at 13 (citing Administrative Office of the U.S. Courts, U.S. DISTRICT COURTS: COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS (June 30, 2022). Moreover, this case's own history demonstrates that congestion. This motion to transfer was filed in September, and the court is only addressing it now, even though there are far older

[2] This assumes, for the purpose of this analysis only, that there was a final agency action and that the case survives the motion to dismiss.

motions referred to the undersigned. Plaintiffs' motion for preliminary injunction, also filed in September, has not even been set for hearing.

Additionally, Austin has relatively little local interest in this matter. Although several individual plaintiffs reside here, individual investor and academic plaintiffs are located throughout the country. In contrast, PredictIt Inc. and Aristotle, which face the greatest economic harm, are headquartered in D.C.[3]

Plaintiffs argue the court should give deference to their forum choice and that under the CFTC's arguments any administrative case could be transferred to D.C. The court notes this is not just any administrative case. The CFTC's No Action Letter and its withdrawal were not directed to Plaintiffs, but to a third-party New Zealand university.

When asked why they filed the case here, Plaintiffs repeatedly answered they filed here because Mr. Clarke resides here. Plaintiffs repeatedly emphasized Mr. Clarke's residency, although they conceded that from an economic perspective Mr. Clarke was not the largest investor or faces the greatest potential financial loss of the Plaintiffs. Indeed, even though there are numerous other Plaintiffs, Plaintiffs consistently argue this case is about how the withdrawal of the No-Action Letter has harmed Mr. Clarke.

Plaintiffs' insistence on the importance of Mr. Clarke and reasons for filing the suit here still confound the court, even after the hearing. The two entity plaintiffs—PredictIt, Inc. and Aristotle International, Inc.—are both based in the District of Columbia. FAC at ¶¶ 26-27. The No-Action Letter was issued to a New Zealand university, and its withdrawal was directed to that New Zealand university. Victoria University utilized PredictIt and Aristotle to manage the Market.

[3] There is no indication that either the familiarity of the forum with the law that will govern the case or the avoidance of unnecessary problems of conflict of laws or in the application of foreign law are relevant considerations here.

Thus, those entities assert greater economic damages than Mr. Clarke or any other investor. Further, those entities would seem to have the greater insight into whether the Market failed to comply with the terms of the No-Action Letter, as alleged in the Withdrawal Letter. It is unclear why—except to establish and defend venue here—Mr. Clarke's knowledge about how the Market has been affected by the Withdrawal Letter is so crucial given PredictIt's and Aristotle's role in the Market and in the case. Plaintiffs emphasize the downstream effects of the Market's closure, but those effects are allegedly felt where any Market participant or Market-data user resides.

Although not from a district court within the Fifth Circuit, the court finds *Hight v. United States Department of Homeland Security*, 391 F. Supp. 3d 1178 (S.D. Fla. 2019), the most persuasive of all the cases the parties cited. Plaintiff Matthew Hight was a sailor who sought to become a Registered Pilot to navigate the waters of Lake Ontario and the St. Lawrence River. *Id*. at 1181-82. Hight was denied a pilotage license, and the Coast Guard denied his appeal. *Id*. at 1182. Hight filed suit to challenge the denial under the APA in the Southern District of Florida, where he resided. *Id*. Defendants sought to transfer the case to either the D.C. District Court or to the N.D. of New York, where Hight intended to work if his claims were successful. *Id*. The *Hight* court applied the same transfer factors that this court applies, including that transfer can only be granted if the balance of factors "strongly favors" the defendant. *Id*. at 1185. Like in this case, the parties disputed how much weight the plaintiff's choice of forum should be given. *See id*. After noting that federal courts "traditionally have accorded a plaintiff's choice of forum considerable deference," the *Hight* court declined to give it greater weight because the only nexus to the chosen forum was plaintiff's residence; all the relevant decisions were made in the District of Columbia and the licensing decision related to work on Lake Ontario and the St. Lawrence Seaway. *Id*. at 1185. Similarly, here, the decisions related to the withdrawal of the No Action Letter were made

in the District of Columbia and were directed to a New Zealand university that used two D.C.-based companies to service the Market at issue. The only tie to Plaintiffs' forum choice is Mr. Clarke's and some other individual plaintiffs' residence here. Considering the factors, the *Hight* court found the public interest facts were neutral but nonetheless the interests of justice and convenience favored transfer and thus transferred the case. *Id.* at 1186-87. Here, only the Plaintiffs' choice of forum favors retaining the case, while the public interest factors strongly favor transfer.

Plaintiffs insinuate that the CFTC wants the case transferred to the District of Columbia because the CFTC expects a home court advantage there. Given the strength of CFTC's motion to dismiss,[4] this seems unlikely. Moreover, given the strength of Plaintiffs' protests against transfer, the court is forced to wonder if Plaintiffs fear D.C. Circuit precedent. Setting these concerns aside, the undersigned recommends transfer because the relevant factors favor transfer and outweigh Plaintiffs' forum choice.

## III. MOTION FOR LEAVE

A week after the hearing, and on the eve of this Report and Recommendation being filed, Plaintiffs sought leave to supplement their briefing with further argument and evidence. Dkt. #30. Having read the brief, a good portion of it addresses arguments relevant to the motion to dismiss, which the court is not reaching. All of it, however, presents arguments that either were or could have been made at the hearing. Had the court desired additional briefing or thought it would be helpful, the court would have asked for it.

[4] The CFTC argues that issuance of a no-action letter and its withdrawal are not final agency actions and that Plaintiffs lack standing to sue. Plaintiffs argue the No Action Letter constituted a license and they are beneficiaries of the No Action Letter. However, at best, Plaintiffs can only strain to analogize to other cases. Plaintiffs' inability to cite cases directly holding that a no action letter is the equivalent of a license or other final action or that third parties are beneficiaries to a no action letter with standing sue leaves the court highly skeptical of their arguments. Nonetheless, as this court is not reaching the motion to dismiss, Plaintiffs will have a second chance to convince a court that their claims should move forward.

Plaintiffs' motion is denied.

## IV. RECOMMENDATIONS

For the reasons stated above, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant CFTC's Opposed Motion to Transfer Venue (Dkt. #8).

The court **DENIES** Plaintiffs' Motion for Leave (Dkt. #30).

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED December 12, 2022.

MARK LANE
UNITED STATES MAGISTRATE JUDGE