**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

KEVIN CLARK, TREVOR BOECKMANN,
HARRY CRANE, CORWIN SMIDT,
PREDICT IT, INC., ARISTOTLE
INTERNATIONAL, INC., MICHAEL
BEELER, MARK BORGHI, RICHARD
HANANIA, JAMES MILLER, JOSIAH
NEELEY, GRANT SCHNEIDER, and WES
SHEPHERD,

        *Plaintiffs*,

   v.

COMMODITY FUTURES TRADING
COMMISSION,

        *Defendant*.

Civil Docket No. 1:22-cv-00909 DAE

The Honorable David Ezra

**DEFENDANT CFTC'S OPPOSED MOTION TO TRANSFER VENUE**

## INTRODUCTION

Defendant United States Commodity Futures Trading Commission ("CFTC" or "the Commission") respectfully requests that this Court, pursuant to 28 U.S.C. § 1404(a), transfer the above-captioned litigation to the United States District Court for the District of Columbia, the venue where this case could—and should—have been filed.  A similar motion was previously filed by the CFTC, and a Magistrate Judge recommended that it be granted; but it was dismissed without prejudice while the case was on appeal, subject to reurging.  As the Magistrate correctly held, the motion should be granted.[1]

Simply put, none of Plaintiffs' claims have anything to do with the Western District of Texas.  Plaintiffs' First Amended Complaint ("FAC") asserts two counts under the Administrative Procedure Act ("APA") challenging the withdrawal of a "no-action letter" issued to Victoria University of Wellington, an educational institution located in Wellington, New Zealand ("Victoria University" or "the University").  Both the original no-action letter and the subsequent letter withdrawing the earlier letter were issued to the University by D.C.-based staff in the Commission's Division of Market Oversight, from the CFTC's headquarters in the District of Columbia.  *See* FAC ¶¶ 61–67, ¶¶ 68–75; 17 C.F.R. § 140.99(a)(2).  Those letters related to the University's operation of a non-profit prediction market for certain political-forecasting research purposes.  In practice, it appears that the market has largely been operated by two United States companies, Aristotle International Inc. ("Aristotle") and its subsidiary, Predict It Inc.; but these companies, like the CFTC, are located in Washington, D.C.  FAC ¶¶ 26-27.  All operative facts giving rise to Plaintiff's APA claims reflect the decision making process of D.C.-based staff of a D.C.-headquartered federal agency that occurred solely in either the District of

---

[1] Counsel for the CFTC contacted counsel for Plaintiffs about this motion on October 12, 2023 and has not yet heard back.  Plaintiffs opposed the CFTC's similar previous motion.

Columbia or, to a much lesser extent, Wellington, New Zealand where relevant University staff are located.  That decision process concerned the conduct of entities in Wellington and the District of Columbia.  All but one counsel of record are located in Washington, D.C.—where the district court is far less congested than this one—and the other operates from D.C. and Chicago.

The first amended complaint lists as plaintiffs the two District of Columbia entities that apparently operate the market, and traders and market data users located in New York, New Jersey, Massachusetts, Michigan, Ohio, and Austin, Texas.  FAC ¶¶ 21-34.  However, the market operates by remote electronic means and nothing relevant to this case distinguishes the Austin-based plaintiffs from trader and data-user plaintiffs in other judicial districts or from the other over 120,000 traders and over 140 data users alleged to have used the market since its founding. FAC ¶¶ 22, 23, 24, 31, 33, 39, 64; *see generally* www.predictit.org.  There is no allegation that the market has, for example, specialized in Texas elections or that the government conduct at issue has an impact on persons in the Western District of Texas that differs in any material way from its impact elsewhere in the United States.

