IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KEVIN CLARKE, ET AL., | § | NO. 1:22-CV-909-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| COMMODITY FUTURES TRADING | § | |
| COMMISSION, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER GRANTING MOTION TO TRANSFER VENUE AND DENYING AS
MOOT MOTION FOR EXPEDITED CONSIDERATION

The matters before the Court are Defendant Commodity Futures

Trading Commission's ("CFTC") (1) Opposed Motion to Transfer Venue (Dkt.

# 50), and (2) Opposed Motion for Expedited Consideration of Fully Briefed

Motion to Transfer Venue (Dkt. # 60).  The Court finds that a hearing on these

matters is not necessary.  Based on the following, the Court **GRANTS** the motion

to transfer venue, and **DENIES AS MOOT** the motion for expedited

consideration.

## FACTUAL BACKGROUND

In 2014, Victoria University of Wellington, New Zealand ("Victoria University") began operating an online market for political-event contracts (the "Market"). (Dkt. # 55 ¶ 1.)[1] On October 29, 2014, CFTC's Division of Market Oversight ("DMO") issued Victoria University a "No-Action Letter" regarding Victoria University's creation of a "small-scale, not-for-profit, online market for event contracts in the U.S. for educational purposes." (Dkt. #55-1 at 2–3.) Victoria University intended to operate two submarkets—one for political event contracts and the other for economic indicator contracts—and proposed to utilize the results of the market information derived from trading in these contracts for educational and research purposes. (Id. at 3.) Based on Victoria University's representations, the DMO stated it would not recommend the CFTC take any enforcement action in connection with the operation of the proposed market. (Id. at 6.) The No-Action Letter stated it was based on the information provided to the DMO and was subject to the conditions stated in the letter. (Id.) It also stated the no-action position represented only the views of the DMO and did not necessarily represent the CFTC's views. (Id.) The DMO also retained "authority to condition

---

[1] CFTC filed a second amended complaint in this case after its motion to transfer venue was fully ripe. (Dkt. # 55.) However, the second amended complaint does not affect the matters pending in the motion to transfer venue.

further, modify, suspend, terminate or otherwise restrict the terms of the no-action relief provided herein, in its discretion."  (Id. at 7.)

On August 4, 2022, the DMO withdrew the No-Action Letter, stating that Victoria University had not operated its market in compliance with the nine conditions of the No-Action Letter.  (Dkt. #55-2 ("Withdrawal Letter").)  The Withdrawal Letter stated that if Victoria University was operating any contract markets subject to the No-Action Letter, "all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023."  (Id. at 3.)

Plaintiffs are: (1) American individual investors in Victoria University's Market, (2) American university professors who used the Market as a data source, and (3) two U.S. corporate entities that service the Market.  (Dkt. # 55 at ¶¶ 5, 32–34.)  Notably, Victoria University is not a party to the suit.  (Id. at ¶ 36.)  Plaintiffs allege they have been harmed by the withdrawal of the No-Action Letter and assert claims under the Administrative Procedures Act ("APA").  (Id. at 32.)  They contend the withdrawal was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) and constitutes the withdrawal of a license without written notice or opportunity to demonstrate or achieve compliance in violation of 5 U.S.C. §§ 506 and 706.  (Id.)

PROCEDURAL BACKGROUND

On September 9, 2022, Plaintiffs filed suit in this Court.  (Dkt. # 1.)
On September 20, 2022, CFTC filed its original opposed motion to transfer venue
in this case.  (Dkt. # 8.)  On September 30, 2022, Plaintiffs filed a motion for
preliminary injunction.  (Dkt. # 12.)  On October 28, 2022, CFTC filed a motion to
dismiss Plaintiffs' claims.  (Dkt. # 19.)  On November 18, 2022, the District Judge
originally assigned to this action[2] referred the pending motion to transfer venue
and motion to dismiss to Magistrate Judge Mark Lane.  (Dkt. # 22.)  All pending
motions thereafter became ripe.  Meanwhile, because no action or briefing
schedule had been set on the pending motion for preliminary injunction, on
November 18, 2022, Plaintiffs filed a motion to expedite hearing and resolution of
their motion for preliminary injunction.  (Dkt. # 23.)

