**FILED**

February 02, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ klw

DEPUTY

No. 24  50079

# In the United States Court of Appeals for the Fifth Circuit

IN RE: KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., ARISTOTLE INTERNATIONAL, INC., MICHAEL BEELER, MARK BORGHI, RICHARD HANANIA, JAMES D. MILLER, JOSIAH NEELEY, GRANT SCHNEIDER, AND WES SHEPHERD,
*Petitioners.*

————————————————

On Petition for Writ of Mandamus from the United States District Court for the Western District of Texas (1:22-cv-00909)

————————————————

## PETITION FOR WRIT OF MANDAMUS

## PRESENTED TO PRIOR MERITS PANEL JUDGES GRAVES, HO, AND DUNCAN

————————————————

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com

*Counsel for Petitioners Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Predict It, Inc., Aristotle International, Inc., Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, and Wes Shepherd*

February 1, 2024

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

No. ___-_____

IN RE KEVIN CLARKE, ET AL.,
*Petitioners.*

The undersigned counsel of record for Petitioners certifies that the below listed persons and entities have an interest in the outcome of this case as described in the fourth sentence of Fifth Circuit Rule 28.2.1.  These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**Petitioners**

Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, Wes Shepherd, Predict It, Inc., and Aristotle International, Inc.

**Respondent**

Commodity Futures Trading Commission

**Nominal Respondent**

Hon. David Alan Ezra
United States District Judge
262 West Nueva Street
San Antonio, Texas 78207

i

**Counsel for Petitioners**

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com

**Counsel for Respondent**

Robert A. Schwartz
*General Counsel*
Anne W. Stukes
*Deputy General Counsel*
Martin B. White
*Senior Assistant General Counsel*
U.S. COMMODITY FUTURES
TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581
Phone: (202) 993-1390
Fax: (202) 418-5127
mwhite@cftc.gov

**Counsel for Nominal Respondent**

N/A

In accordance with Federal Rule of Appellate Procedure 26.1, the undersigned counsel certifies that Petitioner Aristotle International, Inc. is the parent corporation of Petitioner Predict It, Inc.  The undersigned further certifies that none of the other Petitioners, including Petitioner Aristotle International, Inc., has any parent corporation, and no publicly held corporation holds more than 10% of their stock.

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel of Record for*
*Petitioners*

## STATEMENT REGARDING ORAL ARGUMENT

This petition challenges the District Court's decision to transfer to Washington, D.C., a challenge to an arbitrary and capricious decision by the CFTC to close the PredictIt Market and toss the investments of the Market's traders onto the street. This petition presents important questions about the Government's ability to move challenges to administrative agency rules and decisions, with nationwide effects, to the federal courts of the Nation's capital. At stake in this petition, therefore, are this Circuit's efforts to hold federal agencies to account and to enforce the few checks on their authority, including the Administrative Procedure Act.

The transfer decision also follows this Court's thorough examination of nearly every relevant legal question in this case. The transfer, if allowed to stand, would deprive this Court of further authority to enforce the principles set forth in its opinion against the CFTC in this case and would waste the judicial resources this Court has invested in familiarizing itself with the case.

As described further below, this Court should divide the requested relief into two phases. The District Court physically transferred the case file to the United States District Court for the District of Columbia the day it signed the transfer order. To best ensure this Court's ability to implement any decision on the merits, this Court should promptly and without oral argument order the District Court to request return of the instant case from the District of Columbia. *In re Nine Mile Ltd.*, 673

F.2d 242, 243 (8th Cir. 1982). Next, this Court should set the petition for oral argument in order to address the important issues regarding the propriety of the District Court's transfer order. *See, e.g.*, *Def. Distributed v. Bruck*, No. 21-50327 (5th Cir. Aug. 3, 2021), and *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 347 (5th Cir. 2017) (conducting oral argument on transfer-related mandamus actions).

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ............................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS...............................................................................v

TABLE OF AUTHORITIES ....................................................................... vii

JURISDICTIONAL STATEMENT ............................................................1

ISSUES PRESENTED..............................................................................1

RELIEF SOUGHT ...................................................................................2

INTRODUCTION ....................................................................................3

FACTUAL AND PROCEDURAL BACKGROUND ...............................................5

    I.    The Government Licenses the PredictIt Market in 2014 and Tries to Throw Traders Out of the Market in 2022. ........................................5

    II.    The District Court Fails to Act on a Request for a Preliminary Injunction, Prompting an Appeal to This Court...................................7

    III.    This Court Puts a Stop to the CFTC's Arbitrary Efforts to Close the Market, Sets Forth the Legal Principles Governing this Matter, and Remands to Its Subordinate Court to Implement Those Principles. ........................................8

    IV.    The District Court Begins to Carry Out this Court's Mandate, Until the Government Seeks Transfer................................................10

    V.    The District Court Orders Transfer, by "Disregarding" the Interests of the Trader Plaintiffs Who Chose to Bring This Action and this Court's Thorough Opinion. ..................................................11

    VI.    The District Court Transfers the Case Before Making Its Order Public and Denies Petitioners' Request for a Stay.............................12

ARGUMENT ..........................................................................................13

    I.    This Court Uses Mandamus to Correct Erroneous Transfer Decisions. ...........................................................................13

II.     The District Court Clearly Abused Its Discretion by Physically Transferring the File Before Even Notifying the Parties of Its Transfer Decision and by Declining to Request Return of the Case. ..................................................................................15

III.    The District Court Clearly Abused Its Discretion When It Transferred this Case to our Nation's Capital, After this Court's Thorough Decision. ...............................................................17

    A.     Transferring a Case Out of a Circuit After Thorough and Substantive Circuit Treatment Is Unprecedented; In this Case, It Is a Clear Abuse of Discretion....................................17

    B.     The District Court Abused Its Discretion by "Disregarding" the Nationwide Effects of a Government Decision. ...............................................................................22

    C.     The District Court Abused Its Discretion with regard to the Court Congestion and Private Interest Factors. .......................30

IV.     Correcting the District Court's Error Through Mandamus is Appropriate Under the Circumstances. ...............................................32

CERTIFICATE OF SERVICE ...............................................................35

CERTIFICATE OF COMPLIANCE.......................................................36

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Am. Trucking Ass'ns, Inc. v. ICC*,
    669 F.2d 957 (5th Cir. 1982) ........................................................................ 19, 20

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ........................................................................................... 29

*Behring Reg'l Ctr. LLC v. Wolf*,
    No. 20-CV-09263-JSC, 2021 WL 1164839 (N.D. Cal. Mar. 26,
    2021) ............................................................................................................... 28

