**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEVIN CLARKE, TREVOR BOECKMANN, HARRY CRANE, CORWIN SMIDT, PREDICT IT, INC., ARISTOTLE INTERNATIONAL, INC., MICHAEL BEELER, MARK BORGHI, RICHARD HANANIA, JAMES MILLER, JOSIAH NEELEY, GRANT SCHNEIDER, and WES SHEPHERD, | Civil Docket No. 1:24-cv-00167-JMC The Honorable Judge Jia Cobb |
| *Plaintiffs*, | |
| v. | |
| COMMODITY FUTURES TRADING COMMISSION, | |
| *Defendant*. | |

**DEFENDANT COMMODITY FUTURES TRADING COMMISSION'S
ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, Commodity Futures Trading Commission ("CFTC" or "Commission"),

hereby responds to the allegations in the corresponding enumerated paragraphs of Plaintiffs'

Second Amended Complaint (Dkt. No. 55) as follows:

1.        Since 2014, the Victoria University of Wellington ("Victoria University") has operated an online market for political-event contracts (the "PredictIt Market" or the "Market"). This case challenges the Commodity Futures Trading Commission's decision and actions to arbitrarily, capriciously, and without legally required process revoke its permission and license for the Market to operate.  These decisions and actions attempt to deprive operators, academics, and traders of the benefits of the Market protected by the Commission's license for the Market to function and to force the premature and otherwise improper liquidation of dozens of contracts, damaging those who invest in the Market, scholars who study and teach from the data produced by the Market, and the entities servicing the Market.

**Response:**  The CFTC admits that the PredictIt Market has operated since 2014 but denies that

that it has been operated by Victoria University of Wellington, New Zealand ("Victoria University") throughout this period.  The CFTC denies the remainder of the allegations in paragraph 1.

2.      The PredictIt Market provides members of the public an opportunity to make investments based on their views about the likely outcome of future elections or other significant political events, like the passage of federal legislation or the nomination of Supreme Court Justices and cabinet officials.  Essentially a stock exchange for political events, the PredictIt Market hosts dozens of event markets about the outcomes of future political events.  Each event market includes one or more questions about a particular political event, such as the 2024 presidential election. Each question is binary—it must have a yes or no answer—and investors' positions on the outcome are known as "contracts."   PredictIt Market users purchase "yes" or "no" contracts in an event market—*e.g.*, yes, Joe Biden will win reelection, or no, Joe Biden will not win reelection—for prices ranging from 1 to 99 cents.   Contract prices fluctuate based on the investors' willingness to pay as measured by their view of the probability of the event taking place.   If the prediction of the outcome of a contract is correct, it is redeemed for one dollar, while incorrect outcome predictions receive no payout.

**Response:**  The CFTC admits the allegations in paragraph 2 describe the design of the PredictIt Market.  The CFTC lacks knowledge sufficient to form a belief as to whether the allegations in paragraph 2 accurately describe the operation of the PredictIt Market.

3.      Unlike a fully regulated stock, futures, or swaps market, however, investors are not permitted to purchase as many as they wish of any one contract.  Instead, an investor may not invest funds in excess of $850 in any one contract.  In addition, the total number of active traders in any one contract is limited to 5,000.  This is in line with the primary purpose of the Market—to be a small-scale market with an academic purpose to produce market-generated trading/pricing information regarding what informed investors believe the outcome is going to be, reinforced by a relatively small financial investment, without giving any one person enough of a financial stake through the Market to try to change the outcome of a political event.

**Response:**  The CFTC admits the allegations in the first and second sentences of paragraph 3. The CFTC admits that the allegations in the third sentence of paragraph 3 describes one of the purposes of the Market.  The CFTC lacks knowledge sufficient to form a belief as to the truth of the statement that this is the "primary" purpose of the Market.

4.      Victoria University launched the PredictIt Market for the academic value of the pricing/trading data generated by investor trading on political event contracts and to study, among other things, whether markets are more accurate than polling.  Indeed, the results data

generated by the PredictIt Market have been used by more than 140 academics around the world, both in their teaching and research. Through this study, the percentage-trading price of election- and political-event contracts offered on the Market has been found to be a remarkably accurate predictor of the outcomes, as informed onlookers tend to put aside biases and other views when they put up even a modest financial investment on the outcome. This accuracy is reflected by the heavy reliance of news outlets on political-event markets in reporting on projected political outcomes. *See, e.g.*, Bernard Stanford, *There's a Glorious Website Where You Can Bet on Politics, and the U.S. is About to Kill it*, Slate, https://slate.com/business/2022/08/predictit- cftc-shut-down-politics-forecasting-gambling.html (Aug 14, 2022); Victor Reklaitis, *Betting Markets Now See Democrats Keeping Their Grip on Senate in Midterm Elections*, MarketWatch, https://www.marketwatch.com/story/betting-markets-now-see-democrats-keeping-their-grip-on-senate-in-midterm-elections-11659542352 (Aug. 4, 2022); A.G. Gancarki, *Donald Trump Retakes 2024 Prediction Market Lead from Ron DeSantis*, Florida Politics, https://floridapolitics.com/archives/537385-donald-trump-retakes-2024-prediction-market-lead-from-ron-desantis (July 7, 2022); UBS Editorial Team, *ElectionWatch: Potential outcomes of the Midterms*, https://www.ubs.com/us/en/wealth-management/insights/market-news/article.1563885.html (Apr. 22, 2022).

**Response:**  The CFTC admits that the allegations in the first sentence of paragraph 4 describe at least one of the reasons Victoria University launched or participated in the launching of the PredictIt Market. The CFTC lacks knowledge sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 4.

5.    Plaintiffs Kevin Clarke, Michael Beeler, Trevor Boeckmann, Mark Borghi, Josiah Neeley, Grant Schneider and Wes Shepherd (together, the "Investor Plaintiffs") each have invested in hundreds of PredictIt Market event contracts over several years. Several of the Investor Plaintiffs hold event contracts that turn on the outcome of the 2024 presidential election, for which they believe—based on informed views on political events and study of the fluctuations in the Market as an indicator of change—that they have chosen the correct outcome and wish to purchase further and future similar contracts. For each contract, the Investor Plaintiffs expect to realize a profit on their investment either by selling at a favorable point during the life of the market or by holding the contract to the conclusion of the market when they expect to redeem it at one dollar. The Investor Plaintiffs made their investments in PredictIt Market contracts based on their understanding that the Market's offerings actively trading on the Market if it were permitted to continue to operate.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the allegations in paragraph 5.

6.    Plaintiffs Harry Crane, Richard Hanania, James D. Miller, and Corwin Smidt (together, the "Academic Plaintiffs") are among the university professors and academics who rely on the PredictIt Market as a source of data for research and academic scholarship and as a

pedagogical tool for teaching college and graduate students regarding political events and the efficiency of markets.  Professors Crane, Miller, and Smidt, and Mr. Hanania, have relied and intend to draw on data generated by the PredictIt Market in their research in the fields of statistics, political science, and economics.  They have also incorporated the PredictIt Market into their classes.  By studying the PredictIt Market (a real-world, topical example of prediction markets), student engagement increases and students gain a practical understanding of the Market and its operation.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 6.

7.       The PredictIt Market has operated for nine years pursuant to "no-action relief" ("No-Action Relief") granted under Commodity Futures Trading Commission regulations. 17 C.F.R. § 140.99.   The terms of the Commission's grant of No-Action Relief are memorialized in a written decision.  The No-Action Relief has permitted Victoria University to operate the PredictIt Market without formally registering it as a designated contract market or swap-execution facility.  The No-Action Relief sets forth the terms under which the PredictIt Market is permitted to operate.  A true and correct copy of the No-Action Relief, "CFTC Ltr. No. 14-130," is attached hereto as **Exhibit 1**.

**Response:**  The CFTC admits that in 2014 the staff of the CFTC Division of Market Oversight

issued a no-action letter identified as CFTC Ltr. No. 14-130 to Victoria University relating to the

operation of a prediction market and that a true and correct copy of this letter is attached to the

Second Amended Complaint as Exhibit 1.  The CFTC denies the remainder of the allegations in

paragraph 3 except as stated in the first sentence of this response.

8.       The No-Act Relief functions as a "license" for the PredictIt Market to operate, as that term is defined by the Administrative Procedure Act.

**Response:**  The CFTC denies the allegations in paragraph 8.

9.       On August 4, 2022, the CFTC purported to revoke the No-Action Relief and, thus, the PredictIt Market's License to operate.  The Commission communicated its decision through "CFTC Letter 22-08" (the "Revocation"), a true and correct copy of which is attached hereto as **Exhibit 2**

**Response:**  The CFTC admits that, on August 4, 2022, the staff of the CFTC Division of Market

Oversight issued CFTC Letter 22-08 which stated that the Division of Market Oversight was

revoking the no-action letter issued to Victoria University in 2014 and that a true and correct

copy of this letter is attached to the Second Amended Complaint as Exhibit 2. The CFTC denies

the remaining allegations in this paragraph except as stated in the first sentence of this response.

10. The only explanation in the Revocation was that Victoria "University has not operated its market in compliance with the terms of [CFTC] Letter 14-130," the 2014 No-Action Relief. *See* Ex. 2 at 2. The Revocation contained no explanation of *how* the PredictIt Market's operations violated the terms of the Commission's No-Action Relief or *why* revocation of the Commission's license for the Market to operate is the appropriate remedy for those violations. The Revocation provided neither notice of the facts that may warrant revocation, nor an opportunity to demonstrate or achieve compliance with the terms of the Commission's No-Action Relief. *Id*.

**Response:** The CFTC admits that Letter 22-08 contains the quoted text, but denies the

remaining allegations in paragraph 10 and respectfully refers the Court to CFTC Letter 23-03 at

page 3, first full paragraph, a copy of which is attached to the Second Amended Complaint (Dkt.

55) as Exhibit 3.

11. The Revocation, instead, made the following commands:

To the extent that the University is operating any contract market, as of the date of this letter, in a manner consistent with each of the terms and conditions provided in Letter 14-130, all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023.

**Response:** The CFTC admits that CFTC letter 22-08 contains the quoted text, but denies the

remainder of the allegations in paragraph 11.

12. The Revocation's command to prematurely liquidate contracts would cause a chaotic wind-down of the Market. Many existing PredictIt Market contracts turn on events that will occur well into the future, particularly the 2024 primary and general elections in the United States. Without any detailed explanation as to why or how, the Commission dictated that those contracts needed to be liquidated prematurely, by February 2023. In addition, the Revocation gave no indication of what contracts the Commission believed are "consistent with each of the terms and conditions" of the No-Action Relief and could continue to February 2023 and which are not.

**Response:** The CFTC admits that some contracts that were listed on the PredictIt Market at the

time Letter 22-08 was issued turned on events that would occur after February 2023 including

the 2024 primary and general elections in the United States.  Otherwise, the CFTC denies the

remaining allegations in paragraph 12 except as stated in the first sentence of this response.

13.     The Revocation of the Commission's No-Action Relief effectively commanded the PredictIt Market to close.  In doing so, the Commission attempted to deprive entities operating the Market, traders investing in Market contracts, and academics studying Market data of the benefits of the Market's continued operation.  The Commission took this step with no reasoned explanation for tis decision, no explication of facts that would support its decision, no transition plan for addressing scores of existing contracts held by more than ten thousand traders, no consideration of any alternatives to the chaotic, disruptive, and economically damaging wind-down of the Market, its decision forces, and no considered analysis of why operators, academics, and traders should be deprived of the benefits of the Market's continuation that was protected by the Commission's license. The direct consequence of the Revocation—the premature liquidation of contracts that would otherwise turn on events occurring after February 2023—is unnecessarily disruptive.

**Response:**  The CFTC denies the allegations in paragraph 13.

14.     The Revocation decision represented only the first chapter of the Commission's ongoing mission and actions to close the PredictIt Market as soon as possible. On March 2, 2023, after oral argument before the United States Court of Appeals for the Fifth Circuit in his matter and after that Court had preliminarily enjoined the CFTC form taking actions to close the Market or to deter trading in its contracts, the Commission issued "CFTC Letter 23-03" ("the March Action"), a true and correct copy of which is attached hereto as **Exhibit 3**.

**Response:**  The CFTC admits that staff of the CFTC Division of Market Oversight issued CFTC

Letter 23-03 on March 2, 2023 and that a true and correct copy of this letter is attached to the

Second Amended Complaint as Exhibit 3.  The CFTC admits that oral argument before the

United States Court of Appeals for the Fifth Circuit in this matter occurred before March 2,

2023.  Otherwise, the CFTC denies the remaining allegations in paragraph 14 except as stated in

the first two sentences of this response.