It is unclear why Plaintiffs chose to file their suit in the Austin Division of the Western District of Texas.  Whatever the reason, the choice to proceed in this Court was certainly not based on convenience or efficiency.  With the sole exception of Plaintiffs' choice of forum, every other relevant private- and public-interest factor  under section 1404(a) is either neutral or favors transfer to the D.C. District Court.  And, while the case was filed in 2022, transfer at this point will not result in any duplicative or inefficient use of judicial resources.  The only substantive district court rulings in this case are the now-superseded magistrate report recommending transfer of venue; an order denying without prejudice, subject to reurging, the CFTC's previous motions to transfer venue and to dismiss; and rulings on the wording of the

preliminary injunction ordered by the Court of Appeals.  Dkts. 31, 38, 43, 48.  Plaintiffs'
interlocutory appeal of the constructive denial of a preliminary injunction was concluded with
the issuance of the appellate mandate on September 12, 2023, Dkt. 42; and any orders or
holdings of the United States Court of Appeals for the Fifth Circuit in that appeal are now part of
the case regardless of the venue of further proceedings.  The defendant, the primary plaintiffs,
the alleged conduct, and the entities most affected are all located outside this district  and a
transfer pursuant to Section 1404(a) is in order. *See, e.g.*, *National Ass'n of Life Underwriters v.
Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991).

## BACKGROUND AND PROCEDURAL HISTORY

The original Complaint (Dkt. 1) was filed with this Court on September 9, 2022, by six
named Plaintiffs that can be divided into three groups:  First, Plaintiffs Aristotle International,
Inc. and Predict It, Inc. are Delaware corporations with principal places of business in the
District of Columbia that collectively "service[]" various aspects of PredictIt, "an online market
for political event contracts," pursuant to an undisclosed "market servicing agreement" with New
Zealand-based Victoria University of Wellington.  Compl. ¶¶ 1, 26–27.  Aristotle and its
subsidiary appear to be primarily responsible for operating the market since the Complaint
alleged that Aristotle "serves as the clearing house for trades" and that "investors that open
accounts" on the market "enter into a contract with Aristotle."  Compl. ¶ 27.  Second, Plaintiffs
Harry Crane and Corwin Smidt are professors at Rutgers University in New Jersey and Michigan
State University who use Predict It data for "teaching and research" purposes.  Compl. ¶¶ 23, 24.
Third, Plaintiffs Trevor Boeckmann and Kevin Clarke are individual Predict It customers living
in New York City and Austin who made various "purchases and trades" on the online Predict It
market.  Compl. ¶¶ 22, 21.  Notably, Victoria University of Wellington—the only party to whom

the challenged CFTC staff conduct was directed—has no discernible connection to Texas and is not a party to this lawsuit.  Compl. ¶ 25.

The original complaint asserted two APA counts against the United States Commodity Futures Trading Commission, an executive agency of the United States headquartered in the District of Columbia.  *See* Compl. ¶¶ 20, 61–67, 68–75.  Those counts in turn challenge as "arbitrary" and "capricious" a letter issued by D.C.-based CFTC staff in the Division of Market Oversight ("DMO") to the University on August 4, 2022.  5 U.S.C. § 706(2)(A); Compl. ¶ 8 & Ex. 2.  The August 4, 2022 letter withdrew an earlier no-action letter from October 29, 2014 stating, based on the University's representations at that time, that "DMO will not recommend that the Commission take any enforcement action in connection with the operation of your proposed market for event contracts" if certain enumerated conditions were observed.  Compl. ¶ 7 & Ex. 1, at 5–6.  Plaintiffs have not alleged that any part of the decision making process or other CFTC staff conduct relevant to their APA claims occurred in Texas.  *See, e.g.*, Compl. ¶¶ 7–11, 15–16.

The sole basis for venue identified in the original complaint is that "Kevin Clarke resides in … Austin, Texas" and "has made numerous investments in event contracts on the PredictIt Market from Austin, Texas, where he has lived since 2010."  Compl. ¶ 18 (citing 28 U.S.C. § 1391(e)(1)(B)–(C)).

On September 20, 2022, the CFTC filed a motion to transfer venue to the District of Columbia.  Dkt. 8.  Ten days later, on September 30, 2022, Plaintiffs filed a motion for a preliminary injunction.  Dkt. 12.  On October 6, 2022, Plaintiffs filed an amended complaint adding seven additional individual plaintiffs.  Dkt. 15, FAC ¶¶ 28-34.  The amended complaint alleged that each of these individuals traded on the PredictIt market and that three of them used

data from the market for various purposes.  FAC ¶¶ 28-34, 43.  Five of the added plaintiffs are located in Austin, Texas.  FAC ¶¶ 28, 29, 30, 32, 34.  The other two are located in Massachusetts and Ohio.  FAC ¶¶ 31, 33.  The amended complaint is otherwise substantially identical to the original complaint.