On December 12, 2022, Magistrate Judge Lane issued his Report and
Recommendation (the "Report") on CFTC's motion to transfer venue.  (Dkt. # 31.)
Magistrate Judge Lane carefully considered the parties arguments and
recommended that the District Court transfer venue of this case to the District of
Columbia.  (Id.)  Given his recommendation to transfer venue, Judge Lane did not
make any decision on the merits of CFTC's motion to dismiss.  (See id.)

_____

[2] The case was not transferred to the undersigned until April 27, 2023.  (Dkt. # 37.)

While the Report was still pending, on December 23, 2022, Plaintiffs filed a Notice of Appeal in this case, notifying the Court that they appealed the "constructive denial of Plaintiffs' Motion for Preliminary Injunction" to the Fifth Circuit Court of Appeals.  (Dkt. # 32.)  On January 26, 2023, the Fifth Circuit granted Plaintiffs' opposed motion for injunction pending the appeal.  (Dkt. # 36.)  On February 8, 2023, a three-judge panel of the Fifth Circuit heard oral argument on the merits of the appeal of the injunction in this case.   (See Fifth Circuit COA Case No. 22-51124.)  Because the matter was still pending at the Fifth Circuit and because the case was only recently transferred to the undersigned, on May 12, 2023, the Court denied without prejudice subject to refiling CFTC's motions to transfer venue and to dismiss.  (Dkt. # 38.)

On July 21, 2023, the Fifth Circuit issued its opinion in this matter, reversing the opinion of the District Judge originally assigned to this action, and remanding this case with instructions to enter a preliminary injunction pending consideration of Plaintiffs' claims in this case.  Clarke v. Commodity Futures Trading Co., 74 F.4th 627 (5th Cir. 2023).   On September 12, 2023, the Fifth Circuit issued its mandate.  (Dkt. # 42.)  On October 10, 2023, the Court entered an amended order which granted Plaintiffs' motion for preliminary injunction.  (Dkt. # 48.)  In accordance with that injunction, CFTC is enjoined from taking any action, including without limitation issuance of any preliminary decisions, that

would have the effect of prohibiting or deterring the issuance or trading of PredictIt

Market contracts or to close or otherwise to impede the normal operations of the

Market, until a final judgment is entered by the Court in this matter.  (Id.)

On October 13, 2023, CFTC renewed its motion to transfer venue.

(Dkt. # 50.)  On October 27, 2023, Plaintiffs filed a response in opposition.  (Dkt.

# 52.)  On November 11, 2023, CFTC filed its reply.  (Dkt. # 54.)  On January 10,

2024, CFTC filed an opposed motion to expedite consideration of its motion to

transfer venue.  (Dkt. # 60.)

## LEGAL STANDARD

A federal district court may transfer a case "for the convenience of

parties and witnesses" to "any other district or division where it might have been

brought."  28 U.S.C. § 1404(a).  Section 1404(a)'s threshold inquiry is whether the

case could initially have been brought in the proposed transferee forum.  In re

Volkswagen AG, 371 F.3d 201, 202–03 (5th Cir. 2004) ("Volkswagen I").  The

question of whether a suit "might have been brought" in the transferee forum

encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue.

Id. at 203.  Only if this statutory requirement is met should the Court determine

whether convenience warrants a transfer of the case.  See id.; In re Volkswagen of

Am., Inc., 545 F.3d 304, 312 (5th Cir. 2008) ("Volkswagen II").

Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in Volkswagen I.  The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id.  The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." Id.  The Fifth Circuit has held that the factors recited in Volkswagen I and Volkswagen II are "not necessarily exhaustive or exclusive" and "none . . . can be said to be of dispositive weight." Volkswagen II, 545 F.3d at 315.

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. Id.  This elevated burden reflects the weight owed to the plaintiff's choice of forum. In re Vistaprint Ltd., 628 F.3d 1342, 1344 (Fed. Cir. 2010).

DISCUSSION

The Court will now consider whether venue should be transferred in this case to the United States District Court for the District of Columbia.

A.    Venue in the D.C. District Court

CFTC alleges that, although this case was properly brought in this District, venue is also proper in the D.C. District Court. (Dkt. # 50 at 9.) Plaintiffs do not seriously contest CFTC's showing on this point. (Dkt. # 52.) Accordingly, the Court finds this action could have been brought in the D.C. District Court. And, because this case concerns review of agency action, the parties agree that not all of the traditional transfer factors apply given that the case will likely be resolved at the summary judgment stage on the administrative record. (Dkt. # 50 at 9; Dkt. # 52 at 13.)