*Braidwood Mgmt., Inc. v. EEOC*,
    70 F.4th 914 (5th Cir. 2023) ........................................................................... 27

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S.
    Dep't of Labor*,
    17 F.4th 604 (5th Cir. 2021) ........................................................................... 27

*Capitol Records, LLC v. BlueBeat, Inc.*,
    No. CV 09-8030-JFW, 2010 WL 11549413 (C.D. Cal. Mar. 16,
    2010) ............................................................................................................... 18

*Chamber of Com. v. U.S. Dep't of Lab.*,
    885 F.3d 360 (5th Cir. 2018) ........................................................................... 28

*Cheney v. U.S. Dist. Court for D.C.*,
    542 U.S. 367 (2004) ........................................................................................ 13

*Chicago, R.I & P.R. Co. v. Igoe*,
    220 F.2d 299 (7th Cir. 1955) ........................................................................... 25

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
    928 F.2d 1509 (10th Cir. 1991) ....................................................................... 15

*Clarke v. Commodity Futures Trading Comm'n*,
    74 F.4th 627 (5th Cir. 2023) ..................................................................... *passim*

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    51 F.4th 616 (5th Cir. 2022) ........................................................................... 27

*Cohen v. Waxman*,
   421 F. App'x 801 (10th Cir. 2010) .......................................................21

*Def. Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) .........................................................*passim*

*Def. Distributed v. Platkin*,
   48 F.4th 607 (5th Cir. 2022) ...............................................................17

*In re Depuy Orthopaedics, Inc.*,
   870 F.3d 345 (5th Cir. 2017) ...............................................................iv

*Ferens v. John Deere Co.*,
   494 U.S. 516 (1990)...................................................................15, 21

*FTC v. Multinet Mktg., LLC*,
   959 F. Supp. 394 (N.D. Tex. 1997) ....................................................18

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..........................................................31

*GTE Sylvania Inc. v. Consumer Prods. Safety Comm'n*,
   438 F. Supp. 208 (D. Del. 1977)..........................................................19

*In re Horseshoe Entm't*,
   337 F.3d 429 (5th Cir. 2003) ..............................................................30

*Int'l Union v. OSHA*,
   976 F.2d 749 (D.C. Cir. 1992)..............................................................19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................32

*Menendez Rodriguez v. Pan Am. Life Ins. Co.*,
   311 F.2d 429 (5th Cir. 1962) .........................................................15, 30

*Michigan Welfare Rights Org. v. Trump*,
   600 F. Supp. 3d 85 (D.D.C. 2022).......................................................21

*Missouri v. Biden*,
   83 F.4th 350 (5th Cir. 2023) ...............................................................27

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
    53 F.4th 869 (5th Cir. 2022) ................................................................27

*In re Nine Mile Ltd.*,
    673 F.2d 242 (8th Cir. 1982) ................................................. iii, 15, 16

*Permian Basin Petroleum Ass'n v. Dep't of the Interior*,
    No. 7:14-CV-00050, 2015 WL 11622492 (W.D. Tex. Feb. 26,
    2015) ...................................................................................................32

*In re Planned Parenthood*,
    52 F.4th 625 (5th Cir. 2022) .........................................................*passim*

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ...............................................................13

*In re Red Barn Motors, Inc.*,
    794 F.3d 481 (5th Cir. 2015) .........................................................16, 17

*Rusesabagina v. GainJet Aviation S.A.*,
    No. 5:20-CV-01422, 2023 WL 4853402 (W.D. Tex. July 28, 2023) ...............21

*Samsung Elecs. Co. v. Rambus, Inc.*,
    386 F. Supp. 2d 708 (E.D. Va. 2005) ....................................................18

*Starnes v. McGuire*,
    512 F.2d 918 (D.C. Cir. 1974) ...............................................................16

*Stukenberg v. Abbott*,
    929 F.3d 272 (5th Cir. 2019) ...................................................................2

*Texas v. United States Dep't of Homeland Sec.*,
    661 F. Supp. 3d 683 (S.D. Tex. 2023) ....................................................28

*In re TikTok*,
    85 F.4th 352 (5th Cir. 2023) ...........................................14, 15, 29, 30

*United States v. Lee*,
    358 F.3d 315 (5th Cir. 2004) ................................................................20

*Utterback v. Trustmark Nat'l Bank*,
    716 F. App'x 241 (5th Cir. 2017) ..........................................................21

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)...............................................................4, 18, 21

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .........................................22, 24, 29, 32

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...............................................*passim*

*W. Watersheds Project v. Tidwell*,
    306 F. Supp. 3d 350 (D.D.C. 2017)...................................................29

*In re Warrick*,
    70 F.3d 736 (2d Cir. 1995) ...............................................................16

**Statutes**

5 U.S.C. § 702 ...................................................................................26

28 U.S.C. § 1404(a) ...............................................................*passim*

28 U.S.C. § 1651(a) ................................................................................1

**Other Authorities**

Wright & Miller, 14D Fed. Prac. and Proc. § 3815 (4th ed. 2022) ........................28

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed. 2022) ....................15

## JURISDICTIONAL STATEMENT

Petitioners file this petition for a writ of mandamus from an order granting a motion to transfer venue under 28 U.S.C. § 1404(a) entered by the Western District of Texas (the "District Court"). "[I]n this circuit, mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)." *Def. Distributed v. Bruck*, 30 F.4th 414, 423 (5th Cir. 2022). This Court has jurisdiction over this petition pursuant to 28 U.S.C. § 1651(a). *Id.* at 424.

## ISSUES PRESENTED

1. Did the District Court abuse its discretion in immediately effecting physical transfer of the case file, hours after signing its transfer order and before that order was posted to the docket and shared with the parties?

2. Did the District Court abuse its discretion by granting the Government's request to transfer this case to the federal courts of the Nation's capital:

(a) in the face of this Court having invested in substantially resolving important merits questions and its interest in ensuring the legal principles set forth in its thorough panel decision are carried out;

(b) in "disregard" of the interests of PredictIt Market traders, resident in Texas, who chose to challenge the Government's arbitrary action; and

(c) while mistakenly concluding that the court congestion of the District Court favored transfer and factors regarding the location of evidence were neutral?

1

## **RELIEF SOUGHT**

Because this petition concerns questions regarding this Court's prior opinion and mandate, Petitioners respectfully request that this petition be referred to the panel previously assigned to this case: Judges Graves, Ho, and Duncan.  *See, e.g.*, *Def. Distributed*, 30 F.4th at 421; *M.-D. by next friend Stukenberg v. Abbott*, 929 F.3d 272, 275 (5th Cir. 2019).  Petitioners respectfully request that this Court break mandamus relief into two phases and: (1) as soon as practicable, issue a partial initial writ of mandamus directing the District Court to seek return of the case from the District of Columbia while this matter proceeds;  and (2) then consider the merits of the transfer order and issue a writ of mandamus directing the District Court to vacate its order transferring this case.