15.     The March Action purports to "withdraw[] and supersede[]" the Revocation decision. Ex. 3 at 1. But it reaches the same conclusion—that the Market's license to operate is void and should be cancelled. Ex. 3 at 3.

**Response:**  The CFTC admits that CFTC Letter 23-03 stated that the staff of the CFTC Division

of Market Oversight withdrew CFTC Letter 22-08 and that CFTC Letter 23-03 superseded

CFTC Letter 22-08.  Otherwise, the CFTC denies the remaining allegations in paragraph 15 except as stated in the first sentence of this response.

      16.     The Commission issued the March Action in a transparent attempt to shut down judicial review of its efforts to close the PredictIt Market in this Court and in the Fifth Circuit. The Fifth Circuit firmly rejected that attempt.

**<u>Response</u>:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was not issued pursuant to a vote of the CFTC commission members appointed by the President and approved by the Senate with authority to make decisions for the CFTC as an agency.  Otherwise, the CFTC denies the remaining allegations in paragraph 16.

      17.     The March Action now claims for the first time that the PredictIt Market violated the terms of the No-Action Relief in three ways: (1) that Aristotle, rather than Victoria University, is operating the Market, (2) that Victoria University has received—and permitted Aristotle to receive—separate compensation for the operation of the Market, and (3) that Victoria University has offered contracts falling outside of the scope of the categories of submarkets approved in the No-Action Relief. Ex. 3 at 3-6. According to the CFTC, these alleged violations are somehow grounds for closing the PredictIt Market.

**<u>Response</u>:**  The CFTC admits that CFTC Letter 23-03 states that Victoria University violated the terms of the 2014 no-action letter issued to Victoria University in the ways set forth in paragraph 17.  The CFTC admits that CFTC Letter 23-03 stated that these violations supported a determination that the 2014 letter was void but avers that Letter 23-03 specified that the determination in the Letter 23-03 was "preliminary" and invited Victoria University to respond to the factual assertions and preliminary determination in Letter 23-03.  The CFTC denies that matters discussed in CFTC Letter 23-03 were claimed for the first time in that letter and respectfully refers the Court to the copy of CFTC Letter 23-03 at page 3, first full paragraph, attached to the Second Amended Complaint (Dkt. No. 55) as Exhibit 3.  Otherwise, the CFTC

denies the remaining allegations in paragraph 17 except as stated in the first and second

sentences of this response.

18.     Each of these alleged violations of the No-Action Relief is contrary to the
substantial evidence in the record before the agency as a matter of fact and also arbitrarily and
capriciously misinterprets the text, context, and history of the No-Action Relief decision and
extensive subsequent communications with CFTC staff.  The alleged violations cannot support
the Commission's efforts to close the Market and render those efforts arbitrary, capricious, and
an abuse of discretion.  Indeed, the Fifth Circuit held the CFTC's allegations were an
impermissible attempt at "*post hoc* rationalization."

**Response:**  The CFTC denies the allegations in paragraph 18.

19.     In any event, none of these alleged violations justifies closure of the Market, and
the March Action lacks a non-arbitrary explanation for attempting to close it.

**Response:**  The CFTC denies the allegations in paragraph 19.

20.     The March Action also suggests that the PredictIt Market must shut down because
it demands too much of the Commission's attention. Ex. 3 at 6. But the March Action does not
cite any specific numbers to support this claim. It says nothing about the magnitude of resources
required and does not explain why they would not be reasonably expended in light of the
considerable and longstanding reliance interests of traders, academics, and service companies.

**Response:**  The CFTC admits that CFTC Letter 23-03 states that because of violations of the

terms of the 2014 no-action letter, Division of Market Oversight and other CFTC staff have been

required to devote considerable time over the last nearly nine years to the Market and that this

has far exceeded the level of CFTC staff involvement contemplated by the 2014 letter.  The

CFTC denies the remaining allegations in paragraph 20.

21.     More concerningly, the March Action carries forward many of the legal
deficiencies of the earlier Revocation decision. Like the Revocation decision, the March Action
provides no serious consideration of any alternatives to the chaotic, disruptive, and economically
damaging wind-down of the Market it would force. Like the Revocation decision, the March
Action does not give the Plaintiffs an opportunity to rebut the Commission's allegations (it
allows Victoria University to respond but fails to give the University a chance to demonstrate or
achieve compliance with the asserted requirements of the Commission's license, as required
when Withdrawing a license). And like the Revocation decision, the March Action does not
account for the longstanding reliance interests of the traders, academics, and service companies
that organized their affairs around the Commission's license for the Market to operate.

**Response:**  The CFTC admits that CFTC Letter 23-03 did not explicitly provide Plaintiffs with

an opportunity to respond to the letter.  Otherwise, the CFTC denies the remaining allegations in

paragraph 21 except as stated in the previous sentence.

22.     In particular, the consequences of the Commission's sustained efforts to close the
PredictIt Market will cause harm to the Investor Plaintiffs.  Solely due to the Commission's
campaign to close the Market, Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, and Mr.
Schneider will be deprived of the opportunity to see their positions through to the occurrence or
non-occurrence of the political events on which their contracts are based.  They do not
understand why the Commission, even if it for some reason wants the Market to shut down,
cannot let their existing contracts continue to trade until the election or event window would
naturally close.

**Response:**  The allegations in paragraph 22 regarding "the Commission's sustained efforts" and

"the Commission's campaign" contain the Plaintiffs' characterization of the actions of the staff

of the CFTC Division of Market Oversight, which the CFTC denies.  Otherwise, the CFTC lacks

knowledge sufficient to form a belief as to the truth of the remainder of the allegations in

paragraph 22.

23.     They will also be deprived of the benefits of the Market's continued operations
and issuance of new contracts in which there would be an opportunity for the Plaintiffs to trade.
Private parties investing in Market contracts are among the beneficiaries of the Commission's
license for the Market to operate. Neither the Revocation nor the March Action provide any
acceptable explanation for the Commission's effort to close the Market with all due haste.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in the first sentence of paragraph 23.  The CFTC denies the remaining allegations in

paragraph 23.

24.     The Commission's efforts will cause harm to the Academic Plaintiffs. Gone will
be the days that they use the data generated by the Market for research and teaching purposes.
This will impact the quality of their legal scholarship and the student experience.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 24.

25.     The Commission's Revocation of the No-Action Relief for the PredictIt Market, without explanation or other indication of reasoned decisionmaking, without "written notice of the facts or conduct which may warrant" the Revocation, and without providing anyone an "opportunity to demonstrate or achieve compliance" with the terms of No-Action Relief or other requirements, violates the Administrative Procedure Act. 5 U.S.C. §§ 558, 706.

**Response:**  The CFTC denies the allegations in paragraph 25.

26.     The Commission's attempted do-over suffers from these same deficiencies. *Id.* Among other things, both the Revocation and the March Action are "arbitrary, capricious, an abuse of discretion, [and/or] otherwise not in accordance with law" and occurred "without observance of procedure required by law." 5 U.S.C. § 706. Through both actions, the Commission failed to seriously consider less disruptive alternatives and ignored the serious reliance interests of the Plaintiffs. Moreover, the Commission's actions violated the Administrative Procedure Act by failing to provide the procedural protections that accompany a license from a federal agency, as they offered the Plaintiffs no hearing much less an opportunity "to demonstrate or achieve compliance." 5 U.S.C. § 558(c); *see also id.* § 706(2)(D).

**Response:**  The CFTC denies the allegations in paragraph 26.

27.     The Court should "hold unlawful and set aside" the Revocation and March Action, including any command that contracts be prematurely liquidated. 5 U.S.C. § 706. The Court also should carry forward the preliminary injunction and then enter a permanent injunction against the proscriptions in the Revocation and March Action that would require liquidation of contracts, including contracts that concern the 2024 elections, well before they would ordinarily mature and that would prohibit the Market from offering additional contracts.

**Response:**  The CFTC denies the allegations in paragraph 27.

## JURISDICTION AND VENUE

28.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 as Plaintiffs' causes of action arise under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, a law of the United States.

**Response:**  Paragraph 28 contains conclusions of law to which no response is required.  To the

extent a response is required, the CFTC denies the allegations in paragraph 28.

29.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(B)-(C). Plaintiffs Kevin Clarke, Michael Beeler, Mark Borghi, Josiah Neeley, and Wes Shepherd reside in Austin, Texas and no real property is involved in this action. In addition, a substantial part of the events or omissions giving rise to the claims also occurred in this jurisdiction. Mr. Clarke has made numerous investments in event contracts on the PredictIt Market from Austin, Texas, where he has lived since 2010. Mr. Beeler, Mr. Borghi, Mr. Neeley, and Mr. Shepherd have likewise

invested and wish to continue to invest in event contracts on the PredictIt Market from Austin. Many of these contracts will not close before the dates specified by the CFTC in the Revocation or the implementation of the March Action. The Revocation decision and the March Action will cause Mr. Clarke, Mr. Beeler, Mr. Borghi, Mr. Neeley, and Mr. Shepherd harm and damage in the Western District of Texas.

**Response:**  The CFTC admits that Plaintiffs' Second Amended Complaint was filed in the

Western District of Texas and could have been brought in in that district, among others,

including the District of Columbia under 28 U.S.C. § 1391.  The CFTC avers that venue has

been determined to be proper in the District Court for the District of Columbia under 7 U.S.C. §

1404(a) by the Western District of Texas.  The CFTC lacks knowledge sufficient to form a belief

as to the truth of the allegations in the second sentence regarding the Plaintiffs' residence, but

admit that no real property is involved in this action.  The CFTC denies the allegations in the

third sentence of paragraph 29.  The allegations in the sixth and seventh sentences regarding

"dates specified by the CFTC in the Revocation of the March Action" and the "Revocation

decision", respectively, consist of Plaintiffs' characterization of the actions of the staff of the

CFTC Division of Market Oversight, which the CFTC denies.   The CFTC lacks knowledge

sufficient to form a belief as to the truth of the remaining allegations in the fourth, fifth, sixth,

and seventh sentences of paragraph 29.

30.     An actual controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant declaratory and injunctive relief to set aside the CFTC's withdrawal of the No-Action Relief and to issue all necessary and appropriate process to preserve each Plaintiff's status or rights pending the conclusion of the proceedings, as requested herein. 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 705-706.

**Response:**  Paragraph 30 contains conclusions of law to which no response is required.  To the

extent a response is required, the CFTC denies the allegations in paragraph 30.

## PARTIES AND RELEVANT ENTITIES

31.     Defendant Commodity Futures Trading Commission (previously defined as "CFTC" or the "Commission") is an independent federal agency established under Section 2 of the Commodity Exchange Act, 7 U.S.C. § 2, that regulates the derivatives markets, including futures contracts, options, and swaps, in the United States.  The CFTC is headquartered in the District of Columbia.

**Response:**  The CFTC admits the allegations in paragraph 31.

32.     Plaintiff Kevin Clarke is an individual who lives and works in Austin, Texas, which is in the Western District of Texas. Mr. Clarke has purchased positions in almost every contract market offered by the PredictIt Market, including positions of which the Commission appears poised to terminate trading prior to the occurrence of the subject event. Mr. Clarke also wishes to invest in additional contracts that ordinarily would be issued to address new political events and elections, bur for the Commission's efforts to close the Market. Mr. Clarke's use of the PreditctIt Market, including purchases and trades on the Market, has almost universally occurred from his home or business in Austin, Texas, in the Western District of Texas.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.

33.     Plaintiff Trevor Boeckmann is an individual domiciled in New York City, New York. Mr. Boeckmann purchased event contracts on the PredictIt Market that are based on political events that will not occur until after the CFTC has ordered the PredictIt Market to cease operations.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.

34.     Plaintiff Harry Crane is a Professor of Statistics at Rutgers University in New Jersey and a fellow at the London Mathematical Institute.  Professor Crane utilizes the PredictIt Market and the data it generates in his teaching and research.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

35.     Plaintiff Corwin Smidt is an Associate Professor in the Department of Political Science at Michigan State University. Professor Smidt utilizes PredictIt Market data in his teaching and research.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.     Victoria University of Wellington (previously defined as "Victoria University") is not a party to this litigation.  Victoria University is a publicly owned university based in and operating under the laws of New Zealand.  Victoria University has operated an online market for political-event contracts (previously defined as the "PredictIt Market" or the "Market") since 2014.  Victoria University had no intention of ending the PredictIt Market prior the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusions.  Victoria University intends to comply with the terms of the CFTC's Revocation and therefore close the 2024 contracts in advance of their maturity unless the Revocation and March Action are abrogated, amended, or suspended.