On October 28, 2022, the CFTC filed a motion to dismiss.  Dkt. 19.  On December 12, 2022, a magistrate judge, to whom the CFTC's motions had been referred, issued a report recommending transfer of venue.  Dkt. 31.  This recommendation was never acted on by the district court.

On December 23, 2022, Plaintiffs filed an interlocutory appeal to the United States Court of Appeals for the Fifth Circuit seeking review of what they characterized as a constructive denial of their motion for a preliminary injunction, based on the district court's failure to act on that motion by the time of the appeal.  Dkt. 32.

On March 2, 2023, while the preliminary injunction appeal was pending, the CFTC Division of Market Oversight sent a letter to Victoria University revoking the August 4, 2022 letter withdrawing the 2014 no-action letter.  *Clarke v. Commodity Futures Trading Comm'n*, No. 22-51124 (5th Cir.) Doc. 78-2.  The March 2 letter further set forth in reasons why it appeared that Victoria University may not be in compliance with the conditions of the 2014 letter and stated that, as a result, the Division had determined "as a preliminary matter" that the 2014 letter is void and should be withdrawn.  The March 2 letter invited the University to submit any objections it may have by March 20, 2023, which the University did.  The Division of Market Oversight, to date, has not made any further determinations following up on the March 2 letter.

On May 1, 2023, the Court of Appeals issued an order (1) denying a CFTC motion to dismiss Plaintiffs' appeal as moot based on the March 2 Division of Market Oversight letter; (2)

denying Plaintiffs motion to hold the CFTC in contempt based on the letter; and (3) clarifying a stay pending appeal previously issued by the Court of Appeals. *Clarke*, No. 22-51124 Doc. 107-2. The clarification stated, "Appellee is ENJOINED from closing the PredictIt Market or other wise prohibiting or deterring the trading of Market contracts until 60 days after a final judgment in this matter." *Id*.

On May 12, 2023, while the preliminary injunction appeal was still pending, this Court issued an order addressing certain pending matters. Dkt. 38. Among other rulings, it denied without prejudice, subject to reurging, the CFTC's motions to transfer venue and to dismiss.

On July 21, 2023, the Court of Appeals issued a decision reversing this Court's "effective denial" of a preliminary injunction and remanding "with instructions that the district court enter a preliminary injunction pending its consideration of Appellant's claims." Opinion at 21, *Clarke*, No. 22-51124 (5th Cir. July 21, 2023) Doc. 123. The appellate mandate issued on September 12. Dkt. 42. On September 13, 2023 this Court entered a preliminary injunction, Dkt. 45, which was amended on October 10, 2023.

## ARGUMENT

Under the federal transfer statute's multifactor balancing analysis the only relevant consideration that potentially weighs in favor of retaining this D.C.-centric dispute in the Western District of Texas is Plaintiffs' choice of forum. This Court was an available forum only because this lawsuit arises under the Administrative Procedure Act and several named plaintiffs reside here—and most of those were added in response to the previous motion to transfer.[2]

---

[2] While Plaintiffs are correct that the Western District of Texas is an available forum under 28 U.S.C. § 1391(e)(1)(c) because of several plaintiffs' residence, the conclusory statement that venue would also be available because "a substantial part of the events or omissions giving rise to the claims also occurred in this jurisdiction," FAC ¶ 18 is wrong for the reasons explained below. *See infra* Part III.A.

While several judicial districts would also have been available given the other Plaintiffs'

residencies—including the District of Columbia, Delaware, Massachusetts, Michigan, New

Jersey, New York, and Ohio, *see* FAC. ¶¶ 22, 23, 24, 26, 27, 31, 33—there is only one district

with more than an incidental connection to the substance of Plaintiffs' claims.  That is the

District of Columbia.  Indeed, the District of Columbia is the only place outside of Wellington,

New Zealand, in which *any* of the operative facts giving rise to Plaintiffs' claims occurred.