A.    Private Interest Factors

Again, there is no serious dispute by the parties that this case will be decided on the administrative record, and likely by cross-motions for summary judgment. Therefore, the Court finds that the private interest factors in this case are neutral—relative ease of access to sources of proof, availability of compulsory process to secure the attendance of witnesses, cost of attendance for willing witnesses, and all other practical problems that make trial of a case easy and expeditious and inexpensive.

8

B.    Public Interest Factors

The parties dispute the relevance of the public interest factors.  The Court will consider each separately.

1.    Court Congestion

CFTC argues that the Western District of Texas is substantially more congested than the D.C. District Court.  (Dkt. # 50 at 14.)  CFTC cites statistics that there are 801 weighted cases pending in the Western District versus 276 in the D.C. District Court.  (Id. at 14–15 (citing Administrative Office of the U.S. Courts, U.S. District Courts: Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023).)  Plaintiffs dispute this information on the basis that "the key statistic" in evaluating court congestion is the "speed with which a case can come to trial and be resolved."  (Dkt. # 52 at 17.)

The Court finds this factor weighs in favor of transfer.  This case's own procedural history documents that the Western District of Texas, and particularly the Austin Division, is heavily congested.  This case was appealed to the Fifth Circuit on interlocutory appeal on the basis that the District Judge originally assigned to this case did not timely rule on the pending motion for preliminary injunction, clearly demonstrating the backlog of case dispositions in the Western District.  Additionally, before the Court is a motion to expedite consideration of this very motion since it has been pending for four months.  And,

9

this Court's own heavy docket in the Western District would prevent this case from proceeding to resolution in a more expeditious manner than would be in the D.C. District.  Given all of this, the Court finds this factor weighs in favor of transfer of this case to the D.C. District.

        2.    <u>Local Interest in Having Localized Interests Decided at Home</u>

        CFTC argues that the D.C. District has more of a localized interest in the resolution of this case than the Western District because all of the operative facts giving rise to Plaintiffs' claims occurred in D.C. where CFTC is located. (Dkt. # 50 at 14.)  CFTC also asserts that the harms alleged by the No Action Letters are most relevant to Aristotle International, Inc. ("Aristotle") and PredictIt, Inc. ("PredictIt"), who operate various aspects of the relevant online prediction markets out of their principal places of business in D.C.  (<u>Id.</u>)  In response, Plaintiffs argue that CFTC has harmed the individual plaintiffs who reside in the Western District, and therefore Texas courts have a significant interest in assessing and redressing the impacts of the action.  (Dkt. # 52 at 19.)

        This factor focuses on the "factual connection" a case has with both the transferee and transferor venues; however, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests.  <u>See</u> <u>Volkswagen I</u>, 371 F.3d at 206; <u>Volkswagen II</u>, 545 F.3d at 318.  While it is true that certain individual plaintiffs

reside in the Western District, the Court finds that the two entity plaintiffs—

Aristotle and PredictIt—are both based in D.C. and these entities are also alleged

to have been injured and possibly would suffer the greatest economic harm in this

case more so than the individual plaintiffs who reside in Austin.  The Court finds

that this factor also weighs in favor of transfer to the D.C. District.

   3. <u>Remaining Public Factors</u>

   The parties do not seriously argue that the remaining public factors

weigh in their favor.  Indeed, the Court finds that familiarity of the forum with the

law that will govern the case and avoidance of unnecessary problems of conflict of

laws or application of foreign law are both neutral in the Court's analysis.

   4. <u>Weighing the Factors</u>

   Here, while Plaintiffs' choice of forum favors retaining the case in the

Western District, the Court finds that the two most important public interest factors

in this case—court congestion and local interest in having the claims decided at

home—weigh strongly in favor of transfer to the D.C. District.  Accordingly, the

Court will order that this case be transferred to that district.

CONCLUSION

   Based on the foregoing, the Court **GRANTS** CFTC's Opposed

Motion to Transfer Venue (Dkt. # 50) and **DENIES AS MOOT** CFTC's Opposed

Motion for Expedited Consideration of Fully Briefed Motion to Transfer Venue

11

(Dkt. # 60).  The Court **ORDERS** that this case be **TRANSFERRED** to the U.S.

District Court for the District of Columbia.

    **IT IS SO ORDERED**.

    **DATED**: Austin, Texas, January 16, 2024.

            _____

            David Alan Ezra
            Senior United States District Judge