## <u>INTRODUCTION</u>

The Commodity Futures Trading Commission is a year and a half into a campaign to close the PredictIt Market, notwithstanding having granted it a license to operate in 2014. Every step of the way, however, the Government's reasoning has been arbitrary and its procedures well short of those required to revoke a license, all in violation of the Administrative Procedure Act. This Court—in a thorough, substantive, 21-page opinion—put a stop to that. *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627 (5th Cir. 2023). It held a phalanx of Government arguments to avoid any judicial review of its actions—mootness, lack of final agency action, commitment to agency discretion, and standing—to be "meritless." *Id.* at 633. And it carefully set forth the legal principles guiding resolution of the merits, explaining that the Market had a license and the CFTC's efforts to close the Market were arbitrary and illegal. *Id.* at 642–43. It remanded the case to its subordinate court to faithfully implement its reasoning in the form of final judgment.

The District Court declined. Instead, it entered the preliminary injunction this Court had written for it, and then, four months later, transferred the case out of the Fifth Circuit to the Nation's Capital at the Government's request.

The transfer decision is unprecedented and a clear abuse of discretion. It warrants mandamus relief.

First, counsel is aware of no case, nationwide, where a Circuit Court has invested so much time and attention to a case's merits, only to have it transferred out of its supervision on remand. That is likely because transfers must not be contrary to the economy and equities of the federal judicial system. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). And the transfer wastes the investment this Court has made in resolving this matter, sending it in all likelihood to a panel of the D.C. Circuit starting from scratch. It also deprives this Court of the option and authority to ensure the legal principles it painstakingly applied to this case are faithfully implemented.

Relatedly, inter-circuit transfers are not available so a party can seek a more amenable judge or more favorable precedents. There is undoubtedly in any transfer effort an unspoken undercurrent of projecting where and through whom decisions may be more favorable, even as parties try to support a transfer request on other grounds. But, here, the Government knows the "likely" outcome in this case, because this Court has explained it. *Clarke*, 74 F.4th 627. And the transfer motion is an apparent effort to avoid further review in this Court enforcing the principles set forth in its thorough opinion.

Second, the District Court's transfer decision goes directly to where challenges to federal Government actions with nationwide effects may and will be heard. The District Court held that plaintiffs who choose to challenge the

4

Government—like the Texas-based, irreparably injured PredictIt Market traders in this case—must be "disregarded" if there are theoretically others similarly injured in all or most other judicial districts.  A69.  In the absence of those interests, the Government urged that the "locus of operative facts"—the place where the Government made its decision—should control.  A15–17.

This is a recipe for redirecting all challenges to sweeping Government decisions to Washington.  And it is one driven by the Government's discomfort with this Court's long line of decisions holding our Nation's leaders to account.  As the CFTC's General Counsel publicly quipped while discussing this case, "it would verge on malpractice" for any lawyer to challenge government action anywhere other than the Fifth Circuit, betraying the Government's substantive distaste for this Court's decisions and desire not to be here.  A294.

This Court should forcefully reject the suggestion that courts in this region have nothing to say about administrative decisions having nationwide effect.  If the administrative state wants to defend its actions only in Washington, it should stop making sweeping decisions affecting the governed residing throughout the country.

## **FACTUAL AND PROCEDURAL BACKGROUND**

I. **The Government Licenses the PredictIt Market in 2014 and Tries to Throw Traders Out of the Market in 2022.**

For more than nine years, the PredictIt Market has allowed individuals to invest in contracts based on their predictions of outcomes of future elections or other

5

significant political events. *Clarke*, 74 F.4th at 633. The Commission licensed the Market to operate through a "no-action" decision issued in 2014. *Id.* at 633–34.

In 2022, the Commission abruptly tried to revoke that license. *Id.* at 634–35. This Court has already explained the serious harm imposed on Market traders by Government efforts to toss them abruptly from their investments. *Id.* at 639–40, 643.

The Petitioners—who are traders who participate in the Market, academics who use Market data in their teaching or research, and the two entities that operate the Market on behalf of its university sponsor—filed this lawsuit asserting claims under the Administrative Procedure Act to redress the harm caused by the Government. A216–229. Six of these traders and academics reside in Austin, purchased their contracts from Austin, and have been harmed in Austin. A195–198. The Plaintiff traders chose to invest time and energy in redressing what this Court has held likely to be illegal action damaging them. Indeed, the lead Plaintiff, Kevin Clarke, has been a key witness providing evidence to rebut claims that the traders in this Market do not matter and their injuries are trivial. He has fully analyzed trends in trading activity, and has explained how the departure of key trading volume created a distorted, inefficient, and illiquid market for his investments. A192; A199; A117; A179.

## II.    The District Court Fails to Act on a Request for a Preliminary Injunction, Prompting an Appeal to This Court.

The instant petition is not the first time the District Court has needed appellate prompting to address the merits of this case.  The Commission set a deadline for the Market to close.  In the time Petitioners' motion for a preliminary injunction was pending, "spanning three months, the district court did not rule on the preliminary injunction motion, even after [Petitioners] moved to expedite its consideration in light of the looming deadline for closing PredictIt contracts." *Clarke*, 74 F.4th at 635.  Petitioners appealed, and this Court granted an injunction pending appeal against efforts to close the Market.

A panel of this Court—Judges Graves, Ho, and Duncan—heard expedited oral argument on this case within a week of the completion of briefing.  Judge Ho correctly diagnosed the Government's urged vision of "no-action letters" as "a license to bully." *See* Oral Argument at 26:33, *Clarke*, 74 F.4th at 633, https://tinyurl.com/ytjvmd67.  Thereafter, the agency began what has become a series of steps to avoid this Court's supervision of its actions.  Twenty-two days after oral argument, the Government issued a new letter withdrawing the agency's prior closure announcement.  A244.  It was a transparent effort to try to moot the case and to get out of the Fifth Circuit for good.

7

### III. This Court Puts a Stop to the CFTC's Arbitrary Efforts to Close the Market, Sets Forth the Legal Principles Governing this Matter, and Remands to Its Subordinate Court to Implement Those Principles.