**Response:**  The CFTC admits the allegations in the first sentence of paragraph 36.  The CFTC

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the

second sentence of paragraph 36.  The CFTC denies the allegations in the third sentence of

paragraph 36.  The allegations in the fourth and fifth sentences of paragraph 36 regarding "the

CFTC's Withdrawal of the No-Action Relief , and, . . . the CFTC's action" and "the CFTC's

Revocation", respectively, consist of Plaintiffs' characterization of the actions of the staff of the

CFTC Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge or

information sufficient to form a belief as to the truth of the remainder of the allegations in

paragraph 36.

37.     Plaintiff Predict It, Inc. (previously defined as "PredictIt") is a Delaware corporation with its principal place of business in the District of Columbia and a subsidiary of Aristotle International, Inc. PredictIt is an internet distributor of user-generated predictive content.  PredictIt, together with Plaintiff Aristotle, services the PredictIt Market.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 37.

38.     Plaintiff Aristotle International, Inc. (previously defined as "Aristotle"), is a Delaware corporation with its principal place of business in the District of Columbia. Aristotle provides know-your-client and identity-verification services to a wide variety of customers and provides information-technology services to political campaigns and organizations, including software, political data, consulting, and outsourcing services. Victoria University has entered into a market servicing agreement with Aristotle, under which Aristotle serves as the clearing house for trades on the PredictIt Market and provides other services for the PredictIt Market through its Predict It, Inc. subsidiary. Pursuant to that agreement and the terms and conditions of

the PredictIt Market, investors that open accounts on the PredictIt Market enter into a contract with Aristotle.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 38.

39.     Plaintiff Michael Beeler is an individual who lives and works in Austin, Texas. Mr. Beeler holds several positions on the PredictIt Market, including one contract scheduled to expire in 2024.  He would make additional 2024 and other investments if the Market were allowed to continue operating.  Mr. Beeler's use of the PredictIt Market, including purchases and trades on the Market, has almost universally occurred from his home or business in Austin, Texas.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 39.

40.     Plaintiff Mark Borghi is an individual who lives and works in Austin, Texas. Mr. Borghi co-hosts a news podcast that regularly uses data from the PredictIt Market to analyze political developments. The podcast advertises the PredictIt Market under one of PredictIt's affiliate programs. Mr. Borghi is also a long-time trader on the PredictIt Market and wishes to continue trading in the future.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 40.

41.     Plaintiff Richard Hanania is the President of the Center for the Study of Partisanship and Ideology. Mr. Hanania is a long-time PredictIt trader and proponent of prediction markets.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 41.

42.     Plaintiff James D. Miller is a Professor of Economics at Smith College in Northampton, Massachusetts. Professor Miller has been a PredictIt trader since November 2015 and currently has open investments in the Market from which he hopes to gain a profit, including investments in contracts that do not expire until 2024.  Professor Miller also utilizes the PredictIt Market and the data it generates in his teaching.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 42.

43.     Plaintiff Josiah Neeley is an individual who lives and works in Austin, Texas. Mr. Neeley has actively traded on the PredictIt Market since 2015.  He currently holds several open contracts, including some that the Commission appears poised to terminate trading of prior to the subject event.  Mr Neeley's use of the PredictIt Market, including purchases and trades on the Market, has almost universally occurred from his home or business in Austin, Texas.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 43.

44.     Plaintiff Grant Schneider is Vice President of Machine Learning and Head of the Columbus, Ohio office of a leading artificial intelligence lending marketplace.  Dr. Schneider has been a PredictIt trader since 2016 and currently holds open positions, including some that do not close until 2024.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 44.

45.     Plaintiff Wes Shepherd is an individual who lives and works in Austin, Texas. Mr. Shepherd co-hosts a news podcast that regularly uses data from the PredictIt Market to analyze political developments.  The podcast advertises the PredictIt Market under one of PredictIt's affiliate programs.  Mr. Shepherd is also a long-time trader on the PredictIt Market and wishes to continue trading in the future.

**Response:**  The CFTC lacks knowledge or information sufficient to form a belief as to the truth

of the allegations of paragraph 45.

## BACKGROUND

### I.  The PredictIt Market's Operations and Offerings

46.     The PredictIt Market poses numerous yes-or-no questions regarding the outcome of political events at any given time.  Discrete questions are grouped into "event markets" involving the same election or other political event.  Investors can buy "contracts" based on what they believe to be the likely outcome of the political event.  For example, the event market involving the 2024 Republican presidential nomination includes yes-or-no contracts on 17 different potential candidates.  Other event markets include only one contract.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to whether the allegations

in paragraph 46 accurately describe the operations and offerings of the Market since 2014.

47.     The PredictIt Market limits each contract to 5,000 active participants with each participant's investment capped at $850 based on the price of the contracts when the investor purchases them.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to whether the allegations in paragraph 47 accurately describe the operation of the Market since 2014.

48.     Until settlement, each contract is valued at less than one dollar.  And just like a stock exchange or futures market, the aggregated price of a contract continuously changes as users respond to shifting events that make the outcome more or less likely.  One day a contract predicting that Republicans will win the House could be valued at $0.75.  The next day, the same contract's value could drop to $0.70.

**Response:**  The CFTC admits the allegations in paragraph 48 describe the design of the PredictIt Market.  The CFTC lacks knowledge sufficient to form a belief as to whether the allegations in paragraph 48 accurately describe the operation of the PredictIt Market.

49.     If the event ultimately occurs—*e.g.*, Republicans win control of the House—yes contracts will close at $1.  If it does not occur—*e.g.*, Republicans do not win the House—yes contracts will close at $0.  At any time before the event closes, investors are free to liquidate or add to positions by buying and selling contracts.

**Response:**  The CFTC admits the allegations in paragraph 49 describe the design of the PredictIt Market.  The CFTC lacks knowledge sufficient to form a belief as to whether the allegations in paragraph 49 accurately describe the operation of the PredictIt Market.

## II.     Value of the PredictIt Market to the Academic Community

50.     Victoria University launched the PredictIt Market because of the academic value of the results data generated by investments such as those of Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Borghi, Mr. Neeley, Mr. Schneider, Mr. Shephard, and thousands of other traders.  This academic purpose is specifically articulated in Victoria University's request for no-action relief and the CFTC's No-Action Relief decision.  Consistent with that requirement, the data generated by the PredictIt Market is made available to the academic community at no cost.  These data have been the subject of study by over 140 academics at universities around the world.  Professors Crane, Miller, and Smidt, and Mr. Hanania, are among the academics that have used and intend to use PredictIt Market data in their teaching and research in the fields of statistics and political science.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in the first, third, fourth, and fifth sentences of paragraph 50.  The CFTC denies the

allegations in the second sentence of paragraph 50.

51.     Professor Smidt—an associate professor of political science at Michigan State University—has used PredictIt Market data to study the reliability of public opinion as an indicator of future political outcomes.  PredictIt Market data offers Professor Smidt and other researchers a unique long-term look at the public's view of political outcomes because the PredictIt Market offers event contracts much further in advance of the deciding event to which they relate than comparable markets like the Iowa Electronic Markets.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 51.

52.     Professor Crane—a statistics professor at Rutgers University—has used and intended to continue using the PredictIt Market in his research and teaching. In his class, Statistics, Science, and Society, he teaches his students to think quantitatively about real-world matters and reporting.  As part of the class, students study the PredictIt Market and other methods of forecasting political outcomes, like polling and pundits, and analyze their reliability and the ways bias can enter decision and reporting processes.  Similarly, Professor Crane's research using PredictIt Market data has concerned the reliability of various methods of forecasting future political outcomes.  His analysis of PredictIt Market data generated between 2018 and 2020 suggests that the Market's percentage-trading price is a more accurate predicter overall than predictions made on the opinion-poll analysis website FiveThirtyEight.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 52.

53.     Professor Miller—an economics professor at Smith College—has used and hopes to continue using the PredictIt Market in his teaching. In his discussions with students, Professor Miller stresses the value of the predictions derived from the PredictIt Market because participants must put their own money at risk.  Professor Miller believes that PredictIt represents an excellent teaching tool for how stock markets function because many undergraduates have a better understanding of U.S. elections than of traditional financial markets.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 53.

54.     Richard Hanania—the President of the Center for the Study of Partisanship and Ideology—has drawn on the PredictIt Market in several of his academic writings.  He has taken positions on the PredictIt Market and publicly tracks his portfolio, while encouraging other

public intellectuals to do the same.  Mr. Hanania believes that the accountability mechanism provided by attaching money to political beliefs and predictions improves public discourse.  He stresses the potential for PredictIt to overcome many of the shortcomings in American intellectual life, including decreasing civility and inability to conduct conversations across different political tribes.

**Response**:  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 54.

54.     If the PredictIt Market were shut down, its contracts prematurely liquidated, and its ability to offer new contracts to traders terminated, the Commission's efforts to close the Market would deprive professors like Professors Crane, Miller, and Smidt of both a valuable pedagogical tool and a rich source of data for their studies in the fields of statistics, economics, and political science.  For example, if contracts predicting the outcome of the 2024 presidential election were liquidated prior to their close-out event (*i.e.*, the winner of the 2024 presidential election is determined), the trading data from those contracts would be worthless from an academic perspective foreclosing future use of the Market as a research resource.

**Response**:  The allegations in paragraph 55 regarding "the Commission's efforts to close the

Market" contain Plaintiffs' characterization of the actions of the staff of the CFTC Division of

Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to form a

belief as to the truth of the remainder of the allegations in paragraph 55.

### III.     Investor Plaintiffs' Trades on the PredictIt Market

56.     The Investor Plaintiffs have each made significant investments in hundreds of event contracts offered on the PredictIt Market over the past several years.

**Response**:  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 56.

1.     They each believe, based on their research and study of the Market, that they have purchased
PredictIt Market contracts in a manner that will produce a profit, given their views that their side of the contracts are likely to occur.

**Response**:  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 57 and respectfully refers the Court to the copy of the No-Action Relief,

"CFTC Ltr. No. 14-130," attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as

Exhibit 1, which states that the "proposed market for event contracts has been designed to serve

academic purposes . . . [and] promote the educational public interest purpose of the project while

maintaining the small-scale, not-for profit nature of the proposed market."  Exhibit 1 at pg. 5.

2.      Mr. Clarke is an assistant policy debate coach at the University of Texas at Austin
and owns a business specializing in the acquisition and management of mineral assets such as
gemstones and crystals.  He has been trading on the PredictIt Market for roughly two years from
his home and business in Austin, Texas, and currently has investments in every contract market
offered on the PredictIt Market and open positions in excess of $11,000.  Among his investments
are event contracts related to the outcome of the 2024 election cycle that the Commission
appears poised to terminate trading of prior to those elections.  He desires to invest in new
contracts offered on the Market, provided it is not unlawfully interfered with.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 58 and respectfully refers the Court to the copy of the No-Action Relief,

"CFTC Ltr. No. 14-130," attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as

Exhibit 1, which states that the "proposed market for event contracts has been designed to serve

academic purposes . . . [and] promote the educational public interest purpose of the project while

maintaining the small-scale, not-for profit nature of the proposed market."  Exhibit 1 at pg. 5.

3.      Mr. Boeckmann is a public defender at the Neighborhood Defender Service of
Harlem in New York City.  He has traded on the PredictIt Market since 2016 from his home in
Harlem, and he currently has thousands of dollars invested in a wide range of contract markets.
The event contracts he has invested in include several related to the outcome of the 2024
presidential election that the Commission appears poised to terminate trading of prior to those
elections.  These contracts include certain predictions on which Republican presidential
contenders will not win the Republican nomination and which party's candidate will ultimately
win the 2024 presidential election.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 59.

4.      Mr. Beeler is a statistician and holds a Ph.D. in Operations Research.  He resides
in Austin, Texas.  Mr. Beeler has been trading on the PredictIt Market for over four years.  He
held numerous positions in 2024 election contracts but has sold most of those due to the CFTC's
Revocation.  He held several positions that expired in 2022 and still holds one contract scheduled

to expire in 2024.  Mr. Beeler would make additional 2024 and other investments if the Market were allowed to continue operating.

**Response:**  The allegations in the third sentence of paragraph 60 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which, the CFTC denies.  The CFTC lacks knowledge sufficient

to form a belief as to the truth of the remainder of the allegations in paragraph 60.

5.     Mr. Borghi is a longtime PredictIt trader.  He co-hosts a daily news podcast focused on politics—Hard Factor—that is produced in Austin.  Mr. Borghi uses data derived from the PredictIt Market on Hard Factor on a weekly basis.  If the CFTC's Revocation and March Action are allowed to stand, Mr. Borghi will be deprived of an important data source for his podcast.  He will also lose the change to profit on PredictIt Market contracts.