Because every other consideration either favors transfer to the District of Columbia or is

neutral, the transfer analysis is straightforward and decisive.

## I.   Legal Standard

When, as here, venue is available in more than one federal district court, 28 U.S.C.

§ 1404(a) provides for transfer in the interest of justice.  *See generally In re Volkswagen of Am.,*

*Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("[W]hile a plaintiff has the privilege of filing his claims

in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects

of the exercise of this privilege.").  In addressing Section 1404(a) transfer motions, this Court

assesses "two factors:  (1) that the transferee district is one where suit 'might have been brought'

and (2) that the transferee district is clearly more convenient."  *Media Chain, LLC v. Roku, Inc.*,

No. 1:21-CV-27-LY, 2021 WL 5994809, at *1 (W.D. Tex. Dec. 7, 2021) (citing *In re*

*Volkswagen*, 545 F.3d at 312, 315).  The relative convenience of the potential transferee court is

determined by considering the following public- and private-interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of
> compulsory process to secure the attendance of witnesses; (3) the cost of
> attendance for willing witnesses; … (4) all other practical problems that make
> trial of a case easy, expeditious and inexpensive[;] … (5) the administrative
> difficulties flowing from court congestion; (6) the local interest in having
> localized interests decided at home; (7) the familiarity of the forum with the law
> that will govern the case; and (8) the avoidance of unnecessary problems of
> conflict of laws [or in] the application of foreign law.

*In re Volkswagen*, 545 F.3d at 315.  In weighing these factors, whose proper balance is case- and fact-specific, this Court has "broad discretion." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (per curiam) (quotation omitted).

There is an additional wrinkle to the Section 1404(a) transfer analysis in cases arising under the Administrative Procedure Act.  *See* 5 U.S.C. §§ 704, 706(2)(A).  Because this Court "sits as an appellate tribunal" in APA suits such that the "entire case on review is a question of law," *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (citing *Redeemed Christian Church of God v. U.S. Citizenship & Immigration Servs.*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018)), many of the public- and private-interest factors relating to witnesses, discovery, and trial will be of limited applicability.  Instead, the primary—and often decisive—factor is determining the "judicial district with the most significant ties to th[e] litigation." *See, e.g.*, *National Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991); *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1185, 1187 (S.D. Fla. 2019) (holding that choice of forum to bring APA suit and "the locus of operative facts for Plaintiff's" together "weigh heavily in favor of transfer" when "Plaintiff's only nexus to the Southern District of Florida is his residence" and all relevant agency decisionmaking occurred "in the District of Columbia by residents of the District of Columbia").

## II.    There Is No Doubt That This Case Could Have Been Filed In the D.C. District Court.

The Administrative Procedure Act lacks a specialized venue provision, so the general federal venue statute governs.  *See* 28 U.S.C. § 1391.  For APA suits against executive agencies of the United States, venue is available in "any judicial district" where "a defendant in the action resides"; where "a substantial part of the events or omissions giving rise to the claim occurred"; or where "the plaintiff resides if no real property is involved in the action." *Id.* § 1391(e)(1)(A)–

(C).  Here, venue would have been proper in the D.C. District Court under each subsection:  (1) the only Defendant in this case is the CFTC, which is headquartered in the District of Columbia, Compl. ¶ 20; (2) among other things, both the "no-action letters" being challenged and all relevant aspects of CFTC staff's decisionmaking process involve D.C.-based employees in the District of Columbia, Compl. ¶¶ 7 –9, 15, 19, 44–49, 63a–e & Exs. 1–2.; and (3) Plaintiffs Aristotle International, Inc. and Predict It, Inc. are both corporate entities incorporated in Delaware with their "principal place of business in the District of Columbia," FAC ¶¶ 26, 27.

Because there is no doubt that this case could have been filed in the United States District Court for the District of Columbia, "only the second factor is in question."  *See, e.g.*, *Media Chain, LLC*, 2021 WL 5994809, at *1.

## III.   Proceeding In The D.C. District Court Is More Convenient Across The Board.

### A.  Plaintiffs' "choice of forum" should be accorded minimal, if any, weight and is substantially outweighed by "the locus of operative facts" because all CFTC conduct giving rise to Plaintiffs' claims occurred in the District of Columbia.