The agency's efforts to pretermit this Court's adjudication of its attempts to close the Market were not well received. On July 21, 2023, the Court issued a published opinion resolving just about every threshold and merits issue in this matter. The Court held that the Government's effort to withdraw and replace its decision to close the Market was an unjustifiable violation of the Court's injunction pending appeal. *Clarke*, 74 F.4th at 641. The Court saw this gambit for what it was—the latest attempt to harangue traders out of the Market and avoid answering to this Court.

As for the Government's campaign to close the PredictIt Market, the Court found a catalog of likely Administrative Procedure Act violations. The Court held that the "no-action relief" the Government issued in 2014 to "permit" the Market to open is a "license" under the APA. *Id.* at 637, 642. That means the traders and operators who relied on that license to invest in the Market are owed more than the Government's revocation letters. *Id.* Instead, the Market participants are entitled to extensive notice of whatever violations the Government believes justify revoking the license and an opportunity to rebut them or to come into compliance. *Id.* at 642.

The Court further detailed the arbitrariness of the Government's successive decisions to close the Market, in violation of the APA. Most prominently, the agency

8

had mishandled the "reliance interests" of the Market's traders, who reasonably expected the Government not to pull the plug on their investments, including by not considering alternatives to closing the Market. *Id.* at 641–42, 644.

The Court also thoroughly analyzed the legal basis for each of the Government's threshold objections to this suit—no final agency action, standing, mootness, and commitments to agency discretion barring judicial review. *Id.* at 635–40. The Court held that each of these objections to the suit being heard was "meritless." *Id.* at 633.

The Court remanded the case "for the district court to enter a preliminary injunction *while it considers* Appellants' challenge to the CFTC's actions." *Id.* at 633 (emphasis added); *see also id.* at 644 ("We REVERSE the district court's effective denial of a preliminary injunction and REMAND with instructions that the district court enter a preliminary injunction *pending its consideration* of Appellants' claims.") (italic emphases added). The judgment and mandate remanded the case "to the District Court for further proceedings in accordance with the opinion of this Court." A292. The concurring opinion contemplated that the case would return to the Court to reach a "definitive conclusion" on many of the issues at the later stage of the case. *Clarke*, 74 F.4th at 644 (Ho, J., concurring).

**IV. The District Court Begins to Carry Out this Court's Mandate, Until the Government Seeks Transfer.**

After the Court's mandate issued, the District Court entered the preliminary injunction and ordered the parties to submit a proposed scheduling order "to control the remaining deadlines in this case." A184. The parties worked together to propose various deadlines, including for the CFTC to answer or otherwise respond to the complaint and finally to produce the "administrative record." A2.

There was no mention of any intention to seek, at this late stage, transfer the case to Washington, D.C. *Id.* But the Government filed precisely such a motion, more than a year after this case was filed and nearly three months after the Fifth Circuit's opinion. A6.

This ambush no doubt was ordered from on high. Less than a month before the Government moved for transfer, the CFTC's General Counsel made public comments regarding this case: He said that it would "verge on malpractice" for anyone challenging federal Government action not to initiate the case in the Fifth Circuit. A294. He said that since the Court's decision in this case, "I think about the Fifth Circuit all the time now." *Id.* The agency's growing bureaucratic distaste for this Court's decisions holding federal administrative agencies to account was palpable.

## V. The District Court Orders Transfer, by "Disregarding" the Interests of the Trader Plaintiffs Who Chose to Bring This Action and this Court's Thorough Opinion.

The District Court granted the Government's late-breaking motion to transfer without any hearing. A60. The transfer order mentions this Court's comprehensive opinion in *Clarke* only once, in two sentences of the background section. A64–65.

The Court said the parties did not "seriously dispute" that the case would be decided on the administrative record and therefore that the private interest factors governing transfer—those concerning the location of evidence relevant to the case— were "neutral." A67. In doing so, the District Court ignored the CFTC's attack on the standing of traders and efforts to discount their injury—issues on which the lead Austin-based Plaintiff was required to provide testimony—and Petitioners' arguments that the private interest factors therefore weighed against transfer. A36– 37.

The District Court further concluded that the public interest factors regarding "familiarity of the forum with the law that will govern the case" and avoiding "conflicts of laws" were "not seriously argue[d]," even though Petitioners repeatedly invoked this Court's familiarity with its decision and how it should be implemented as implicating both factors and weighing against transfer. A70, A38–39.

Instead, the District Court found that the "court congestion" factor weighed in favor of transfer. A68–69. On the local interest factor, the District Court held that

when the Government regulates with nationwide scope, the damaging effects felt in districts across the country can be "disregarded" in favor of particularized local interests. A69. Here, the District Court found a particularized interest in Washington, D.C., concluding that two of the thirteen Petitioners counted more than the others because they were companies operating the Market and "*possibly* would suffer the greatest economic harm." A70 (emphasis added). These two public interest factors alone, the District Court held, outweighed the deference normally afforded to the Petitioners' choice of forum. *Id.*

## VI. The District Court Transfers the Case Before Making Its Order Public and Denies Petitioners' Request for a Stay.

The District Court signed the transfer order on January 16, 2024, and "transferred the case that same day." A95. The transfer order was not entered on the docket, and the parties received no notice of the order, until January 17, 2024. Dkt. 61 (docket text noting date of entry). Following publication, Petitioners notified the District Court two days later of their intent to move for a stay of the transfer decision while they sought mandamus relief from this Court, A288, and filed that motion the following day. A72.

The District Court ordered a response from the CFTC. But the District Court subsequently denied the motion at 3:57 p.m. on January 25, 2024. A93. Because it had sent the case off to Washington before Petitioners even knew about the transfer order, the District Court concluded that it was "simply too late" and that it lacked

jurisdiction to grant a stay. A95–96. Five hours after the Court's order denying the stay and informing the parties that the case had been fully transferred, at 9 p.m. on January 25, 2024, Petitioners moved the District Court to request return of the case from the D.C. District Court and then to stay it. A97. The District Court denied that motion on Thursday, February 1. A295. That order having exhausted avenues of District Court relief, the Petitioners hours later through this filing seek mandamus relief before this Court.

## **ARGUMENT**

### I.     **This Court Uses Mandamus to Correct Erroneous Transfer Decisions.**

In the Fifth Circuit, "mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C.§ 1404(a)." *Def. Distributed*, 30 F.4th at 423. This Court considers the following in determining whether mandamus relief is appropriate: (1) whether there is "no other adequate means to attain the relief [] desire[d]," (2) whether there is a "clear and indisputable" right to the writ, and (3) whether "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004); *see In re Planned Parenthood*, 52 F.4th 625, 629 (5th Cir. 2022). The first "mandamus requirement," regarding the absence of other adequate remedies, "is satisfied in the motion-to-transfer context." *In re Radmax, Ltd.*, 720 F.3d 285, 287 n.2 (5th Cir. 2013).