**Response:**  The allegations in the fourth sentence of paragraph 61 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 61 and respectfully

refers the Court to the copy of the No-Action Relief, "CFTC Ltr. No. 14-130," attached to

Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 1, which states that the

"proposed market for event contracts has been designed to serve academic purposes . . . [and]

promote the educational public interest purpose of the project while maintaining the small-scale,

not-for profit nature of the proposed market."  Exhibit 1 at pg. 5.

6.     Mr. Neeley is the Texas Director of a national public policy organization and a non-practicing attorney.  He has been a PredictIt trader since 2015 and currently holds several open contracts, including contracts that involve the 2024 presidential races.  Mr. Neeley stopped purchasing new positions on the PredictIt Market after the CFTC's Revocation.

**Response:**  The allegations in the third sentence of paragraph 62 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 62.

7.    Mr. Schneider is the Vice President of Machine Learning and Head of the
Columbus, Ohio office of a leading artificial intelligence lending marketplace.  He holds a Ph.D.
in statistics and is the co-author of an introductory statistics textbook.  Mr. Schneider has been a
PredictIt trader since 2016 and currently holds open positions, including some that do not close
until the 2024 elections.  As a hiring manager he also views consistent success on the PredictIt
Market (or other forecasting platforms) as a valuable signal of aptitude for machine learning.  Mr.
Schneider also finds the Market useful for understanding future political outcomes that might
affect his company's business.  The CFTC's Revocation has decreased his overall trading activity.

**Response:**  The allegations in the sixth sentence of paragraph 63 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 63 and respectfully

refers the Court to the copy of the No-Action Relief, "CFTC Ltr. No. 14-130," attached to

Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 1, which states that the

"proposed market for event contracts has been designed to serve academic purposes . . . [and]

promote the educational public interest purpose of the project while maintaining the small-scale,

not-for profit nature of the proposed market."  Exhibit 1 at pg. 5.

8.    Mr. Shepherd is a longtime PredictIt trader.  He co-hosts a daily news podcast
focused on politics—Hard Factor—that is produced in Austin, Texas.  Mr. Shepherd uses data
derived from the PredictIt Market on Hard Factor on a weekly basis.  He considers PredictIt data
more reliable than polls and pundits.  If the CFTC's Revocation and March Action are allowed to
stand, Mr. Shepherd will be deprived of an important data source for his podcast.  He will also
lose the chance to profit on his current PredictIt Market contracts.

**Response:**  The allegations in the fifth sentence of paragraph 64 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 64 and respectfully

refers the Court to the copy of the No-Action Relief, "CFTC Ltr. No. 14-130," attached to

Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 1, which states that the

"proposed market for event contracts has been designed to serve academic purposes . . . [and]

promote the educational public interest purpose of the project while maintaining the small-scale,

not-for profit nature of the proposed market."  Exhibit 1 at pg. 5.

> 9.      The Investor Plaintiffs were each aware that the PredictIt Market was operated
> with the permission of the CFTC and believed that, at a minimum, the event contracts they
> purchased could be traded until their deciding event occurred.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 65 concerning what each of the Investor Plaintiffs were aware of and

when.  The remaining allegations "that the PredictIt Market was operated with the permission of

the CFTC", contain Plaintiffs' characterization of the actions of the staff of the CFTC Division

of Market Oversight, not the CFTC, which the CFTC denies along with the remaining allegations

in paragraph 65 and respectfully refers the Court to the copy of the No-Action Relief, "CFTC Ltr.

No. 14-130," attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 1,

which states "[a]s with all no-action letters, DMO retains the authority to condition further,

modify, suspend, terminate or otherwise restrict the terms of the no-action relief provided herein,

in its discretion."  Exhibit 1 at pg. 6.

> 10.     The CFTC's Revocation—ordering that event contracts be closed or liquidated
> prematurely—and the March Action have distorted the value of Investor Plaintiffs' event
> contracts.  In the wake of these actions, the Investor Plaintiffs have observed and continue to
> observed changes in the pricing of their positions as traders attempt to salvage their investments
> in contracts that would be prematurely liquidated, either by withdrawing their assets from the
> Market entirely or attempting to predict what the public's belief about the outcome will actually
> be.  Amid this disruption, the Investor Plaintiffs do not understand why the CFTC will not allow
> the contracts they have invested in to run their course.

**Response:**  The allegations in the first sentence of paragraph 66 regarding "the CFTC's

Revocation" consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 66.

      11.     Among the many factors contributing to this disruption, the Revocation and
March Action provide no clarity on which contract markets will be permitted to operate going
forward, and which must liquidate immediately due to alleged noncompliance with the terms and
conditions of the No-Action Relief decision.  This uncertainty has led many investors to pull
their money out of the Market immediately even if they otherwise could have profited from their
investments before Commission shuts down the Market, effecting remaining traders' ability to
sell appreciated contracts that they no longer believe predict a correct outcome.

**Response:**  The CFTC denies the allegation in the first sentence of paragraph 67.  The

allegations in the second sentence of paragraph 67 regarding "before [the] {sic} Commission

shuts down the Market" consist of the Plaintiffs' characterization of the actions of the staff of the

CFTC Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge

sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 67.

      12.     For contracts that will not close before the Commission's desired shut down
dates—like those related to the outcome of the 2024 election cycle—investors will be denied the
opportunity to realize the return they expect if their contracts were allowed to run their course.
Indeed, many investors, like the Investor Plaintiffs, strategically invest in PredictIt contract
markets early when outcomes are less certain due to their remoteness in time.  For example,
some traders invest in low-value event contracts—*i.e.*, outcomes believed to be unlikely at the
time of investment—based on their belief that their predicted outcome will become more likely
as the deciding event grows closer, presenting an opportunity to reap a significant return on their
investments.  Other investors invest in high-value event contracts early on based on their belief
that the odds of the outcome occurring will continue to increase as the deciding event grows
closer, presenting an opportunity to reap a smaller but more reliable return.  If enforced, the
CFTC's efforts to close the Market also will deprive them of the opportunity to invest in new
contracts.

**Response:**  The allegations in the first and fifth sentences of paragraph 68 regarding "the

Commission's desired shut down dates" and "the CFTC's efforts to close the Market",

respectively, consist of the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC lacks knowledge sufficient to

form a belief as to the truth of the remainder of the allegations in paragraph 68 and refers the

Court to the copy of the No-Action Relief, "CFTC Ltr. No. 14-130," attached to Plaintiffs'

Second Amended Complaint (Dkt. No. 55) as Exhibit 1, which states that the "proposed market

for event contracts has been designed to serve academic purposes . . . [and] promote the

educational public interest purpose of the project while maintaining the small-scale, not-for-

profit nature of the proposed market."  Exhibit 1 at pg. 5.

## IV.  The CFTC Grants No-Action Relief to Victoria University, Licensing the Establishment of the PredictIt Market

13.     In 2014, Victoria University sought no-action relief pursuant to CFTC regulations.  *See* 17 C.F.R. § 140.99.  The relief sought would allow Victoria University to operate a not-for-profit market for the trading of event contracts, to offer such event contracts to U.S. persons, and to collect the results data for academic and educational use.  A true and correct copy of the June 26, 2014 Application for no-action relief is attached hereto as **Exhibit 4**.

**Response**:  The CFTC admits that Victoria University requested a no-action letter from the staff

of the CFTC Division of Market Oversight in 2014 relating to the operation of a not-for-profit

event contract market but denies that the allegations in paragraph 69 contain a complete and

accurate description of Victoria University's request in all respects. The CFTC admits that a true

and correct copy of Victoria University's request for the issuance of said letter is attached to the

Second Amended Complaint as Exhibit 4.

14.     Following the procedures specified in its regulations, the Commission granted the requested No-Action Relief, by issuing CFTC Letter No. 14-130.  The written grant of relief found that "the operation of [Victoria University's] proposed market without registration as a DCM, FBOT, or swap execution facility, or without registration of its operators, would [not] be contrary to the public interest."  Ex. 1 at 5.

**Response**:  The CFTC denies that the Commission granted the requested No-Action Relief in

CFTC Letter No. 14-130 and respectfully refers the Court to the copy of the No-Action Relief,

"CFTC Ltr. No. 14-130," attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as

Exhibit 1, which states "[t]his letter, and the no-action position taken herein, represents the views

of DMO only, and does not necessarily represent the positions or views of the Commission or of

any other division or office of the Commission."  Exhibit 1 at pgs. 5-6.  The CFTC admits the

selected text from the No-Action Relief in CFTC Letter No. 14-130 in the second sentence of

paragraph 70 is partially correct but denies that it is complete and accurate in all respects.

15.     The No-Action Relief serves as a Commission-granted license to operate the Market.

**Response:**  The CFTC denies the Plaintiffs' characterization of the "No-Action Relief" as a

"Commission-granted license".

16.     In its No-Action Relief decision, the Commission specified certain rules that
would govern the PredictIt Market.  Importantly, the No-Action Relief decision structured the
PredictIt Market to be "small scale," and thus placed limits on the amount of money ($850) that
any one person could invest in a particular contract. These limits ensure that market participants
would not build up so great an interest in the outcome of an election or political event to try to
change the outcome or to use the market to hedge a financial investment. And they would ensure
the market remained focused on providing information, by aggregating the investment-backed
predictions of many. Ex. 1 at 3-5.

**Response:**  The allegations in paragraph 72 regarding the Commission's "No-Action Relief"

decision" and specification of "certain rules that would govern the PredictIt Market" contain

conclusions of law and the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight as actions of the Commission, which the CFTC denies.  The CFTC

admits that the Market was to be small scale with an $850 investment limit by any one person in

a particular contract market.  The CFTC lacks knowledge sufficient to form an opinion as to the

truth of the third and fourth sentences of paragraph 72.

17.     In its application for no-action relief, Victoria University listed eight examples of
political event contracts it might offer, including who a Presidential candidate may select as his
running mate and made clear that: "[t]he Market may list additional event-driven contracts based
on significant Political Events."  Ex. 4 at 3.  The Commission's No-Action Relief written
decision accepted the scope of political event contracts that Victoria University proposed to offer
in its application for no-action relief and repeated the non-exclusive list of three of the example
contracts Victoria University had identified:

The proposed submarket for political event contracts will include winner-takes-all contracts to predict the following outcomes:

- Which presidential nominee will win his or her party's primary, the general election popular vote, and the Electoral College,

- Who will be the majority party nominee for Vice President; and

- Which parry will control the next Congress.

Ex. 1 at 2.  Some of these examples pertained to the outcome of a U.S. Election, but another did not, as it pertained to the selection of a vice-presidential nominee, a decision made by a candidate and ratified by his party.

**Response:**  The CFTC admits that Victoria University requested a no-action letter from the staff

of the CFTC Division of Market Oversight in 2014 to operate a not-for-profit event contract

market and the accuracy of the quotations the first sentence of paragraph 73, but denies that

the allegations contain a complete and accurate description of Victoria University's request in all

respects.  The allegations in the second sentence of paragraph 73 regarding the "Commission

written decision" contain the Plaintiffs' characterization of the actions of the staff of the CFTC

Division of Market Oversight, which the CFTC denies.  The CFTC admits the remainder of the

allegations in paragraph 73.

18.    The use of the word "include" in the description of "political event" contracts made clear that the examples listed were not exclusive.  *Id*.  This was further reinforced by the explicit reference back to the "proposed submarket for political event contracts" described in Victoria University's application (*id*.), and its reference to offering "additional event-driven contracts based on significant Political Events."  Ex. 4 at 3.  The No-Action Relief decision placed only the following restriction on the scope of these contracts: "The Market will not list any contracts that involve, relate to or reference terrorism, assassination or war." Ex. 1 at 2.

**Response:**  The CFTC denies the allegations in paragraph 74.

19.    Lest there be any doubt that approved political event contracts were not limited to election outcomes, a senior Commission official clarified in later correspondence: "NAL 14-130 lists three *non-exclusive* examples of political contracts—each is tied to election outcomes and allows some flexibility with respect to political contracts," but cautioned that PredictIt should

avoid contracts that "appear to have *no relationship to elections or any other meaningful political question*."

**Response:**  The CFTC admits that a former employee of the CFTC Division of Market

Oversight provided the above quoted text.  The CFTC denies the remaining allegations in

paragraph 75.