The strongest—indeed only—tie between Plaintiffs' Complaint and this Court is the residence of several plaintiffs  who allege that they will suffer downstream losses as traders or data users were non-party Victoria University of Wellington to cease operating the PredictIt market.  *See, e.g.*, FAC ¶¶ 5, 6, 21, 41.  The amended complaint lacks any factual allegations that plaintiffs located in the Western District of Texas—or any of the "thousands" of other individual PredictIt traders—played any role in the relevant CFTC staff's decisionmaking process.  *See* FAC ¶¶ 64-74.  Given the lack of any allegations tying the *CFTC's* conduct to Texas, Plaintiffs cannot rely on the unilateral conduct of several traders and data users to establish a legally relevant nexus to this Court.  *See, e.g.*, *Gault v. Yamunaji, L.L.C.*, No. A-09-CA-078-SS, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) (explaining that proper venue analysis "requires

courts to focus on the *defendant's* conduct alone" because "the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district").

Because Plaintiffs' claims "only nexus to" the Western District is certain plaintiffs' "residence" (most of whom were added in response to the previous motion to transfer), and "all the relevant … decisions were made in the District of Columbia by residents of the District of Columbia," this case is on all fours with a decision of the Southern District of Florida, *Hight v. U.S. Department of Homeland Security*, 391 F. Supp. 3d 1178, 1181–82, 1185 (S.D. Fla. 2019). In *Hight*, a commercial sailor sought to become a registered ship pilot in the Great Lakes region and, when D.C.-based Coast Guard staff denied his application, he brought an APA lawsuit in the Southern District of Florida, his place of residence.  Finding that the "central tension" in resolving the United States' transfer motion was "whether the Court should place more emphasis on Plaintiff's choice of forum or the locus of operative facts in performing the 1404(a) analysis," the Court determined (1) that the nonexistent connection between the claims at issue and Florida rendered "unavailing" plaintiff's argument that his "choice of forum" should control and (2) that "the locus of operative facts" "further tilted" the scales "in favor of transfer" when "all relevant acts or omissions relating to the denial of Plaintiff's pilotage license took place in the District of Columbia."  *Id.* at 1185.  The Court concluded that "these factors, when taken together, weigh strongly in favor of transfer to the District of Columbia."  *Id.*  Further concluding that all remaining private- and public-interest factors were on balance, neutral, and of limited value, the Court ordered the case transferred to the D.C. District Court because taken together "the interests

of justice and convenience of the parties weigh heavily in favor of transfer." *Id.* at 1187.  The same is true here.

Nor is *Hight* an outlier.  This Court and district courts nationwide faced with similarly skimpy nexuses to APA claims routinely grant transfers to the appropriate transferee court.  *See, e.g.*, *National Ass'n of Life Underwriters v. Clarke*, 761 F. Supp. 1285, 1293 (W.D. Tex. 1991) (transferring APA claims against the Office of the Comptroller of the Currency to the United States District Court for the District of Columbia when a plaintiff resided in Texas); *Munro v. U.S. Copyright Off.*, No. 6:21-CV-00666-ADA-JCM, 2022 WL 3566456, at *3 (W.D. Tex. May 24, 2022) (Manske, M.J.) (recommending transfer of APA claims against United States Copyright Office for application denial when only Western District nexus was Austin-based plaintiffs' counsel); *Pulijala v. Cuccinelli*, No. 1:20-CV-00822-JPB, 2021 WL 9385877, at *3 (N.D. Ga. Jan. 22, 2021) (granting transfer of APA suit brought by Georgia resident against United States Citizenship and Immigration Services official when "it is undisputed that all relevant acts or omissions relating to the immigrant visa petitions take place in the District of Columbia"); *Holovchak v. Cuccinelli*, No. 20-210-KSM, 2020 WL 4530665, at *5 (E.D. Pa. Aug. 6, 2020) (similar); *Center for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, at *6 (N.D. Cal. Mar. 17, 2011) (transferring APA claims to D.C. District Court when "the operative facts giving rise to [agency's] partial deregulation decision did not occur in this district").