13

There is "a clear and indisputable right to the writ" when the District Court clearly abuses its discretion. *See In re TikTok*, 85 F.4th 352, 358 (5th Cir. 2023); *Planned Parenthood*, 52 F.4th at 629; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II")*. In the transfer context, this Court finds this standard for mandamus satisfied if the District Court has "misapplie[d] the law to the facts," *Volkswagen II*, 545 F.3d at 310, or "ma[de] an error of law." *Def. Distributed*, 30 F.4th at 427. After all, abuse-of-discretion review is "deferential," but not a "rubber stamp." *TikTok*, 85 F.4th at 360.

Importantly, a court's discretion also "has limitations imposed by the text of § 1404(a) and by the precedents of the Supreme Court and of this Court that interpret and apply the text of § 1404(a)." *Volkswagen II*, 545 F.3d at 311. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A Section 1404(a) transfer is not justified simply because "litigating would be more convenient for the defendant elsewhere." *Def. Distributed*, 30 F.4th at 433. Rather, the party seeking a transfer "must adduce evidence and arguments that *clearly* establish good cause for transfer based on convenience and justice." *Id.* (emphasis added). And transfer must be denied unless the defendant's preferred forum is "clearly more convenient than the venue chosen by the plaintiff." *Id.* (quoting *Volkswagen II*, 545 F.3d at

14

314). This protects the core principle of the transfer analysis: That the plaintiff's choice of forum is to be "highly esteemed" and afforded great deference and presumptive weight. *Menendez Rodriguez v. Pan Am. Life Ins. Co.*, 311 F.2d 429, 434 (5th Cir. 1962); *see also Def. Distributed*, 30 F.4th at 433.

For the transfer inquiry, courts have weighed a number of nonexclusive private and public interest factors, as appropriate. *Volkswagen II*, 545 F.3d at 315. No factor is dispositive. *TikTok*, 85 F.4th at 358. And Section 1404(a) is to be used only in the interest of justice—not for forum shopping. *See*, *e.g.*, *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).

## II.    The District Court Clearly Abused Its Discretion by Physically Transferring the File Before Even Notifying the Parties of Its Transfer Decision and by Declining to Request Return of the Case.

This Court should grant mandamus relief in two phases. As a first step, as soon as practicable, the Court should order the District Court to seek return of the case from the D.C. District Court to ensure that this Circuit maintains jurisdiction to fully review the transfer decision and that its decision on the merits of the transfer can be implemented. When a district court orders transfer under Section 1404(a), "the better practice, codified in some local district court rules, is to stay the effect of transfer orders for a sufficient period to enable appellate review to be sought." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed. 2022); *see also In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir. 1982); *Chrysler Credit Corp. v. Country*

*Chrysler, Inc.*, 928 F.2d 1509, 1517 (10th Cir. 1991); *In re Warrick*, 70 F.3d 736, 739–40 (2d Cir. 1995); *Starnes v. McGuire*, 512 F.2d 918, 935 (D.C. Cir. 1974).

The "better practice" was not followed here, as the District Court transferred the case to Washington hours after signing his transfer order and before even making it available to the parties by entering it on the docket. A93–95. And the District Court, in an order filed the same day as this petition for mandamus, declined to remedy that deviation from best practices by requesting return of the case and then staying the transfer order during the pendency of this Court's mandamus review.

When confronting this situation, at least one Circuit Court has issued an early and partial mandamus order instructing the District Court to request return of the case. *See Nine Mile*, 673 F.2d at 243; *see also In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 n.6 (5th Cir. 2015) (compiling and favorably discussing circuit court decisions contemplating this option). It did so to preserve its jurisdiction to decide whether a transfer was proper and to remedy failure to follow the best practice of pausing a transfer to accommodate potential appellate review. The sequence of procedural events in *Nine Mile* was identical to that here: The district court granted a motion to transfer, clerk officials immediately transferred the files to the new court, and the party opposing transfer sought a stay of the transfer order three days after its entry. *Id.* The Eighth Circuit issued the early mandamus without making findings

16

of likelihood of overturning the transfer order. *Id.* Indeed, after the case was returned, the Eighth Circuit upheld the transfer.

Quickly issuing the requested partial mandamus will avoid the unfortunate course of events that unfolded in *Defense Distributed v. Bruck*, 30 F.4th at 423. There, this Court instructed the district court to request return of the case. *Id.* at 436–37. But that instruction occurred after this Court heard oral argument and decided the merits of transfer, and thus a year after the transfer itself. By that time, the transferee court declined the request for return. *See Def. Distributed v. Platkin*, 48 F.4th 607, 608 (5th Cir. 2022) (Ho, J., concurring) (lamenting the procedural problem and observing, "we're unaware of any district court anywhere in the nation to have ever denied such a [retransfer] request.").

## III. The District Court Clearly Abused Its Discretion When It Transferred this Case to our Nation's Capital, After this Court's Thorough Decision.

### A. Transferring a Case Out of a Circuit After Thorough and Substantive Circuit Treatment Is Unprecedented; In this Case, It Is a Clear Abuse of Discretion.

The Government's motion seeking transfer of this case—and the District Court's order granting it—both ignore the elephant in the room: This Court's thorough decision dismantling nearly every CFTC argument to avoid judicial review and to defend its plainly arbitrary behavior. *Clarke*, 74 F.4th at 635–40. The District Court's transfer order did not address the implications of this Court's comprehensive and substantive ruling, only cursorily noting that it occurred in two sentences of the

transfer order.  A64–65.  That was a clear abuse of discretion, indisputably entitling Petitioners to mandamus relief, for three reasons.

First, the transfer does not serve judicial economy because of the substantial work that this Court has invested in resolving this matter.  For that reason, the transfer is squarely contrary to the appropriate purposes of transfer, which focus on conserving judicial resources, not wasting them.  *Van Dusen*, 376 U.S. at 616.  The District Court was single-mindedly focused on what time the District Court alone would have to invest in this case.  But the District Court ignored the almost certain prospect of further circuit-level proceedings.  And the transfer portends that the D.C. Circuit will start from square one, squandering this Court's familiarity with the case and ability to pick up where it left off in its *Clarke* decision.