20.     In its March Action, the Commission alleges that the Market has offered contracts "outside the scope of the" Commission's 2014 license for operation of the Market and implies that the Market should close for that reason.  The Commission's assertion is based on an arbitrary interpretation of the license, restricting contracts to the outcomes of elections.  As demonstrated by the above text and context of the No-Action Relief decision, as well as subsequent communications with CFTC staff, the approved political event contracts went beyond just election-outcome contracts.  Offering contracts beyond election-outcome contracts therefore cannot serve as a basis for revoking the Market's license to operate.

**Response:**  The allegations in paragraph 76 regarding the Commission's "March Action [and]

2014 license" and "[t]he Commission's assertion" contain conclusions of law and the Plaintiffs'

characterization of the actions of the staff of the CFTC Division of Market Oversight as actions

of the Commission, which the CFTC denies along with the remainder of the allegations in

paragraph 76 except to admit that the above quoted text is partially correct but denies that it is

complete and accurate in all respects.

## V.     The Commission Precipitously and Without Explanation Revokes Permission and Its License to Operate the PredictIt Market

21.     Between 2014 and 2022, the PredictIt Market has offered over 8,000 contract markets, in which over 120,000 participants have invested.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 77.

22.     On August 4, 2022, the CFTC revoked the No-Action Relief by publishing Revocation of CFTC Letter No. 14-130 (previously defined at the "Revocation").  *See* Ex. 2.

**Response:**  The CFTC admits that, on August 4, 2022, the staff of the CFTC Division of Market

Oversight issued CFTC letter 22-08 which stated that the Division was revoking the no-action

letter issued to Victoria University in 2014.  The CFTC denies the remaining allegations in

paragraph 78 except as stated in the first sentence of this response.

      23.     The Revocation—issued without any detailed reasoning, explanation, or legally sufficient process—would have effected a shutdown of the PredictIt Market as of February 15, 2023, as the entities servicing the Market cannot continue to permit trading and Investors cannot continue to participate in the Market after the Commission has effectively revoked the Market's permission to operate.

**Response:**  The allegations in paragraph 79 contain the Plaintiffs' characterization of the actions

of the staff of the CFTC Division of Market Oversight as actions of the Commission, which, the

CFTC denies along with the remainder of the allegations in paragraph 79.

      24.     Victoria University had no intention of ending the PredictIt Market prior the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusion. Victoria University intends to comply with the terms of the CFTC's Revocation (and March Action) and therefore close the 2024 contracts in advance of their maturity unless the CFTC's actions are abrogated, amended, or suspended.

**Response:**  The allegations in paragraph 80 regarding "the CFTC's withdrawal", "the CFTC's

action", "the CFTC's Revocation", and "the CFTC's actions" contain the Plaintiffs'

characterization of the actions of the staff of the CFTC Division of Market Oversight as actions

of the Commission, which the CFTC denies.  The CFTC lacks knowledge sufficient to form a

belief as to the truth of the remainder of the allegations in paragraph 80.

      25.     The Revocation itself left the corporate entities servicing the market and investors to speculate about the basis of the Commission's decision.  The Revocation summarily stated:

> The University has not operated its market in compliance with the terms of Letter 14-130. As a result, Letter 14-130 is hereby withdrawn and, as such, is not available for the listing or operation of any new or related contracts.

Ex. 2 at 2.

**Response:**  The allegations in paragraph 81 regarding "the Commission's decision" and "Revocation" contain the Plaintiffs' characterization of the actions of the staff of the CFTC Division of Market Oversight as actions of the Commission, which the CFTC denies.  The CFTC denies the allegations in paragraph 81 regarding the corporate entities and respectfully refers the Court to the copy of CFTC Letter 23-03 at page 3, first full paragraph, attached to the Second Amended Complaint (Dkt. No. 55) as Exhibit 3.  The CFTC lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 regarding the investor Plaintiffs.

26.     The Revocation further specified prescriptions for the wind-down of the PredictIt Market:

> To the extent that the University is operating any contract market, as of the date of this letter, in a manner consistent with each of the terms and conditions provided in Letter 14-130, all of those related and remaining listed contracts and positions comprising all associated open interest in such market should be closed out and/or liquidated no later than 11:59 p.m. eastern on February 15, 2023.

Ex. 2 at 2.

**Response:**  The CFTC denies the allegations in paragraph 82, except to admit the accuracy of the quotation but respectfully refers the Court to the full text of Letter 22-08 for the contents and meaning thereof.

27.     The Revocation did not specify how the PredictIt Market's operations at any time during the previous seven years had failed to comply with the terms of the No-Action Relief decision.  It lacked any indication of reasoned decisionmaking.

**Response:**  The allegations in paragraph 83 contain Plaintiffs' characterization of CFTC Letter 22-08, which the CFTC denies and respectfully refers the Court to a copy of CFTC Letter 23-03 at page 3, first full paragraph, attached to the Second Amended Complaint (Dkt. 55) as Exhibit 3.

28.     To the extent that the Commission's Revocation was based on an interpretation of its No-Action Relief decision that limits permitted contracts to those directly related to the

outcome of a U.S. election and alleged violations of that claimed limit (as suggested in one oral discussion with the Commission staff), the Revocation incorporates reasoning that is contrary to the text, context, and history of the Commission's own No-Action Relief decision and extensive subsequent communications with CFTC staff.  That error, in addition to the lack of explanation in the Revocation itself, further makes the Revocation arbitrary, capricious, and an abuse of discretion.

**Response:**  The allegations in paragraph 84 contain conclusions of law and the Plaintiffs'

characterization of the actions of the staff of the CFTC Division of Market Oversight as actions

of the Commission, which the CFTC denies.

29.    The Commission's Revocation also arbitrarily demanded the shutdown of the PredictIt Market in a manner that ignores less disruptive alternatives without explanation.

**Response:**  The allegations in paragraph 85 regarding "[t]he Commission's Revocation"

contain conclusions of law and the Plaintiffs' characterization of the actions of the staff of the

CFTC Division of Market Oversight as actions of the Commission, which the CFTC denies.

30.    The arbitrarily chosen end date of February 15, 2023, alone forced the premature liquidation of dozens of contracts, the settling of which depends on the outcome of elections that will occur in 2024. The PredictIt Market's participants will be harmed by a premature liquidation, as it will deprive them of the value they anticipate by the event resolving in their predicted direction in 2024.  Even if the Commission arbitrarily passed over, without explanation, the alternative of allowing contracts already issued by the Market to run their course and avoiding the entirely unnecessary displacement caused by the premature liquidation of those contracts.  The Commission also passed over the alternative of seeking adjustments to whatever problems it perceived in the Market rather than simply trying to close it.

**Response:**  The CFTC admits that some contracts that were listed on the PredictIt Market at the

time CFTC letter 22-08 was issued turned on events that would occur after February 2023

including the 2024 primary and general elections in the United States, but otherwise denies the

remaining allegations in the first sentence of paragraph 86.  The CFTC lacks knowledge

sufficient to form a belief as to the truth of the allegations in second sentence of paragraph 86.

The allegations in the third and fourth sentences of paragraph 86 regarding the alleged actions of

"the Commission" contain conclusions of law and the Plaintiffs' characterization of the actions

of the staff of the CFTC Division of Market Oversight as actions of the Commission, which the CFTC denies.

31.    Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider, and Mr. Shepherd are among those Market participants that will be harmed if the Commission can move forward with premature liquidation or stop the issuance of new contracts in which they can invest.  They have invested in open event contracts on the PredictIt Market, including those related to the outcome of the 2024 presidential election that will not close until that year or early 2025.  If the PredictIt Market is shut down before those contracts close, Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider, and Mr. Shepherd, and other PredictIt Market participants will be deprived of the benefit of their investments and of the benefits of a continuing Market.

**Response**:  The allegations in first sentence of paragraph 87 regarding the ability of the

"Commission [to] . . .  move forward with premature liquidation or stop the issuance of new

contracts in which they can invest" contain Plaintiffs' characterization of the actions of the staff

of the CFTC Division of Market Oversight as actions of the Commission, which the CFTC

denies.  Otherwise, the CFTC lacks knowledge sufficient to form a belief as to the truth of the

remainder of the allegations in paragraph 87 and respectfully refers the Court to the copy of the

No-Action Relief, "CFTC Ltr. No. 14-130," attached to Plaintiffs' Second Amended Complaint

(Dkt. No. 55) as Exhibit 1, which states that the "proposed market for event contracts has been

designed to serve academic purposes . . . [and] promote the educational public interest purpose of

the project while maintaining the small-scale, not-for profit nature of the proposed market."

Exhibit 1 at pg. 5.

## VI.    Following Oral Argument in the Fifth Circuit, the Commission Withdraws the Revocation Letter and Issues a New Determination that the No-Action Relief is Void and Should be Withdrawn

32.    In September 2022, the Plaintiffs moved for a preliminary injunction in this Court aimed at preserving the Market during the pendency of litigation and preserving the liquidation of contracts existing as of August 2022.  As the February 2023 Revocation deadline drew closer and closer, and this Court had not acted on the preliminary injunction, Plaintiffs deemed the motion effectively denied and appealed the decision to the U.S. Court of Appeals for the Fifth Circuit.  On January 26, 2023, the Fifth Circuit granted an injunction allowing Market contracts

to continue trading pending resolution of the appeal.  The Fifth Circuit expedited the appeal and heard oral argument on February 8, 2023.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in paragraph 88 as they relate to the Plaintiffs' decision to file an appeal with the U.S.

Court of Appeals for the Fifth Circuit, but admits the remainder of the allegations in paragraph

88.

33.      On March 2, 2023—twenty-two days after oral argument in the Fifth Circuit but before a decision on appeal—the Commission issued "CFTC Letter 23-03" (previously defined as the "March Action").

**Response:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that

letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was

not issued pursuant to a vote of the CFTC commission members appointed by the President and

approved by the Senate with authority to make decisions for the CFTC as an agency.  The CFTC

admits that Letter 23-03 was issued on March 2, 2023.

34.      The March Action violated the Fifth Circuit's injunction pending appeal, which granted Plaintiffs' request to "enjoin the enforcement of the Commission's February 15, 2023, liquidation mandate and allow the PredictIt Market event contracts that were offered as of the date of the agency's decision . . . to continue trading pending resolution of [the] appeal."

**Response:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that

letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was

not issued pursuant to a vote of the CFTC commission members appointed by the President and

approved by the Senate with authority to make decisions for the CFTC as an agency.  The CFTC

denies the remaining allegations in paragraph 90.

35.      The March Action purports to "withdraw[]" and supersede[]" the August Revocation letter. Ex. 3 at 1.  It nevertheless reaches the same conclusions as the prior Revocation—that the No-Action Relief is void and should be cancelled.  Ex. 3 at 3.

**Response:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that

letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was

not issued pursuant to a vote of the CFTC commission members appointed by the President and

approved by the Senate with authority to make decisions for the CFTC as an agency.  The CFTC

admits that Letter 23-03 stated that it "withdraws and supersedes" Letter 22-08.  The CFTC

denies the remaining allegations in paragraph 91.

      36.     In contrast to the Revocation letter, the March Action attempts to provide an explanation of how the Commission believes the Market violated the conditions of the No-Action Relief.  It alleges the following violations:

    a.   That Aristotle, rather than Victoria University, is operating the Market, in violation of the No-Action Relief's condition that faculty at the University must operate and oversee the Market. Ex. 3 at 3-4.

    b.   That Victoria University has received, and permitted Aristotle to receive, separate compensation for the operation of the Market, in violation of the No-Action Relief's condition that faculty at the University must oversee the Market, without receipt of separate compensation. Ex. 3 at 4-5.

    c.   That Victoria University has offered contracts falling outside of the scope of the categories of submarkets approved in the No-Action Relief. Ex. 3 at 5-6.

**Response:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that

letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was

not issued pursuant to a vote of the CFTC commission members appointed by the President and

approved by the Senate with authority to make decisions for the CFTC as an agency.  Further,

the allegations in paragraph 92 contain the Plaintiffs' characterization of the CFTC Division of

Market Oversight's Letter 23-03, which the CFTC admits is partially accurate but denies is a

complete and fully accurate description of the letter. the CFTC respectfully refers the Court to

the copy of CFTC Letter 23-03 attached to the Second Amended Complaint (Dkt. 55) as Exhibit

3.

37.     Each of these alleged violations is invalid and contrary to the text, context, and history of the No-Action Relief decision and extensive subsequent communications with CFTC staff.  Taken together, the alleged violations cannot justify the preliminary conclusion that the No-Action Relief is void and should be withdrawn. The Commission's assertion of these flawed allegations to justify its action renders the March Action arbitrary, capricious, and an abuse of discretion.