## B.  All Remaining Private Interest Factors Favor Transfer Or Are Neutral.

### i.  The cost of attendance favors transfer.

Because this is an APA case that will turn on appellate-style review of a fixed administrative record, the CFTC does not anticipate that the traditional private-interest litigation

burdens will be significant in this case as there will be no witnesses or merits discovery. However, at least one consideration—the cost and time required for party counsel to attend hearings in the Western District—affirmatively favors transfer to the United States District Court for the District of Columbia.

No counsel that has appeared to date is located in Texas.  Plaintiffs' counsel, only one of whom was admitted to practice before the Western District when the Complaint was filed, are all barred in the District of Columbia and are based out of Chicago and/or the District of Columbia. *See* Docket; Hunton Andrews Kurth LLP, *Michael J. Edney:  Bar & Court Admissions*, https://www.huntonak.com/en/people/michael-edney.html (last visited Sept. 12, 2022); Steptoe & Johnson LLP, *John J. Byron:  Bar & Court Admissions*, https://www.steptoe.com/en/lawyers/john-byron.html (last visited Sept. 14, 2022).  Counsel for the CFTC, as noted below, are all similarly barred in the District of Columbia and based out of the Commission's D.C. headquarters.  Thus, every attorney who would be appearing before this Court would have to travel roughly 1,000 miles to do so.  By contrast, were this case transferred to the D.C. District Court, no travel would be required because all counsel are at least partially based out of the District of Columbia.  *Cf. Hight*, 391 F. Supp. 3d at 1185–86 (holding this factor "neutral" because all parties "would be required to engage in similar cross-country travel").

### ii.  The remaining private-interest factors are neutral.

Because this is an Administrative Procedure Act case in which the district court sits as a reviewing tribunal, the remaining private-interest factors such as ease of access to sources of proof, availability of compulsory process, and costs of attendance for witnesses are not relevant and thus neutral.  *Accord Hight*, 391 F. Supp. 3d at 1186.  There will neither be a trial nor any witnesses because in APA review litigation the "entire case on review is a question of law."  *See, e.g.*, *Delta Talent, LLC v. Wolf*, 448 F. Supp. 3d 644, 650 (W.D. Tex. 2020) (citation omitted).

### C.  All Remaining Public Interest Factors Favor Transfer Or Are Neutral.

> **i.  The D.C. District Court's localized interest and relatively lesser level of docket congestion favors transfer.**

In addition to the cost and convenience benefits to the parties identified above, the public interest affirmatively favors transfer as well for at least two reasons.  First, to the extent that there is any judicial district in the United States with a localized interest in the resolution of this case, it is the District of Columbia.  As discussed above, with the possible exception of Wellington, New Zealand all the operative facts giving rise to Plaintiffs' claims occurred in the District of Columbia where all relevant CFTC staff are based.  Moreover, the legally cognizable harms of the "no-action letters" being challenged—if any—appear most relevant to Plaintiffs Aristotle International, Inc. and Predict It, Inc., the "service providers" who collectively operate various aspects of nonparty Victoria University of Wellington's online predictions market out of their principal places of business in the District of Columbia.  *See* FAC ¶¶ 26, 27.

Second, current statistics show that the Western District of Texas is substantially more congested than the D.C. District Court.  "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).  As relevant here, those statistics favor transfer to the D.C. District Court[3]:  The median time from filing to disposition for civil cases in the Western District is 7.4 months, while in the D.C. District Court it's 4.7 months; there are 826 pending cases per judge in the Western District,

---

[3] Because this is an APA case that will not entail a trial, length of trials is not relevant to the transfer analysis and has been omitted here.  Were it relevant, however, that statistic would be the outlier favoring the Western District of Texas as civil trials conclude in an average of 28.3 months versus 55.9 months in the D.C. District Court.

compared to 410 cases in the D.C. District Court; and 801 weighted filings per judge in the

Western District versus 276 in the D.C. District Court.  Administrative Office of the U.S. Courts,

U.S. DISTRICT COURTS:  COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT

STATISTICS (June 30, 2023), https://www.uscourts.gov/statistics/table/na/federal-court-

management-statistics/2023/06/30-1.