Transferring a case to the courts of another circuit, after so substantial of circuit-level proceedings resolving the issues in the case, is unprecedented.  Counsel has been unable to locate any other case where it has occurred.  Because transfers should not sacrifice judicial resources, the weight of case law is in precisely the opposing direction: Courts typically deny transfer when judges of that jurisdiction already have had substantive proceedings affecting the merits.  *See, e.g.*, *Capitol Records, LLC v. BlueBeat, Inc.*, No. CV 09-8030-JFW, 2010 WL 11549413, at *3 (C.D. Cal. Mar. 16, 2010); *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 725 (E.D. Va. 2005); *FTC v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395–96

(N.D. Tex. 1997); *GTE Sylvania Inc. v. Consumer Prods. Safety Comm'n*, 438 F. Supp. 208, 210 (D. Del. 1977).

Second, by transferring the case, the District Court erroneously deprived this Court of its ability to exercise its "residual jurisdiction" to enforce the legal principles it set forth governing this case, including this Court's painstaking application to the facts here. *Int'l Union v. OSHA*, 976 F.2d 749, 750 (D.C. Cir. 1992). This Court has an interest in ensuring that its rulings are faithfully executed and that subordinate courts do not deviate from its decisions. *Am. Trucking Ass'ns, Inc. v. ICC,* 669 F.2d 957, 960 (5th Cir. 1982). Transferring this case to another circuit eliminates this Court's ability to see to ensure its legal reasoning in this matter is carried out.

The transfer order also violates this Court's mandate. The Court's mandate was very specific about what should happen next in this case. It remanded the case "for the district court to enter a preliminary injunction while ***it*** considers Appellants' challenge to the CFTC's actions." *Clarke*, 74 F.4th at 633 (emphasis added); *see also id.* at 644 ("We REVERSE the district court's effective denial of a preliminary injunction and REMAND with instructions that the district court enter a preliminary injunction *pending **its** consideration* of Appellants' claims.") (emphases added); A292 (judgment and mandate remanding case "to the District Court for further proceedings in accordance with the opinion of this Court"). And the concurring

opinion expressly contemplated that the case would return to this Court, even to the same panel of this Court, to potentially reach a "definitive conclusion" on some of the questions at issue in the Court's opinion. *Id.* (Ho, J., concurring). On remand, a district court "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). That did not happen here: This Court's instruction that further proceedings in this case should occur in the district court to which this Court remanded the case and over which this Court can continue to exercise supervisory authority was ignored. And "mandamus is the appropriate remedy to enforce the judgment of an appellate court." *Am. Trucking Ass'ns,* 669 F.2d at 960.

Third, the transfer order was an abuse of discretion because it promoted and enabled Government forum shopping. The Government's desire to move the case to Washington is clearly driven by moving away from this Court's decision and the prospect of this Court being called on again to enforce the principles set forth therein. Labeling the CFTC's effort to move this case to Washington now, after this Court's substantive decision, "forum shopping" actually is a polite euphemism; it is really "decision dodging."

When that motivation is detected, transfer must be denied. The Supreme Court has expressly instructed that 28 U.S.C. "§ 1404(a) should not create or

multiply opportunities for forum shopping." *Ferens*, 494 U.S. at 523; *see also Rusesabagina v. GainJet Aviation S.A.*, No. 5:20-CV-01422, 2023 WL 4853402, at *6 (W.D. Tex. July 28, 2023) (citing *Ferens* in holding that "[t]ransferring this case to the D.D.C. based on its more expansive view of personal jurisdiction would permit the very kind of post-filing forum shopping § 1404 was intended to prevent"). After all, "Section 1404(a) is meant to be a 'judicial housekeeping measure' rather than a 'forum-shopping instrument.'" *Michigan Welfare Rights Org. v. Trump*, 600 F. Supp. 3d 85, 98 (D.D.C. 2022) (quoting *Van Dusen*, 376 U.S. at 636).

This is even more true when there already has been an adverse ruling in the case, the full consequences of which the transfer-seeker hopes to evade. Because "[o]nly a neutral reason—one not designed to favor one party over another—can justify a transfer," transfer should not be granted at the behest of a party against whom an adverse ruling has been handed down. *Cohen v. Waxman*, 421 F. App'x 801, 803–04 (10th Cir. 2010); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 (5th Cir. 2017).

In the District Court, the CFTC disclaimed any motivation to avoid this Court's decision, noting that the decision will follow the transfer as the law of the case. A48. If the transfer were to stand, however, the CFTC undoubtedly will argue in Washington that this Court's opinion included only predictions of dispositive questions and the D.C. District and Circuit courts should take an entirely fresh look

at them using their own precedents and judgment.  The CFTC can be counted on to make that argument, even though this Court found many of the CFTC's arguments, especially those seeking to avoid any judicial review, "meritless."  *Clarke*, 74 F.4th at 633.  What the CFTC is trying hard to avoid is a return to this Court for further review and enforcement of the legal principles carefully set forth in this Court's opinion.

The true motivating factor of the CFTC's desire to transfer—to get out from under this Court's decision against it and further supervision by this Court—thus wholly disallows transfer under Section 1404(a).  Such a transfer directly *contravenes* the interests of justice, whereas transfer under Section 1404(a) must be "in the interest of justice."  28 U.S.C. § 1404(a); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

## B.  The District Court Abused Its Discretion by "Disregarding" the Nationwide Effects of a Government Decision.

The District Court's transfer order erroneously resolves important questions regarding where challenges to government actions with nationwide effect may be brought.  As such, the District Court's transfer order will have "importance beyond the immediate case," and this Court should remedy the error through mandamus. *Def. Distributed*, 30 F.4th at 426.

The District Court held that, when a government agency adopts a rule or decision with nationwide effects, the interests of plaintiffs throughout the country

22

affected by that decision are to be "disregarded" in the transfer analysis. A69. In other words, a plaintiff—who has chosen to invest time and energy challenging an arbitrary federal government action—is irrelevant, if the way he has been injured is similar to other victims scattered across the country, who have chosen not to seek judicial relief.

Applied to this case, the District Court gave the back of its hand to the lead plaintiff and other Texas-based trader plaintiffs who chose to say "no" to the CFTC and to seek redress for its precipitous, unexplained, and illegal decision to shutter the PredictIt Market and bounce them out of their investments. More generally, the district court's rule is a recipe for making sure most challenges to the administrative state's rules and decisions with sweeping nationwide effect are heard in Washington.

That is undoubtedly what federal Government officials want. They are apparently watching with concern as this Court repeatedly has held the federal Government to account. Indeed, the General Counsel of the CFTC said "it would verge on malpractice" for anyone challenging administrative agency behavior not to bring their case in the Fifth Circuit. A294. Since this Court's decision, the General Counsel "think[s] about the Fifth Circuit all the time." A294. Not so subtly implied was his view that the federal Government must do anything and everything to get cases out of this Court. The rule urged by the CFTC, and adopted by the District

Court, is a significant step forward in the federal Government's efforts to keep the Fifth Circuit from reviewing its behavior.