**Response:**  The CFTC denies the allegations in the first and second sentences of paragraph 93.

With regard to the third sentence of paragraph 93, the CFTC denies that Letter 23-03 was issued

by "[t]he Commission" because that letter was issued by the staff of one unit of the CFTC, the

Division of Market Oversight, and was not issued pursuant to a vote of the CFTC commission

members appointed by the President and approved by the Senate with authority to make

decisions for the CFTC as an agency.  The CFTC otherwise denies the allegations in the third

sentence of paragraph 93.

38.     The March Action further justifies its preliminary conclusion that the No-Action Relief is void and should be withdrawn by suggesting that the Market demands too much of the Commission's attention and "is not an appropriate use of taxpayer resources." Ex. 3 at 6.  The Commission does not cite any specific numbers to support this claim.  It says nothing about the magnitude of resources required and does not explain why they would not be reasonably expended in light of the considerable and longstanding reliance interests of the traders, academics, and service companies that have organized their affairs around the No-Action Relief. This is no meaningful justification—much less a non-arbitrary one—for declining the alternative of seeking adjustments to whatever practices the Commission contends are inconsistent with its license of the Market and allowing the Market to continue operating.  The assertion of this rationale in support of the closure of the Market renders the March Action arbitrary, capricious, and an abuse of discretion.

**Response:**  The CFTC denies that Letter 23-03 was issued by "[t]he Commission" because that

letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was

not issued pursuant to a vote of the CFTC commission members appointed by the President and

approved by the Senate with authority to make decisions for the CFTC as an agency.  The CFTC

admits that the language quoted in the first sentence of paragraph 94 is contained in Letter 23-03

but denies that the sentence fully and accurately describes the relevant discussion in the letter.

The CFTC denies the remaining allegations in paragraph 94.

39.     The March Action also arbitrarily fails to grapple with less disruptive alternatives than full closure of the Market.  It states only that it would "be inappropriate" to allow currently existing markets to expire on their own terms in light of the "likelihood of recurrence" of alleged past violations of the No-Action Relief. Ex. 3 at 7.  The alleged violations of the No-Action Relief are no such thing and certainly do not warrant closure of the Market.  Moreover, the March Action offers no explanation for why alleged past violations suggest a likelihood of recurrence in the future.

**Response:**  The CFTC denies the allegations in the first sentence of paragraph 95.  The CFTC denies the remaining allegations in paragraph 95, but admits the accuracy of the quotations, and respectfully refers the Court to the copy of CFTC Letter 23-03 at page 3 first full paragraph attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 3.

40.     The March Action invites Victoria University to submit objections to the Letter. Ex. 3 at 7.  It does not, however, offer Victoria University—let alone the service companies that organized their affairs around the No-Action Relief—an opportunity to demonstrate or achieve compliance with the requirements of the No-Action Relief.  As a result, the March Action violates the APA's procedural requirements for withdrawing agency licenses.  *See* 5 U.S.C. § 558(c)(2).

**Response:**  The CFTC admits the allegations in the first sentence of paragraph 96, but denies that Letter 23-03 was issued by "[t]he Commission" because that letter was issued by the staff of one unit of the CFTC, the Division of Market Oversight, and was not issued pursuant to a vote of the CFTC commission members appointed by the President and approved by the Senate with authority to make decisions for the CFTC as an agency.  The CFTC denies the allegations in the second sentence of paragraph 96 and respectfully refers the Court to the copy of CFTC Letter 23-03 attached to Plaintiffs' Second Amended Complaint (Dkt. No. 55) as Exhibit 3 for the full contents and meaning thereof.  The CFTC denies the allegations in the third sentence of paragraph 96.

41.     Finally, the March Action does not account for the longstanding reliance interests of the traders, academics, and service companies that organized their affairs around the No-Action Relief, as required by prevailing law in the Fifth Circuit when administrative agencies choose to adjust course.  Instead, it specifically directs that none of these interested parties will have any opportunity to respond to the March Action, even though all of these parties are beneficiaries of the Commission's license for the Market to operate.  Ex. 3 at 7.

**Response:**  The CFTC denies the allegations in paragraph 97.

42.     The PredictIt Market's participants will be harmed by the determination in the March Action, as it will deprive them of the value they anticipate by the event resolving in their predicted direction in 2024.  It will also deprive them of the benefits of a continuing Market. The Commission arbitrarily passed over, without sufficient explanation, the alternatives of allowing contracts already issued by the Market to run their course and avoiding the entirely unnecessary displacement caused by the premature liquidation of those contracts or of making structural corrections going forward to permit contracts to trade within limits and under conditions that the Commission believes comply with the license.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in the first and second sentences of paragraph 98.  The CFTC denies the allegations

in the third sentence of paragraph 98 because Letter 23-03 was not issued by "[t]he Commission"

pursuant to a vote of the CFTC commission members appointed by the President and approved

by the Senate with authority to make decisions for the CFTC as an agency.

43.     Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider and Mr. Shepherd are among those Market participants that will be harmed.  They have invested in open event contracts on the PredictIt Market, including those related to the outcome of the 2024 presidential election that will not close until that year or early 2025.  If the PredictIt Market is shut down before those contracts close, Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider, Mr. Shepherd, and other PredictIt Market participants will be deprived of the benefit of their investments.  Moreover, as beneficiaries of the Market's license to operate, Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider, and Mr. Shepherd wish to continue trading political futures contracts beyond the 2024 presidential election.  The full closure of the Market, as opposed to less damaging alternatives like the CFTC targeting allegedly problematic contracts for removal from the Market, would deprive the Investor Plaintiffs of these future trading activities.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in the first, second, and third sentences of paragraph 99 and refers the Court to the

copy of the No-Action Relief, "CFTC Ltr. No. 14-130," attached to Plaintiffs' Second Amended

Complaint (Dkt. No. 55) as Exhibit 1, which states that the "proposed market for event contracts has been designed to serve academic purposes . . . [and] promote the educational public interest purpose of the project while maintaining the small-scale, not-for profit nature of the proposed market." Exhibit 1 at pg. 5. The CFTC denies the allegations in the fourth and fifth sentences of paragraph 99 characterizing the no-action letter as a "license" and "the CFTC targeting allegedly problematic contracts", respectively, as conduct of the CFTC. The CFTC denies all remaining allegations in the fourth and fifth sentences of paragraph 99.

44.    Professors Crane, Miller, and Smidt are among the academics that will be harmed. They rely on the PredictIt Market as a source of data for research and academic scholarship and as a pedagogical tool for teaching students regarding political events and the efficiency of markets. The quality of the data for academic study is directly tied to the quantity and currency of the data. If the Commission shuts down the PredictIt Market, Professors Crane, Miller, and Smidt will lose this important source of scholarship. This outcome would be significantly more damaging to Professors Crane, Miller, and Smidt than the alternative of the Commission targeting correction of allegedly problematic contracts but leaving the remaining contracts—and the Market as a whole—intact.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of paragraphs 100. The allegations in the fourth and fifth sentences of paragraph 100 regarding "[i]f the Commission shuts down the PredictIt Market" and "the Commission targeting correction of allegedly problematic contracts", respectively, contain the Plaintiffs' characterization of the actions of the staff of the CFTC Division of Market Oversight as actions of the Commission, which the CFTC denies along with all remaining allegations in paragraph 100.

45.    On the same day it issued the March Action, the Commission moved, on the basis of the Action, to dismiss the Fifth Circuit appeal as moot. Despite the fact that the March Action violated the injunction pending appeal, the Commission argued that the March Action served as a basis for dismissing the appeal. The positions taken by the Commission in its briefing on the motion to dismiss the appeal were not substantially justified and caused the Plaintiffs to incur unnecessary fees to repel an effort to avoid decision of a fully briefed appeal.

**Response:**  The CFTC admits that it moved to the dismiss the Fifth Circuit appeal.  The

allegations in the second and third sentences of paragraph 101 consist of Plaintiffs'

characterization of the CFTC's March 2023 briefing, which the CFTC denies along with the

remaining allegations in paragraph 101.

46.     On May 1, 2023, the Fifth Circuit denied the Commission's motion to dismiss the
appeal as moot and clarified that the injunction pending appeal enjoined the Commission from
closing the Market or otherwise prohibiting or deterring the trading of Market contracts until 60
days after final judgment in the appeal.

**Response:**  The CFTC admits the allegations in paragraph 102.

### VII.    The Fifth Circuit's Opinion

47.     On July 21, 2023, the Fifth Circuit Court of Appeals issued an opinion in this
matter.  A true and correct copy of the Fifth Circuit's opinion is attached hereto as **Exhibit 5**.
The Circuit Court held that the Commission, through the No-Action Relief, had issued a
"license" to open and to operate the PredictIt Market.  Ex. 5 at 9.  The Court considered and
rejected as "meritless" each of the CFTC's threshold objections to this suit: (1) that the March
Action mooted the case, (2) that the CFTC's actions were not final agency action, (3) that the
withdrawal of the No-Action Relief was committed to the CFTC's discretion, and (4) that the
Plaintiffs lacked standing.  *Id*. at 6-15.  The Court then held that the Plaintiffs were likely to
succeed on their claims that the Commission's permission and license to operate the Market had
been improperly and illegally terminated.  *Id*. at 15-19.  It also held that the March Action
violated the injunction pending appeal.  *Id*. at 16.

**Response:**  The CFTC admits that a true and correct copy of the Fifth Circuit Court of Appeals'

July 21, 2023 opinion is attached to the Second Amended Complaint as Exhibit 5.  The

remaining allegations in paragraph 103 consist of Plaintiffs' characterization of the Fifth Circuit

Court of Appeals' July 21, 2023 opinion, which the CFTC denies and respectfully refers the

Court to the referenced opinion attached Exhibit 5 to the Plaintiffs' Second Amended Complaint

for a complete and accurate recitation of its contents.

48.     The Court explained that the Commission's efforts to close the Market—
including through the Revocation in August 2022 and the March 2023 Action—likely had
violated the Administrative Procedure Act.  *Id*. at 15-21.  These efforts endangered "significant
reliance interests" that the Market operators, traders, and academics had in the Market's
continued operation, given their significant investments in standing up, purchasing contracts on,

and studying the Market.  *Id*. at 15-18.  The efforts likely also could not be squared with the procedural protections that accompany a license from a federal agency, the Court held, as the agency provided no hearing much less an opportunity "to demonstrate or achieve compliance." *Id*. at 17 (quoting 5 U.S.C. § 558(c)).  The Fifth Circuit found it unlikely that the agency could reconcile closing the Market with the "significant reliance interests at play."  *Id*. at 15-17.  The Court found arbitrary the agency's efforts to close the Market in light of the alternative of the agency identifying the alleged violations of the No-Action Relief's terms, seeking correction of them, and then monitoring the Market for future compliance.  *Id*. at 18.  The Court also held that due to the threat of irreparable injury to Market operators and traders, as well as academics studying the Marked, the balance of the equities and the public interest weighed in favor of a preliminary injunction.  *Id*. at 19-21.

**Response:**  The allegations in paragraph 104 consist of Plaintiffs' characterization of the Fifth Circuit's July 21, 2023 opinion, which the CFTC denies. The CFTC respectfully refers the Court to the referenced opinion attached Exhibit 5 to the Plaintiffs' Second Amended Complaint for a complete and accurate recitation of its contents.

49.     The Fifth Circuit remanded the case to this Court with instructions to "enter a preliminary injunction pending its consideration of [Plaintiffs'] claims."  *Id*. at 21.

**Response:**   The CFTC admits the allegation in paragraph 105 and refers the Court to the referenced opinion attached Exhibit 5 to the Plaintiffs' Second Amended Complaint for a complete and accurate recitation of its contents.

## COUNT I
**(Violation of the Administrative Procedure Act – Agency Action, Findings, and/or Conclusions that are Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law)**

50.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

**Response:**  Defendant repeats and reincorporates its responses to paragraphs 1 through 105 above as if fully set forth herein.