### ii.  The remaining public-interest factors are neutral.

The remaining public-interest factors, such as the familiarity of the forum with the law

that will govern the case and foreign choice-of-law concerns, are neutral here.  *Accord Hight*,

391 F. Supp. 3d at 1186–87.

### D.    Applying the Usual Section 1402(a) Factors to Administrative Procedure Act Cases Does Not Unduely Favor the Government.

In proceedings on the CFTC's earlier motion to transfer venue, Plaintffs argued that grant

of a transfer of venue in this case would logically imply that all challenges to federal government

administrative action should be heard in the District of Columbia.  That argument is incorrect

because it ignores facts that distinguish this case from most other cases challenging federal

action.  Specifically, in this case the persons most affected by the alleged government conduct

are located either in the District of Columbia—Aristotle and Predict It Inc.—or are entirely

outside the United States.  Similarly, the business activity most directly affected by the

challenged conduct—operation of a prediction market—occurred either in New Zealand or the

District of Columbia even if customers were located throughout the world.  By contrast, most

entities affected by federal regulation are located, and conduct their primary business, in U.S.

judicial districts outside the District of Columbia and that location often serves as a source of

venue in APA cases.  *See*, *e.g.*, *Mandan, Hidatsa and Aridara Nation v. Dept. of the Interior*, 358

F. Supp. 3d 1, 4, 11 (D.D.C. 2019) (granting motion to transfer venue to District of North Dakota

based, in part, on intervenor's interest in drilling for oil in that state); *see generally* Bureau of Economic Analysis, U.S. Dep't of Commerce, *GDP by State* (Sept. 29, 2023), https://www.bea.gov/data/gdp/gdp-state (statistics showing that District of Columbia accounts for under 1% of U.S. GDP).  Similarly, venue outside the District of Columbia is often justified based on the special local impact of federal action.  *See*, *e.g.*, *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 116-23 (D.D.C. 2015) (ordering transfer to District of Alaska of case involving regulation protecting walruses); *Laboratory Corp. of America Holdings v. N.L.R.B.*, 942 F. Supp. 2d 1, (D.D.C. 2013) (ordering transfer to District of New Jersey of case concerning NLRB action relating to facility in New Jersey).  Plaintiffs here have alleged no such special local impact.  For example, they have not alleged that the PredictIt market disproportionately lists contracts on Texas elections or that speculating on national election outcomes plays an unusually important role in the economy of the Western District of Texas.  And, while several of the Plaintiffs reside in this district, Plaintiffs have not distinguished their interests from those of thousands of other market users throughout the United States and elsewhere.  In short, the CFTC's motion to transfer venue is a discretionary matter to be determined based on the facts of this case, leaving venue in other APA cases to be determined based on their own facts.

*             *             *

The Section 1404(a) factors, taken together, thus overwhelming favor transfer to the District of Columbia, the only judicial district with any substantial ties to Plaintiffs' claims.

To be clear, the CFTC is in no way questioning this Court's authority or ability to handle this case on the merits.  Here, however, venue is not appropriate because the above Section 1404(a) analysis overwhelming favors transfer.

**CONCLUSION**

For these reasons, the Court should grant the CFTC's motion and transfer the above-caption litigation to the United States District Court for the District of Columbia.

Respectfully submitted,

_/s/ Martin B. White_
Robert A. Schwartz (D.C. Bar No. 489240)
  _General Counsel_
Anne W. Stukes (D.C. Bar. No. 469446)*
  _Deputy General Counsel_
Martin B. White (D.C. Bar. No.221259)*
  _Senior Assistant General Counsel_
U.S. COMMODITY FUTURES TRADING
COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC  20581
Phone:  (202) 993-1390
Fax:  (202) 418-5127
mwhite@cftc.gov

* Admitted pro hac vice

## CERTIFICATE OF SERVICE

I certify that on October 13, 2023, I caused the foregoing Defendant CFTC's Opposed

Motion to Transfer Venue to be served on the Clerk of the Court using the Court's CM/ECF

system, which will send notice to all counsel of record in this case.

/s/ *Martin B. White*
Martin B. White