The District Court's attempted rule regarding transfer in cases of federal Government actions with nationwide effect is clear abuse of discretion error for at least three reasons.

First, the District Court's decision to "disregard" a plaintiff's interests—just because they are similar to those of other victims of government action in many or all other districts—was error. A69. In so holding, the District Court misread this Court's decisions in the *Volkswagen* cases. *Id.*

The *Volkswagen* cases do not provide criteria for "disregarding" local interests. Rather, *there were no local interests* in the courts in which the plaintiffs filed those cases. Both *Volkswagen I* and *Volkswagen II* were products liability matters arising from automobile accidents. Those accidents occurred outside the districts in which the lawsuits were filed; the plaintiffs did not live in those districts; no evidence or witnesses were located in those districts. *Volkswagen II*, 545 F.3d at 317–18. That is what led to this Court's conclusion that there was nothing to distinguish the districts in question from "virtually [] any judicial district or division in the United States." *Id.* at 318. It was because there was "no factual connection with the events" at all to those districts. *Volkswagen I,* 371 F.3d at 206; *see also Volkswagen II*, 545 F.3d at 318.

This Court's reasoning in the *Volkswagen* cases thus was hardly a license to ignore the interests of citizens, injured by Government action with nationwide effects, residing in the district where they filed suit. The plaintiffs in *Volkswagen II* argued that the citizens in the originally filed district would be curious to know whether Volkswagens had problems, even though those alleged problems had hurt no one in the district yet. *Id.* at 316, 318. The Government's behavior in this case hurt Texas residents, in Texas, where they made their investments that the Government wants to bounce out of the market. And these Texas citizens were the ones motivated enough to invest their time and energy into standing up to government overreach that this Court already has held arbitrary and unjustifiable. That matters, and the District Court erred by "disregarding" their interests.

The District Court tried to set this case apart, by claiming that some plaintiffs in this case residing in Washington were more important and would suffer more monetary damages than others. A69–70. Even in cases where money is at stake, this Court has rejected that kind of accounting ledger calculus, using dollars and cents to determine which plaintiffs are more important. *See*, *e.g.*, *Planned Parenthood*, 52 F.4th at 631–32 (although case concerned provision of Medicaid funds statewide, Texas citizens had equal interest in having the case decided in their respective districts); *Chicago, R.I & P.R. Co. v. Igoe*, 220 F.2d 299, 303–04 (7th Cir. 1955).

25

That reasoning is all the more improper here, in an Administrative Procedure Act case, where the Government is hiding behind sovereign immunity from accountability for the damages caused by its actions, and the plaintiffs generally may seek only a reversal of a government decision and injunction against further recurrence. The APA asks whether any party has been "adversely affected"—that is the gatekeeper to court, and each plaintiff in this case clearly satisfies it. 5 U.S.C. § 702.

Indeed, is too late now for the Government to argue and the District Court to find that the traders are second-class plaintiffs, whose interests should be disregarded in the transfer analysis. A69. On appeal, the CFTC claimed the PredictIt Market traders do not matter, that their injuries are not significant enough, and that they do not have standing to sue. This Court rejected every one of those arguments: explaining that the agency had taken direct aim at "investors and traders [being] able to see their contracts through and realize any gains from having predicted events correctly" and "were *already* undergoing harm." *Clarke*, 74 F.4th at 643.

Second, the net effect of the District Court's decision is that *any* administrative case having nationwide effect would *always* be more appropriately tried in Washington, D.C.

After having disregarded the interests of plaintiffs who chose to stand up to the Government because citizens in other districts had been injured too, the District

26

Court recited the CFTC's argument that such cases should be heard where the "operative facts" occurred.   A69.   That is Washington, according to the CFTC, because the federal Government made its decision there.   A7–8; A15–17.   That simply cannot be the rule.   If allowed to stand, the Government will use this reasoning as a cudgel to migrate all APA challenges back to the Nation's capital.

But this Court never has concluded that the D.C. Circuit and its subordinate courts have a monopoly on reviewing the rules and decisions of federal agencies that affect all Americans.   Quite the opposite: this Court has time and again reviewed edicts and mandates handed down by federal officials with nationwide effect and reversed.   *See*, *e.g.*, *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) (overturning Consumer Financial Protection Bureau nationwide lending rule); *Missouri v. Biden*, 83 F.4th 350 (5th Cir. 2023) (blocking federal Government's nationwide coercion of social media companies to censor alleged misinformation); *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023) (blocking enforcement of Equal Employment Opportunity Commission nationwide guidance regarding sexual orientation and gender identity); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 872 (5th Cir. 2022) (blocking Federal Trade Commission enforcement of  Horseracing Integrity and Safety Act with nationwide effects); *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Labor*, 17 F.4th 604, 611 (5th

27

Cir. 2021) (overturning nationwide OSHA mandate regarding COVID-19 vaccination); *Chamber of Com. v. U.S. Dep't of Lab.*, 885 F.3d 360 (5th Cir. 2018) (overturning nationwide Department of Labor "fiduciary rule").

This Court has put a fine point on the matter: When a government actor projects itself across state lines into Texas and causes harm to individuals in Texas, Texas courts have a significant interest in assessing and redressing the impacts of the action. *See Def. Distributed*, 30 F.4th at 435–36; *see also Planned Parenthood*, 52 F.4th at 631–32 (affirming denial of transfer between Texas districts on mandamus when challenged policy had statewide effects); *see also Texas v. United States Dep't of Homeland Sec.*, 661 F. Supp. 3d 683, 691–92 (S.D. Tex. 2023) (in a case with "national implications," "the proposed transferee venues have no more interest in having [the] case decided there than in [the district the plaintiffs chose]").

And it is a position that has been rejected by Congress and courts around the country. Congress found the idea of forcing all claims against D.C.-based federal agencies into the federal courts of the Nation's capital "quite unsatisfactory" and explicitly authorized plaintiffs to sue federal agencies in the jurisdiction in which they live. Wright & Miller, 14D Fed. Prac. and Proc. § 3815 (4th ed. 2022); *see also Behring Reg'l Ctr. LLC v. Wolf*, No. 20-CV-09263-JSC, 2021 WL 1164839, at *3 (N.D. Cal. Mar. 26, 2021) (if rules with nationwide effects were transferred to

Washington because policies are made there, "nearly all APA action[s] should be decided in the District of Columbia, but there is no such rule").