51.     The Investor Plaintiffs, Academic Plaintiffs, Aristotle, and PredictIt may assert claims under the Administrative Procedure Act because they have been adversely affected or aggrieved by the CFTC's withdrawal of the No-Action Relief.  5 U.S.C. § 702.

   a.     Investor Plaintiffs are active participants in the PredictIt Market and derive economic value from the ability to trade contracts based on their research and

knowledge about the likely outcome of elections and other significant political questions.  In addition, Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, Mr. Schneider, and Mr. Shepherd have contracts that are not scheduled to settle prior to the Commission's desired termination date, and contracts settling prior to then about which there is uncertainty regarding the timing of their liquidation due to the Commission's vague Revocation and March Action.

b.     The PredictIt Market is a central component of the Academic Plaintiffs' classes, and data generated by PredictIt Market event contracts is valuable to their areas of research.  If PredictIt Market event contracts are liquidated prematurely—prior to the close-out event for many contracts—or if the Market is prevented from offering new contracts, they will be stripped of a pedagogical tool that facilitates student engagement and understanding of prediction markets, and data from 2024 presidential-election contracts will be rendered valueless for academic purposes, foreclosing the use of that data in future research.

c.     For more than half a decade, PredictIt and Aristotle have expended significant resources to assist Victoria University in developing and operating the PredictIt Market in reliance on the No-Action Relief.  Victoria University is not a party to this litigation; but Victoria University had no intention of ending the PredictIt Market prior to the CFTC's withdrawal of the No-Action Relief, and, but for the CFTC's action, Victoria University would have continued the markets for 2024 contracts through their natural conclusions. Victoria University intends to comply with the terms of the CFTC's Revocation and therefore close the 2024 contracts in advance of their maturity unless the Revocation and March Action are abrogated, amended, or suspended. Aristotle and PredictIt would be forced to incur massive administrative, labor, time, and other costs if forced to liquidate pending contracts prematurely due to the Commission's wind-down orders.  The arbitrary order to terminate contracts early in violation of contract terms leaves Market Operators to guess about how to unwind contracts.

**Response:**  The CFTC lacks knowledge sufficient to form a belief as to the truth of the

allegations in subparagraphs a. and b. of paragraph 107 and further states that Plaintiffs'

allegations in subparagraphs a. and c. regarding "the Commission's vague Revocation and March

Action" and "the CFTC's withdrawal of the No-Action Relief . . . the CFTC's action . . . the

CFTC's Revocation . . . [and] the Commission's wind-down orders . . .", respectively, contain

the Plaintiffs' characterization of the actions of the staff of the CFTC Division of Market

Oversight as actions of the Commission,  which the CFTC denies.  The CFTC admits that

Victoria University is not a party to this litigation and otherwise lacks knowledge sufficient to

form a belief as to the truth of the remaining allegations in subparagraphs a., b., and c. of

paragraph 107.

52.     The CFTC's revocation of the No-Action Relief, through both the August 2022
Revocation and the March 2023 Action, is a "final agency action for which there is no other
adequate remedy."  5 U.S.C. § 704.

     a.    Under CFTC regulations, no-action relief is to be sought from the appropriate
Division of the CFTC, here the Division of Market Oversight. 17 C.F.R. §
140.99.  Victoria University did so in 2014.  There is no option under the
CFTC's regulations to appeal the issuance, non-issuance, or revocation of no-
action relief to the multi-member Commission or any higher power in the
Commission.  *Id.*

     b.    The CFTC's regulations make clear that no-action letters issued by the Division
of Market Oversight bind the division itself in the discharge of its authority
delegated from the CFTC, 17 C.F.R. § 140.99(a)(2), and contemplate that the
entity seeking no-action relief may rely on a no-action letter issued by the
division.  *Id.*

     c.    The entire process—from beginning to end—rests with the Division of Market
Oversight.  Accordingly, Plaintiff has no adequate or available administrative
remedy to address the Revocation.

     d.    The No-Action Relief is the final agency action of a license, as that term is
defined under the Administrative Procedure Act.

     e.    The Commission itself approved the revocation of the No-Action Relief.  On
information and belief, the Division of Market Oversight's proposed
revocation of No-Action Relief was circulated to each Commissioner for his or
her objection, and no Commissioner objected.

     f.    In the alternative, any effort to obtain administrative remedy would be futile.

**Response**:  The allegations in paragraph 108 contain conclusions of law and the Plaintiffs'

characterization of the actions of the staff of the CFTC Division of Market Oversight as actions

of the Commission, which the CFTC denies.  With regard to subparagraph a. of paragraph 108,

the CFTC admits that Victoria University requested a no-action letter from the staff of the CFTC

Division of Market Oversight in 2014 to operate a not-for-profit event contract market but denies

that the allegations in paragraph 108 contain a complete and accurate description of Victoria

University's request in all respects.  The CFTC admits the allegations in the first sentence of

subparagraphs c. in paragraph 108.  The remaining allegations in subparagraph c. of paragraph

108 consist of conclusions of law and Plaintiffs' characterization of the no-action process, which

the CFTC denies.  The CFTC denies the remaining allegations in subparagraphs d., e., and f. of

Paragraph 108.

     1.     The Fifth Circuit's July 21, 2023, opinion in this matter holds that the CFTC's efforts to

withdraw the No-Action Relief constitute final agency action.  Ex. 5 at 10–12.

     a.     The Fifth Circuit found that the withdrawal of No-Action Relief consummated the CFTC's decisionmaking process: "[I]t does not matter that the letter pertains only to the staff's recommendation to the agency.  Once the staff decide to issue or withdraw the letter, there is no further appeal within the agency.  Illustrating that reality, CFTC regulations state that a beneficiary 'may rely' on [the CFTC's] issuing a no-action letter."  *Id.* at 10 (citing 17 C.F.R. § 140.99(a)(2)).

     b.     The Fifth Circuit also found that legal consequences flowed from the decision because the No-Action Relief withdrew some of the CFTC's discretion by allowing the Market to rely on it.  *Id.*

     c.     The Court further observed that "none of this is changed" by the March Action, as the letter "does not promise to reconsider its decision that the no-action letter 'is void and should be withdrawn.'"  *Id.* at 11.

     d.     The Fifth Circuit's decision viewed the August 2022 Revocation and the March 2023 Action as a continuous, uninterrupted effort to close the Market that constitutes final agency action.

**<u>Response</u>:**  The allegations in paragraph 109, including subparagraphs a. through d. therein,

consist of Plaintiffs' characterization of the Fifth Circuit's July 21, 2023 opinion and respectfully

refers the Court to the referenced opinion attached Exhibit 5 to the Plaintiffs' Second Amended

Complaint (Dkt. 55) for a complete and accurate recitation of its contents.

110.    The Commission's revocation of the No-Action Relief in the August 2022 Revocation letter including its direct order to liquidate contracts by February 15, 2023, that turn on later events—is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus violates the APA.  5 U.S.C. § 706(2)(A).

a.    The Revocation offered no basis to conclude that it was the product of reasoned decisionmaking, much less was it reasonably explained to the regulated party.

b.    In the Revocation, the Commission claimed that "the University has not operated its market in compliance with the terms of Letter 14-130" and that "as a result," the No-Action Relief is revoked.  But the Commission provided absolutely no detail or explanation regarding how, when, or in what instances the terms of No-Action Relief have been violated.  The Revocation does not reflect the "reasoned decisionmaking" required by the APA.

c.    To the extent the Commission was claiming that certain contracts offered by the Market have been outside the category of "political event" contracts approved by the No-Action Relief, that contention is arbitrary, capricious, and an abuse of discretion. That assertion is based on a view that the No-Action Relief's license to operate a market is limited to political-event contracts that are directly related to the outcome of a U.S. election. To the extent that interpretation of the No-Action Relief is driving the Commission's revocation of No-Action Relief, it is arbitrary, capricious, and/or an abuse of discretion. That is because the Commission, in 2014, permitted the trading of political markets relating to the outcome of elections or other significant political questions that do not relate to war, terrorism, or assassination.  The Commission took no issue in its No-Action Relief decision with the permitted scope of political event contracts sought by Victoria University. Instead, its No-Action Relief decision provided a non-exclusive list of examples of the types of contracts to be offered, some of which directly related to election outcomes, and some of which did not, including the selection of a Vice Presidential nominee. From the beginning, the PredictIt Market has offered contracts that predict the outcome of significant political issues, including non-U.S. elections, who would be nominated or confirmed as cabinet officials or Supreme Court justices, and whether key federal legislation would be enacted. The Market offered these contracts without incident for more than seven years. The CFTC has been aware of the PredictIt Market's operations and offerings since its inception, and, through its communications and actions, it has confirmed the PredictIt Market was operating within the scope of the No-Action Relief.  To the extent the Commission believes certain contracts have been offered that were outside the scope of No-Action Relief, it should raise those particular contracts with the PredictIt Market and ask that they be addressed.  It is arbitrary, capricious, and/or an abuse of discretion to revoke the Market's permission to operate on the basis of the Commission's unexplained and undocumented factual and legal contention that certain contracts were offered that are not permitted by

the No-Action Relief decision.

**Response:**  The CFTC denies the allegations in paragraph 110, including subparagraph a.

through c. therein, except to admit that staff of the CFTC Division of Market Oversight issued

the Revocation letter to Victoria University of Wellington New Zealand and that the Revocation

letter contained the quoted text.

111.    The arbitrary reasoning behind the Revocation has led to and been compounded
by arbitrary and capricious commands to liquidate certain contracts prematurely.  Specifically,
the Revocation permitted the corporate entities servicing the market to continue operating any
contract market operated "in a manner consistent with each of the terms and conditions in" the
No-Action Relief until February 15, 2023, at which time "all associated open interest in such
market should be closed out and/or liquidated."  Ex. 2 at 2.  This disorderly wind-down could
have been avoided if the agency had not arbitrarily and capriciously issued the Revocation and
its commands for liquidation therein.

**Response:**  The CFTC denies the allegations in paragraph 111.

112.    The Commission's Revocation and associated commands are arbitrary and
capricious in at least the following ways:

    a.    The new proscriptions do not provide any detail as to what current contracts are
not being operated "in a manner consistent with" the No-Action Relief's terms.

    b.    The Revocation does not allow investors, like the Investor Plaintiffs, to realize
any benefit from open event contracts that would settle based on events
occurring after February 15, 2023—*e.g.*, event contracts related to the 2024
primary and general elections—which are the majority of the investments
currently made in the PredictIt Market.

    c.    By forcing the liquidation of PredictIt Market event contracts based on the
outcome of the 2024 election cycle before their natural maturation, the
Revocation renders data generated, to date, by trading of those contracts
valueless for academic analysis.

    d.    The Revocation attempts to prevent the issuance of new contracts, depriving
operators, traders, and academics of the benefits of a continuing Market without
explaining corrections to the Market short of closing it.

**Response:**  The allegations in paragraph 112 regarding "[t]he Commission's Revocation and

associated commands" contain conclusions of law and the Plaintiffs' characterization of the no-

action process, which the CFTC denies.  As to the remaining allegations in subparagraphs a.

through d. of paragraph 112, the CFTC admits that some contracts that were listed on the

PredictIt Market at the time the Revocation letter was issued turned on events that would occur

after February 2023 including the 2024 primary and general elections in the United States.

Otherwise, the CFTC denies the remaining allegations in paragraph 112.

113.    The Commission's selection of a remedy—the Revocation and its associated commands—for alleged violations of the No-Action Relief decision's terms is arbitrary and capricious.  It ignored or otherwise failed to explain why obvious alternatives—such as allowing all currently pending contracts to run their course and mature on their own terms, while barring the creation of new event markets or seeking adjustments to a continuing Market—should not be selected.

**Response**:  The allegations in paragraph 113 regarding "[t]he Commission's selection of a

remedy—the Revocation and its associated commands" consist of conclusions of law and the

Plaintiffs' characterization of the actions of the staff of the CFTC Division of Market Oversight

as actions of the Commission, which the CFTC denies along with all remaining allegations of

paragraph 113.

114.    The Commission's determination in the March Action that the No-Action Relief is void and should be withdrawn is likewise "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus violates the APA. 5 U.S.C. § 706(2)(A).

**Response**:  The allegations in paragraph 114 regarding "[t]he Commission's determination in the

March Action that the No-Action Relief is void" consist of conclusions of law and the Plaintiffs'

characterization of the actions of the staff of the CFTC Division of Market Oversight as actions

of the Commission, which the CFTC denies along with all remaining allegations of paragraph

114.