The combination of residency and harm giving rise to a cause of action suffices for a plaintiff to bring—and keep—an action in their home district. After all, Section 1404(a) is meant to protect against only "the most blatant forum-shopping" by plaintiffs—which is not the case when a plaintiff brings an action in their home district. *Tik-Tok*, 85 F.4th at 357. The ironic and unacceptable outcome of adopting the CFTC's position is that the more widespread the fallout from a federal agency's improper action, and the more Americans harmed by it, the less likely the Government will be held to account outside the Nation's capital. If the federal government desires to have its decisions tested only in Washington, it should limit its decisions to those that affect only Washingtonians. In the meantime, it must be held to account in the districts where affected citizens brave enough to challenge its actions reside.

Third, "'the local interest in having ***localized controversies*** decided at home'" really has no application in this case at all, much less one that overcomes the Plaintiffs' choice of forum. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 n.6 (2013). A localized controversy is a lawsuit arising from an automobile accident, a land-use dispute, or a discrimination case about a local workplace. *Volkswagen I*, 371 F.3d at 205–06; *W. Watersheds Project v.*

29

*Tidwell*, 306 F. Supp. 3d 350, 361 (D.D.C. 2017); *In re Horseshoe Entm't*, 337 F.3d 429 (5th Cir. 2003). When the federal government hands down edicts and mandates that affect Americans across the nation, the controversy is not "localized," in any sense of the word. In these circumstances, this transfer factor cannot be invoked to overcome the plaintiff's choice of forum, which district courts must "highly esteem." *Menendez*, 311 F.2d at 434.

### C. The District Court Abused Its Discretion with regard to the Court Congestion and Private Interest Factors.

The District Court tried to reinforce his erroneous transfer analysis by claiming that the Western District is just too busy, at least in comparison to the federal court in Washington. A68–69. The District Court rested this conclusion on statistics showing that there are more "weighted filings per judge" in the Western District of Texas than in Washington. A20.

The cited statistic is irrelevant. The court congestion factor is exclusively concerned with docket efficiency. *See Volkswagen II*, 545 F.3d at 315; *TikTok*, 85 F.4th at 363. On that score, cases in the Western District of Texas get to trial in approximately 26 months on average, compared to approximately 53 months on average in the District of Columbia. A41. Whether that quicker disposition of cases in the Western District stems from the greater complexity of the Washington court's docket, or Washington judges just not working hard enough, is neither here nor there.

30

The evidence shows that cases, generally speaking, are resolved more quickly in the Western District of Texas than in Washington.

And that would be especially so in the particular circumstances of this case. That is because this Court substantially resolved nearly all the key issues in this case. There is no question that the Government wants to go back to Washington and relitigate every single issue from first principles, using a different circuit's precedent. The Government is pounding on the keyboard, pressing CTRL-ALT-DELETE, trying the reboot this case entirely. That transfer will aid the speed of resolution in this case is a frivolous assertion and certainly an abuse of discretion.

This Court already has shown skepticism of transfers based on court congestion, which it has described as "speculative." *Planned Parenthood*, 52 F.4th at 632 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)). Appropriately so. It is deeply ingrained human nature to think "I am working harder and more than that other guy." This Court should correct that reflexive impulse by granting mandamus.

The District Court also clearly abused its discretion by punting on the so-called "private interest factors" and claiming that everyone agreed they were "neutral." A67. The "private interest factors" concern the location of evidence and witnesses. With regard to APA challenges, that the challenged Government decision was made in Washington does not matter for purposes of the private interest factors,

as the evaluation of that decision is on the administrative record.  *See, e.g.*, *Permian Basin Petroleum Ass'n v. Dep't of the Interior*, No. 7:14-CV-00050, 2015 WL 11622492, at *2 (W.D. Tex. Feb. 26, 2015).  In this case, however, the Government continues to press a series of "threshold issues," and is doubting the standing of Market traders to sue and the severity of their injury.  A198–201; A172–176; A2 (contemplating further dispositive motions other than for summary judgment).  The lead and other trader plaintiffs have had to provide evidence to rebut these arguments.  A117; A179.  And if there is any evidentiary hearing in this case, it will be on these threshold issues, with testimony from these witnesses.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–63 (1992).  Thus, the private interest factors in this case uniformly weigh against transfer.  The Plaintiffs so argued; the District Court erroneously claimed no one was arguing about the private interest factors; and the District Court abused its discretion by not considering them.  *See Volkswagen I*, 371 F.3d at 203 (discretion abused when all factors not considered).

## IV.   Correcting the District Court's Error Through Mandamus is Appropriate Under the Circumstances.

Turning to the final mandamus requirement, granting a writ is appropriate here because this original proceeding implicates several issues that have importance "beyond the immediate case."  *Def. Distributed*, 30 F.4th at 426.  The transfer of this case was unprecedented and raises significant questions of general importance about this Court's continued authority to enforce legal principles set forth in its substantive

opinions in a matter and avoiding waste of a Circuit Court's investment of judicial resources in resolving a matter.

This case also raises important questions regarding this Circuit's availability to hear challenges to federal Government decisions with nationwide effects and its willingness to tolerate a growing and explicit federal Government desire to avoid review of its decisions in this Court. The federal Government's allergy to this Circuit is not going to go away after this case. This Court should use mandamus to make clear the standards for when this Circuit's courts must be open to review federal Government decisions with nationwide effects.

Dated: February 1, 2024

Respectfully submitted,

/s/ *Michael J. Edney*

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
T: (202) 778-2204
medney@huntonak.com

John J. Byron
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, Illinois 60606
T: (312) 577-1300
jbyron@steptoe.com

*Counsel for Petitioners Kevin Clarke, Trevor Boeckmann, Harry Crane, Corwin Smidt, Predict It, Inc., Aristotle International, Inc., Michael Beeler, Mark Borghi, Richard Hanania, James D. Miller, Josiah Neeley, Grant Schneider, and Wes Shepherd*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2024, I electronically filed this brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. I further certify that Counsel for Respondent, Martin B. White, has been served by email at the address listed below, and that a copy of this Petition and the supporting Appendix has been provided to the District Court.

Martin B. White
*Senior Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC 20581
Phone: (202) 993-1390
Fax: (202) 418-5127
mwhite@cftc.gov

/s/ Michael J. Edney
Michael J. Edney
*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Petition for Writ of Mandamus complies with the requirements set out in Federal Rules of Appellate Procedure 21 and 32. This petition complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word. This petition complies with the type-volume limitation of Rule 21(d)(1) because it contains 7,766 words, excluding the parts exempted by Rule 32(f).

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel for Petitioners*