115.    The March Action provides three ways in which the Commission believes the Market violated the conditions of the No-Action Relief.  In fact, none of these alleged actions violates the No-Action Relief.

a.  The Commission first claims that Aristotle, rather than Victoria University, is operating the Market, in violation of the No-Action Relief's condition that faculty at the University must operate and oversee the Market. Ex. 3 at 3–4. This claim is false. The No-Action Relief states that three Victoria University professors and one administrator will oversee the Market. The No-Action Relief notes that Aristotle will assist in providing know-your-customer services, but does not otherwise define the closed scope of services that service providers may provide. Given the nature of the Market—an online 24/7 financial platform operated with customized software in a different country than the University— and increased interest in the Market over time, it became necessary during the early years of the Market for the University to substantially outsource platform operations. Since the Market's inception, the University has been transparent in communications with the Commission about Aristotle's involvement in the Market. On numerous occasions since 2017, the University reiterated to the Commission that Aristotle's role includes serving as a clearinghouse for deposits and payments, updating software, responding to trader inquiries, assisting with U.S. legal compliance, publicizing the site, generating data for academic study, performing outreach to academics, and informing traders of new Markets. Until the March Action, the Commission never objected to Aristotle's role.

b.  The Commission next claims that Victoria University has received, and permitted Aristotle to receive, separate compensation for the operation of the Market, in violation of the No-Action Relief's condition that faculty at the University must oversee the Market, without receipt of separate compensation. This claim is false. Victoria University does not receive compensation for operating the Market. Victoria Link Limited, a wholly owned subsidiary of the University, receives $2,000 per month to cover the monthly costs of operating the platform. This modest amount is allocated to cover Victoria University's overhead costs in connection with overseeing the Market, and it often is not even enough to cover those costs. As a result, the $2,000 payment to Victoria Link Limited is fully consistent with the No-Action Relief's requirements that the Market be operated as a not-for-profit and without compensation for any individuals involved. Victoria University has disclosed this payment to the Commission on multiple occasions, and until the March Action, the Commission never objected to it. Moreover, the March Action's statement that the Market's "fee structure appears likely to generate funds far greater than those necessary to operate a small-scale market" is false. The statement is unaccompanied by any supporting data and runs contrary to information previously shared with the Commission explaining the Market's earnings. Specifically, in June 2017, Victoria University and Aristotle disclosed to the Commission that the Market had operated at a net loss up until that point. As of today, expenses have exceeded for the life of the Market.

c.  Finally, the Commission claims that Victoria University has offered contracts falling outside of the scope of the categories of submarkets approved in the No-Action Relief. This claim is false and inconsistent with the text, context, and

history of the Commission's own No-Action Relief decision and extensive subsequent communications with CFTC staff.  As discussed above, the No-Action Relief's use of the word "include" in the description of "political event" contracts makes clear that the examples listed were not exclusive.  Ex. 1 at 2.  This is further reinforced by the explicit reference back to the "proposed submarket for political event contracts" described in Victoria University's application (*id.*), and its reference to offering "additional event-driven contracts based on significant Political Events." Ex. 4 at 3.  As a senior Commission official clarified in later correspondence: "NAL 14-130 lists three *non-exclusive* examples of political contracts – each is tied to election outcomes and allows some flexibility with respect to political contracts," but cautioned that PredictIt should avoid contracts that "appear to have *no relationship to elections or any other meaningful political question.*"  Based on this understanding, the Market had a good faith and reasonable belief that each of the 17 markets the Commission cites in the March Action fell within the No-Action Relief's parameters, as each related to a meaningful political question.  When the Commission questioned one of these 17 contracts in November 2014, the Market immediately terminated the contract. For the majority of the 17 markets, however, the Commission never raised any objection until the March Action. In addition, these 17 markets represent only a tiny fraction of the 6,829 markets that have been listed since the Market's inception.

**Response:**  The allegations in paragraph 115 regarding the Commission consist of Plaintiffs' characterization of the actions of the staff of the CFTC Division of Market Oversight as actions of the Commission, which the CFTC denies along with all remaining allegations in subparagraphs a. through c. of paragraph 115.

116.    The allegations in the March Action are invalid and cannot justify the Action's Preliminary determination that the No-Action Relief is void and should be withdrawn. They are arbitrary and capricious in at least the following ways:

  a. The Commission's flawed assertions do not satisfy the requirement that agency action be reasonable and reasonably explained.

  b. The closure of the Market is not an appropriate or proportionate remedy for addressing the asserted violations, which are fully consistent with the text, context, and history of the No-Action Relief decision and extensive course of dealing between the agency and the Market and represent only a fraction of the Market's activities over the past eight years.

  c. Until the March Action, the Commission did not disclose the large majority of these alleged violations to Victoria University or the Plaintiffs. Asserting them for the first time in the March Action thus constitutes an inappropriate *post hoc*

rationalization for the Commission's earlier decision to close the Market.

**Response:**  The CFTC denies the allegations in paragraph 116.

117.    The March Action's rationale that the Market demands too much of the Commission's attention and is not an appropriate use of taxpayer resources is likewise arbitrary and capricious. The Commission does not cite any information to support this claim.  It does not quantify the Commission resources consumed by the Market and does not explain why the expenditure of such resources is not warranted in light of the considerable and longstanding reliance interests that traders, academics, and service companies have in the Market.

**Response:**  The allegations in paragraph 117 contain the Plaintiffs' characterization of the

actions of the staff of the CFTC Division of Market Oversight as actions of the Commission,

which the CFTC denies and respectfully refers the Court to Letter 23-03 at page 3, a copy of

which is attached to the Second Amended Complaint (Dkt. 55) as Exhibit 3.

118.    Nor does the March Action account for the longstanding reliance interests of the traders like Mr. Clarke, Mr. Beeler, Mr. Boeckmann, Mr. Neeley, and Mr. Schneider, academics like Professors Crane, Miller, and Smidt, and service companies like Aristotle and PredictIt, Inc. that organized their affairs around the No-Action Relief.  Instead, it specifically directs that none of these interested parties will have a meaningful opportunity to respond to the Action.  This is arbitrary and capricious in violation of the principle that administrative agencies must consider such reliance interests before changing course on a given policy and the Fifth Circuit's correct ruling that traders, academics, and operators are beneficiaries of the Commission's license for the Market to operate.

**Response:**  The CFTC denies the allegations in paragraph 118.

119.    Finally, the March Action's selection of a remedy—full withdrawal of the No-Action Relief—for alleged violations of the No-Action Relief's terms is arbitrary and capricious because it fails to seriously consider less disruptive alternatives.  The March Action states only that it would "be inappropriate" to allow currently existing markets to expire on their own terms in light of the "likelihood of recurrence" of alleged past violations of the No-Action Relief.  Ex. 3 at 7.  The March Action offers no explanation for why alleged past violations suggest a likelihood of recurrence in the future.  Moreover, as discussed above, the Commission's alleged violations are invalid.  In addition, the Commission offers no meaningful explanation of why the alternative of seeking forward-looking adjustments to continuing Market operations, to address whatever perceived problems or deviations from license terms the Commissions believes there to be, is not a superior method for dealing with the significant reliance and other interests the Plaintiffs have in the continued operation of the Market.

**Response:**  The CFTC denies the allegations in paragraph 119.

## COUNT II

**(Violation of the Administrative Procedure Act, 5 U.S.C. §§ 558 and 706: Withdrawal of License Without Written Notice or Opportunity to Demonstrate or Achieve Compliance)**

120.    Plaintiffs incorporate the proceeding paragraphs as if fully set forth herein.

**Response:**  Defendant repeats and reincorporates its responses to paragraphs 1 through 119

above as if fully set forth herein.

121.    Section 558(c) of the Administrative Procedure Act prohibits the "withdrawal, suspension, revocation, or annulment of a license" without first giving the licensee: (1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate or achieve compliance with all lawful requirements."  5 U.S.C. § 558(c).

**Response:**  The CFTC denies the allegations in paragraph 121 except to admit the above quoted

text is contained in 5 U.S.C. § 558(c).

122.    A "license" includes "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."  5 U.S.C. § 551(8).

**Response:**  The CFTC denies the allegations in paragraph 122 except to admit the above quoted

text is contained in 5 U.S.C. § 551(8).

123.    The No-Action Relief constitutes a form of permission because it authorizes the PredictIt Market's operation without "registering under the [Commodity Exchange] Act or otherwise complying with the Act or [CFTC] regulations."  Ex. 1 at 5.

**Response:**  The CFTC denies the allegations in paragraph 123.

124.    The Fifth Circuit's July 21, 2023, opinion in this matter holds that the No-Action Relief constitutes a "form of permission," and thus "a 'license' within the meaning of the APA." Ex. 5 at 9.

**Response:**   The allegations in paragraph 124 consist of Plaintiffs' characterization of the Fifth

Circuit's July 21, 2023 opinion, to which no response is required, and the CFTC respectfully

refers the Court to the referenced opinion attached Exhibit 5 to the Plaintiffs' Second Amended

Complaint for a complete and accurate recitation of its contents.

125.    The CFTC's August 2022 Revocation letter revoked the No-Action Relief without

providing those entities assisting in operating the Market with written notice of the facts or conduct which may warrant the Revocation.

**Response:**  The allegations in paragraph 125 contain the Plaintiffs' characterization of the

actions of the staff of the CFTC Division of Market Oversight as actions of the Commission,

which the CFTC denies.

126.    The written Revocation of No-Action Relief stated only as follows: "The University has not operated its market in compliance with the terms of Letter 14-130," the No-Action Relief decision.  There is not even a specific allegation of how the terms of the No-Action Relief have been violated, much less "notice of the facts or conduct that may warrant the revocation." 5 U.S.C. § 558.

**Response:**  The CFTC admits that the quoted text is contained in CFTC Letter 14-130.

Otherwise, the CFTC denies the remaining allegations in paragraph 126 except as stated in the

first sentence of this response.

127.    In addition, the Revocation provided those entities assisting in operating the Market with no opportunity—formal or informal—"to demonstrate or achieve compliance with all lawful requirements." 5 U.S.C. § 558.  The Administrative Procedure Act requires that the permitted or licensed entity be made aware of the facts forming the basis of the Revocation and to have an opportunity to rebut them.  But the Revocation took *immediate effect* and provided no opportunity to be heard, much less one informed about the facts that the Commission believes may warrant revocation.

**Response:**  The CFTC denies the allegations in paragraph 127.

128.    Additionally, the CFTC's revocation of the No-Action Relief violates the Administrative Procedure Act as it is "without observance of procedure required by law," *id.* § 706(2)(D), insofar as the revocation of the permission to operate the PredictIt Market was not accompanied by the notice and opportunity to demonstrate compliance required by Section 558(c) of the APA.

**Response:**  The allegations in paragraph 128 consist of the Plaintiffs' characterization of the

actions of the staff of the CFTC Division of Market Oversight as actions of the Commission,

which the CFTC denies.

129.    The CFTC's March Action similarly violates the Administrative Procedure Act because it is "without observance of procedure required by law." *Id.* § 706(2)(D).  Like the August Revocation, the March Action does not provide an opportunity to demonstrate or achieve

compliance with the requirements of the No-Action Relief, as required by Section 558(c) of the APA.  Nor does it provide several beneficiaries of the Commission's license the opportunity to be heard in response to the allegations or what the remedy for them should be.

**Response:**  The CFTC denies the allegations in paragraph 129.

## PRAYER FOR RELIEF

The remaining paragraphs of Plaintiffs' Second Amended Complaint constitute a prayer for relief, to which no response is required.  To the extent a response is deemed necessary, the CFTC denies that Plaintiffs are entitled to the relief requested in the unnumbered paragraphs, including subparts a) through j), and further denies that Plaintiffs are entitled to any relief whatsoever, including costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

Defendant CFTC pleads the following affirmative defenses.  By pleading these defenses as affirmative defenses, the CFTC does not intend to assume the burden of proof with respect to any defense for which the law does not place the burden of proof on them.

1.      The Second Amended Complaint fails to state a claim upon which relief may be granted.

2.      The Plaintiffs lack standing.

3.      The Plaintiffs lack standing because the claimed damages are speculative at best and as to the Professor Plaintiffs are improperly asserted in their individual capacities.

4.      Defendant's actions are fully consistent with the applicable provisions of the Administrative Procedure Act.

5.      Plaintiffs' claims are moot as the violations alleged in the Second Amended Complaint have been remedied and are in compliance with the relevant provisions of the Administrative Procedure Act.

6.   Plaintiffs' claims are barred by their failure to exhaust all administrative remedies under the Administrative Procedure Act.

7.   Plaintiffs' claims are barred by the doctrine of ripeness.

8.   Plaintiffs' claims are barred by their failure to join Victoria University of Wellington, New Zealand as a necessary party.

9.   Plaintiffs are not entitled to costs or fees.

Wherefore, Defendant respectfully requests that this Court enter judgment in its favor on all claims and this Court award it litigation expenses allowable by law.

Dated:  February 26, 2024                    Respectfully submitted,

<u>/s/ *Martin White*</u>
Robert A. Schwartz
  *General Counsel*
Anne W. Stukes
  *Deputy General Counsel*
Martin White
  *Assistant General Counsel*
U.S. COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre
1155 21st Street, N.W.
Washington, DC  20581
Phone: (202) 418-6024
Fax: (202) 418-5521
mwhite@cftc.gov

## **CERTIFICATE OF SERVICE**

I certify that on February 26, 2024, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record in this case.

*/s/ Martin White*
MARTIN WHITE